# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ACTIVISION TV, INC., | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | |
| PINNACLE BANCORP, INC., | § | |
| | § | |
| and | § | |
| | § | Civil Action No. 8:13-cv-00215 |
| JON BRUNING, Attorney General of | § | |
| Nebraska (in his official capacity); | § | |
| DAVID D. COOKSON, Chief Deputy | § | |
| Attorney General of Nebraska (in his | § | |
| official capacity); DAVID A. LOPEZ, | § | |
| Assistant Attorney General of Nebraska | § | |
| (in his official capacity), | § | |
| | § | |
| Defendants. | § | |

## FIRST AMENDED COMPLAINT

Plaintiff Activision TV, Inc., by way of this First Amended Complaint for Patent Infringement (Count I – Patent Infringement), Declaratory Judgment of No Violation of Nebraska State Law (Count II – DJ on State Claims), and Section 1983 Violations (Count III - § 1983 Claim) against, respectively, Defendants Pinnacle Bancorp, Inc., Jon Bruning, David D. Cookson, and David A. Lopez (collectively "Defendants"), hereby amends its Original Complaint filed in this suit with respect to Defendant Pinnacle, and realleges the allegations, claims and causes of action asserted in the Original Complaint, and additionally alleges as follows:

## THE PARTIES

1.      Plaintiff Activision is a corporation organized under the laws of Delaware with its principal place of business at 5400 Yahl Street, Suite D, Naples, Florida 34109.

2.      Upon information and belief, Defendant Pinnacle is a corporation organized under the laws of Nebraska, with bank charters in Nebraska, Texas, Wyoming, and Colorado, and with a registered agent for service of process of Lynn Dinsdale Marchese, 702 B Avenue, Central City, Nebraska 68826.

3.      Upon information and belief, Defendant Jon Bruning is the Attorney General for the State of Nebraska and in his official capacity has a place of business at 2115 State Capitol Building, Lincoln, NE 68509-8920, and may be served at that address.

4.      Upon information and belief, Defendant David D. Cookson is the Chief Deputy Attorney General for the State of Nebraska and in his official capacity has a place of business at 2115 State Capitol Building, Lincoln, NE 68509-8920, and may be served at that address.

5.      Upon information and belief, Defendant David A. Lopez is an Assistant Attorney General for the State of Nebraska and in his official capacity has a place of business at 2115 State Capitol Building, Lincoln, NE 68509-8920, and may be served at that address.

## JURISDICTION AND VENUE

6.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 271, *et seq.*; an action under 28 U.S.C. § 2201, and the First, Fifth and Fourteenth Amendments to the U.S. Constitution, and Article VI, Clause 2 of the U.S. Constitution ("the Supremacy clause") for declaratory judgment that Plaintiff Activision, and its representatives and counsel, have not violated any Nebraska state laws related to unfair competition and deceptive trade practices; and an action for relief under 42 U.S.C. § 1983, and

the First, Fifth and Fourteenth Amendments to the U.S. Constitution, and the Supremacy clause seeking remedy for violations of Plaintiff Activision's constitutional rights and rights under federal law.

7.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1332, 1338(a), 1338(b), 1367; 28 U.S.C. § 2201; and 28 U.S.C. § 1367.

8.     This Court has personal jurisdiction over Defendant Pinnacle at least because Defendant Pinnacle has ongoing and systematic contacts with this District and the United States, and has committed patent infringement in this District, and because it is a corporation organized in this District.  Defendant Pinnacle has approximately thirty-two bank locations and numerous additional ATM locations in this District.

9.     This Court has personal jurisdiction over Defendants Bruning, Cookson, and Lopez at least because, on information and belief, these Defendants respectively in their official capacity have ongoing and systematic contacts with this District, have and maintain offices in this District, and reside in this District, and have committed wrongful acts which both occurred within this District, and which have had an impact or effect in this District.

10.     Venue is proper in this District under 28 U.S.C. §§ 1400(b), 1391(b), and 1391(c). Venue as to Defendant Pinnacle is proper on the basis of the allegations provided in Paragraph 8 above.  Venue as to Defendants Bruning, Cookson, and Lopez is proper on the basis of the allegations provided in Paragraph 9 above.

## AMENDMENT AS OF RIGHT

11.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 10 as though fully set forth herein.

12.     On July 12, 2013, Plaintiff filed the original Complaint in this action against Defendant Pinnacle, asserting the same allegations, claims and causes of action as are relevant to Count I of this First Amended Complaint.

13.     Defendant Pinnacle has not yet been served with the original Complaint, nor has it answered or otherwise submitted a responsive pleading in this suit.

14.     Under FED. R. CIV. P. 15, Plaintiff files this First Amended Complaint as of right.

## COUNT I

## DEFENDANT PINNACLE'S INFRINGEMENT OF U.S. PATENT NOS. 7,369,058 and 8,330,613

15.     Plaintiff repeats and realleges all of the preceding Paragraphs as though fully set forth herein.

16.     On May 6, 2008, United States Patent No. 7,369,058 ("the '058 Patent) entitled "REMOTE CONTROL ELECTRONIC DISPLAY SYSTEM," was duly and legally issued by the United States Patent and Trademark Office.  A true and correct copy of the '058 Patent is attached as Exhibit A to this Complaint.

17.     On December 11, 2012, United States Patent No. 8,330,613 ("the '613 Patent," or, collectively with the '058 Patent, the "Activision Patents"), entitled "REMOTE CONTROL ELECTRONIC DISPLAY SYSTEM," was duly and legally issued by the United States Patent and Trademark Office.  A true and correct copy of the '613 Patent is attached as Exhibit B to this Complaint.

18.     Plaintiff Activision, as the assignee and owner of all right, title, and interest in and to the Activision Patents, has the right to assert causes of action arising under said patents and the right to any remedies for infringement thereof.

4

19.     Defendant Pinnacle has been directly infringing and continues to directly infringe one or more claims of each of the Activision Patents in the United States at least by using digital signage systems with branded enclosures housing vertical 32'' LCD screens managed by Nanonation, Inc.'s CommandPoint management system software, in Defendant Pinnacle's locations throughout the United States, including within this judicial district, in violation of 35 U.S.C. § 271 (a).  The infringing digital signage systems are deployed in at least 56 locations in Nebraska, Kansas, Missouri, and Texas and include several infringing systems deployed in Pinnacle locations within Hy Vee grocery stores.

20.     Because of Defendant Pinnacle's infringement of the Activision Patents, Plaintiff has suffered damages and will continue to suffer damages in the future.

21.     Plaintiff has suffered irreparable injury due to the acts of infringement by Defendant Pinnacle and will continue to suffer such irreparable injury unless Defendant Pinnacle's infringing activities are enjoined.

22.     Defendant Pinnacle has had notice of its infringement of the '058 Patent since at least February 7, 2013, when counsel for Activision sent Defendant Pinnacle a notice letter by certified mail.

23.     Upon information and belief, Defendant Pinnacle has continued to infringe despite its knowledge of the '058 Patent and Activision's notice of infringement.

## COUNT II

## DECLARATORY JUDGMENT OF NO VIOLATION OF NEBRASKA STATE LAW, INCLUDING BUT NOT LIMITED TO NEB. REV. STAT. § 59-1601 *et seq*. (Reissue 2010, Supp. 2012), AND NEB. REV. STAT. § 87-301 *et seq*. (Reissue 2008, Supp. 2010)

24.     Plaintiff repeats and realleges the allegations of all of the preceding paragraphs as though fully set forth herein.

5

25.     Plaintiff Activision is a company who makes, sells, installs, and manages remote digital signage systems.

26.     The remote digital signage systems that are part of Plaintiff Activision's business are covered by at least some claims of patents owned by Plaintiff Activision.

27.     Dave Gothard is the inventor of both the '058 Patent and the '163 Patent.

28.     Dave Gothard is the founder of Plaintiff Activision, and at all times has been the president and a key part of the Activision business.

29.     Plaintiff Activision prior to 2012 believed that a number of companies in the United States were infringing the Activision Patents.

30.     To assist it in investigating this potential infringement, and to undertake any appropriate licensing or enforcement activities, Plaintiff Activision chose to seek experienced and recognized patent counsel.

31.     In this regard, Plaintiff Activision initially retained the well-known law firm of Kirkland & Ellis LLP.

32.     After being retained by Plaintiff Activision, Kirkland & Ellis LLP undertook licensing and enforcement activities, which included filing several infringement suits on behalf of Plaintiff Activision. All of these suits were resolved by the defendants taking a license to Activision's patents.

33.     In early 2012, Plaintiff Activision chose to seek new counsel, but continued to prefer to retain recognized and experienced patent counsel.

34.     In this regard, on or about June 2012, Plaintiff Activision retained Farney Daniels PC (then Farney Daniels LLP) to represent Plaintiff Activision in connection with its attempts to identify parties infringing patents owned by Plaintiff Activision, and to seek licenses from such

infringers, and, if necessary, to bring suit for infringement against infringers if licenses could not be agreed upon.

35.     Farney Daniels PC is a law firm with headquarters in Georgetown, Texas ("the Farney Daniels firm"), with offices in San Mateo, California; Dallas, Texas; Minneapolis, Minnesota; and Wilmington, Delaware.

36.     M. Brett Johnson is a shareholder in the Farney Daniels firm, and is the managing shareholder of the firm's Dallas office.

37.     William Bryan Farney is a shareholder in the Farney Daniels firm, and is the managing shareholder of the firm, and is based in the Georgetown office.

38.     The Farney Daniels firm specializes in patent litigation, licensing and counseling.

39.     On or about June 2012, Plaintiff Activision retained the Farney Daniels firm to advise and represent Plaintiff Activision in connection with its licensing and enforcement of the Activision Patents.

40.     On or about the dates set forth in the table below, Plaintiff Activision, using the Farney Daniels firm, sent letters regarding the Activision Patents to certain companies in Nebraska, as identified in the following table (the identified letters are attached to this Complaint as Exhibits, and are incorporated herein by reference):

| Paragraph | Company | Letter Date | Exhibit No. |
|---|---|---|---|
| 40a | Borsheim Jewelry Company, Inc. | 2/7/13 | C1 |
| 40b | CSG Systems, Inc. | 2/7/13 | C2 |
| 40c | CSG follow up letter | 3/1/13 | C3 |
| 40d | Marcus Theatres Corp. d/b/a Douglas Theatres | 2/7/13 | C4 |
| 40e | Nanonation, Inc. | 8/1/12 | C5 |
| 40f | Pinnacle Bancorp, Inc. | 2/7/13 | C6 |

41.     In each of those letters, Plaintiff Activision identified to the recipient at least some of Activision's patents.

42.     The Activision Patents, at the time the letters were sent, and now, are presumed valid under 35 U.S.C. § 282.

43.     In each of those letters, Plaintiff Activision invited the recipient to take a license under the Activision Patents if the recipient concluded it was infringing those patents.

44.     None of the companies who were recipients of the letters in Exhibits C1-C6 contacted Plaintiff Activision to deny infringement. Although Borsheim Jewelry Company, Inc., responded that it no longer used its system, it did not deny the system infringed when in use.

45.     None of the companies who were recipients of the letters in Exhibits C1-C6 contacted Plaintiff to allege that the Activision Patents were invalid.

46.     On or about June 3, 2013, Plaintiff Activision brought suit for infringement of the Activision Patents against CSG Systems, Inc. ("CSG"), in the U.S. District Court for the District of Delaware, and is represented by Richard Weinblatt of Stamoulis & Weinblatt LLC, who filed the suit (hereinafter referred to as "the CSG Delaware suit").  A copy of the Complaint for the CSG Delaware suit is attached hereto as Exhibit D, and incorporated herein by reference.

47.     On information and belief, CSG is a Delaware corporation with a principal place of business in Nebraska.

48.     On or about June 5, 2013, Plaintiff Activision brought suit for infringement of the Activision Patents against CenturyLink, Inc. d/b/a Century Link Communications ("CenturyLink"), in the U.S. District Court for the Eastern District of Texas, and is represented by Jennifer Parker Ainsworth of Wilson, Roberston & Cornelius, P.C., who filed the suit

(hereinafter referred to as "the CenturyLink Texas suit").   A copy of the Complaint for the CenturyLink Texas suit is attached hereto as Exhibit E, and incorporated herein by reference.

49.     On information and belief, CenturyLink is a Louisiana Corporation with headquarters in Louisiana, with operations in at least Texas and Nebraska.

50.     On or about July 12, 2013, Plaintiff Activision brought suit for infringement of the Activision Patents against Defendant Pinnacle in the U.S. District Court for the District of Nebraska, and is represented by John Passarelli of Kutak Rock, LLP, who filed the suit.   That suit was embodied in the original Complaint in this case.

51.     Plaintiff Activision intended, in each case, to move for the admission of William Bryan Farney and M. Brett Johnson of Farney Daniels PC *pro hac vice*, for the Farney Daniels firm to serve as lead counsel for Activision in the respective cases.

52.     On information and belief, no U.S. District Court has ever denied a motion for admission *pro hac vice* with respect to William Bryan Farney.

53.     On information and belief, no U.S. District Court has ever denied a motion for admission *pro hac vice* with respect to M. Brett Johnson.

54.     On information and belief, the *pro hac vice* motions Plaintiff Activision intended to file with respect to Mr. Farney and Mr. Johnson, have now been, or are now being filed at or about a time contemporaneous with the filing of this First Amended Complaint.

55.     On July 18, 2013, Defendants Bruning, Cookson and Lopez provided to the Farney Daniels firm a letter ("the Nebraska AG July 18 letter" – attached hereto as Exhibit F, and incorporated herein by reference).

56.     The Nebraska AG July 18 letter alleged that the Farney Daniels firm had "issued demand letters upon several entities based in or with a substantial presence in the State of Nebraska alleging infringement of certain patents."

57.     On information and belief, the "demand letters" referred to in the Nebraska AG July 18 letter included at least the letters sent by the Farney Daniels firm on behalf of Activision, attached hereto as Exhibit C1-C6, and further identified in Paragraph 40a-40f above.

58.     The Nebraska AG July 18 letter alleged that certain of the entities on whose behalf the Farney Daniels firm sent "demand letters" were "non-practicing entities" with regard to their respective patents.

59.     On information and belief, as of July 18, 2013, the Nebraska AG's position was that Plaintiff Activision was a "non-practicing entity" with regard to its patents.

60.     On information and belief, on July 18, 2013, Defendant Bruning, or a person acting at his direction or under his authority, expressly told at least one reporter of the Omaha World-Herald that Plaintiff Activision was such a "non-practicing entity."

61.     On information and belief, on July 18, 2013, Defendant Bruning, or a person acting at his direction or under his authority, expressly told at least one reporter of the Omaha World-Herald that Plaintiff Activision was a "patent troll."

62.     On information and belief, prior to July 18, 2013, Defendant Bruning had one or more communications with at least one employee, officer, or shareholder of Defendant Pinnacle, in which Plaintiff Activision's attempts to license or enforce the Activision Patents with respect to Defendant Pinnacle was discussed.

63.     On information and belief, prior to July 18, 2013, a person acting at the direction of Defendant Bruning, or under his authority, had one or more communications with at least one

10

employee, officer, or shareholder of Defendant Pinnacle, in which Plaintiff Activision's attempts to license or enforce the Activision Patents with respect to Defendant Pinnacle was discussed.

64.     On information and belief, prior to July 18, 2013, Defendant Bruning, or a person acting at his direction or under his authority, had one or more communications with at least one employee, officer, or shareholder of Defendant Pinnacle in which Plaintiff Activision was referred to as a "patent troll."

65.     On information and belief, as of July 18, 2013, Defendant Bruning believed the term "patent troll" to be an allegation that was disparaging.

66.     On information and belief, on or prior to July 18, 2013, neither Defendants Bruning, Cookson, or Lopez, nor persons acting at their direction or under their control, had contacted Plaintiff Activision, or any owner or employee thereof, to determine whether Plaintiff Activision engaged in business practicing the Activision Patents.

67.     On information and belief, on or prior to July 18, 2013, neither Defendants Bruning, Cookson, or Lopez, nor persons acting at their direction or under their control, had contacted the Farney Daniels firm to determine whether Plaintiff Activision engaged in business practicing the Activision Patents.

68.     The Activision Patents were invented by Dave Gothard.

69.     Plaintiff Activision was founded by Dave Gothard for the purpose of engaging in business practicing the Activision Patents.

70.     Plaintiff Activision does engage in a business practicing the Activision Patents.

71.     The Nebraska AG July 18 letter alleged that at least some of the "demand letters" that were alleged to have been sent by the Farney Daniels firm contained "infringement assertions [that] are unsubstantiated."

11

72.     On information and belief, Defendants Bruning, Cookson, and/or Lopez intended the allegation in the preceding Paragraph to apply to at least some of the letters sent by the Farney Daniels firm on behalf of Activision.

73.     On information and belief, as of July 18, 2013, neither Defendants Bruning, Cookson, or Lopez, nor any person acting at their direction or under their control, had identified any infringement assertion contained in a letter sent by the Farney Daniels firm on behalf of Activision that was unsubstantiated.

74.     On information and belief, as of July 18, 2013, neither Defendants Bruning, Cookson, or Lopez, nor any person acting at their direction or under their control, had reviewed the products and services of the companies identified in Exhibits C1-C6 to determine whether they infringed, or did not infringe, patents owned by Activision.

75.     On information and belief, as of July 18, 2013, neither Defendants Bruning, Cookson, or Lopez, nor any person acting at their direction or under their control, had obtained or reviewed the file histories of the Activision Patents to form an opinion as to the proper scope to be accorded any of the claims in the Activision Patents.

76.     The Nebraska AG July 18 letter alleged that at least some of the "demand letters" that were alleged to have been sent by the Farney Daniels firm contained "false, misleading, or deceptive statements."

77.     On information and belief, Defendants Bruning, Cookson, and/or Lopez intended the allegation referred to in the preceding Paragraph to apply to at least some of the letters sent by the Farney Daniels firm on behalf of Activision.

78.     On information and belief, as of July 18, 2013, neither Defendants Bruning, Cookson, or Lopez, nor any person acting at their direction or under their control, had identified

any statement contained in a letter sent by the Farney Daniels firm on behalf of Activision that was false, misleading, or deceptive.

79.    On information and belief, as of July 18, 2013, neither Defendants Bruning, Cookson, or Lopez, nor any person acting at their direction or under their control, had conducted any investigation, nor obtained information from which it could base a conclusion, that any statement made in the following portion of the letter written by the Farney Daniels firm on behalf of Plaintiff Activision to Defendant Pinnacle (*see* Exhibit C6) was unsubstantiated, false, misleading, or deceptive:

> We write on behalf of Activision TV, Inc. ("Activision"), based in Naples, Florida.  Activision is a noted innovator in digital display systems and a leader in the digital advertising market.  Activision's patented technology allows it to offer digital media delivery systems far superior to those of its competitors. Activision's founder, Mr. David Gothard, is an inventor and businessman long applauded and honored for his history of innovation and for his successful career.  Mr. Gothard's ingenuity is the driving force behind the creation of systems and products for delivery of dynamic digital display solutions provided by Activision.

80.    On information and belief, as of July 18, 2013, neither Defendants Bruning, Cookson, or Lopez, nor any person acting at their direction or under their control, had conducted any investigation, nor obtained information from which it could base a conclusion, that any statement made in the following portion of the letter written by the Farney Daniels firm on behalf of Plaintiff Activision to Defendant Pinnacle (*see* Exhibit C6) was unsubstantiated, false, misleading, or deceptive:

> We specifically write regarding the following patents, all entitled "Remote Control Electronic Display System," and collectively referred to herein as the "Activision Patents":
>
> - U.S. Patent No. 6,215,411
>
> - U.S. Patent No. 6,384,736

13

- U.S. Patent No. 7,369,058

81.    On information and belief, as of July 18, 2013, neither Defendants Bruning, Cookson, or Lopez, nor any person acting at their direction or under their control, had conducted any investigation, nor obtained information from which it could base a conclusion, that any statement made in the following portion of the letter written by the Farney Daniels firm on behalf of Plaintiff Activision to Defendant Pinnacle (*see* Exhibit C6) was unsubstantiated, false, misleading, or deceptive:

> The Activision Patents listed above are the direct product of Mr. Gothard's life's work.  As the inventor of the Activision Patents, he has invested a tremendous amount of time and money into the development of the technology covered by the Activision Patents. Activision is the owner, by assignment, of all right, title, and interest in the Activision Patents.  The Activision Patents generally relate to various aspects of digital signage, including remote controlled electronic display systems.  You can find and review each of the Activision Patents listed above at www.google.com/patents.

82.    On information and belief, as of July 18, 2013, neither Defendants Bruning, Cookson, or Lopez, nor any person acting at their direction or under their control, had conducted any investigation, nor obtained information from which it could base a conclusion, that any statement made in the following portion of the letter written by the Farney Daniels firm on behalf of Plaintiff Activision to Defendant Pinnacle (*see* Exhibit C6) was unsubstantiated, false, misleading, or deceptive:

> We have identified your company as one that uses the patented technology, and we are contacting you to initiate discussions regarding your need for a license.  In this letter, we explain what the Activision Patents cover, how your actions infringe those patents, and explain why a license is needed.  We should note that we have written you with the understanding that you are the proper person to contact on behalf of Pinnacle Bank.  If you are not the proper person to handle this matter on behalf of Pinnacle Bank, please provide this letter to the proper person, and notify us so that we may update our records and contact that individual directly in the future.

83.     On information and belief, as of July 18, 2013, neither Defendants Bruning, Cookson, or Lopez, nor any person acting at their direction or under their control, had conducted any investigation, nor obtained information from which it could base a conclusion, that any statement made in the following portion of the letter written by the Farney Daniels firm on behalf of Plaintiff Activision to Defendant Pinnacle (*see* Exhibit C6) was unsubstantiated, false, misleading, or deceptive:

> As you may know, a patent's scope is defined by its claims, and you will see that each of the Activision Patents has different claims. While those differences matter and mean that each patent is distinct, the Activision Patents do, as a group, generally relate to the same technology field, and cover, as their titles suggest, remote control electronic display systems. Obviously each claim is separately drafted and you should consider the scope of each claim separately.

84.     On information and belief, as of July 18, 2013, neither Defendants Bruning, Cookson, or Lopez, nor any person acting at their direction or under their control, had conducted any investigation, nor obtained information from which it could base a conclusion, that any statement made in the following portion of the letter written by the Farney Daniels firm on behalf of Plaintiff Activision to Defendant Pinnacle (*see* Exhibit C6) was unsubstantiated, false, misleading, or deceptive:

> Activision has learned that your organization uses remote control digital signage technology and/or related products. By engaging in any such activities, Pinnacle Bank infringes one or more of the claims of each of the Activision Patents. Specifically, that Pinnacle Bank uses in its day-to-day operations an electronic media display system. Activision therefore seeks to discuss an appropriate resolution of Pinnacle Bank's past and ongoing infringement of the Activision Patents. We trust that Pinnacle Bank will agree to conform its behavior to respect our client's patent rights by negotiating a license rather than knowingly violating federal law by continuing to reap the benefits of our client's hard-earned patented technology without license.

15

85.     On information and belief, as of July 18, 2013, neither Defendants Bruning, Cookson, or Lopez, nor any person acting at their direction or under their control, had conducted any investigation, nor obtained information from which it could base a conclusion, that any statement made in the following portion of the letter written by the Farney Daniels firm on behalf of Plaintiff Activision to Defendant Pinnacle (*see* Exhibit C6) was unsubstantiated, false, misleading, or deceptive:

> Take notice that Activision has no interest in seeking a license from someone who does not infringe. If Pinnacle Bank does not utilize remote controlled digital signage as covered by the Activision Patents, then we will discuss with you how your position can be confirmed so that we may discontinue further unnecessary correspondence. In the more likely scenario that Pinnacle Bank does require a license, we are prepared to work with you to reach an agreement as to reasonable terms.

86.     On information and belief, as of July 18, 2013, neither Defendants Bruning, Cookson, or Lopez, nor any person acting at their direction or under their control, had conducted any investigation, nor obtained information from which it could base a conclusion, that any statement made in the following portion of the letter written by the Farney Daniels firm on behalf of Plaintiff Activision to Defendant Pinnacle (*see* Exhibit C6) was unsubstantiated, false, misleading, or deceptive:

> We invite you to consult with a patent attorney regarding this matter. Patents are exclusive property rights granted by law, and there can be serious consequences for infringement. Infringers who continue to infringe in the face of an objectively high risk of infringement of a valid patent can be forced to pay treble (triple) the actual damages, as well as the patent owner's litigation costs, including all attorney's fees.

87.     On information and belief, as of July 18, 2013, neither Defendants Bruning, Cookson, or Lopez, nor any person acting at their direction or under their control, had conducted any investigation, nor obtained information from which it could base a conclusion, that any

statement made in the following portion of the letter written by the Farney Daniels firm on behalf of Plaintiff Activision to Defendant Pinnacle (*see* Exhibit C6) was unsubstantiated, false, misleading, or deceptive:

> Please contact us within three weeks of the date of this letter, so that we may confer with you regarding an appropriate license arrangement. You may contact me directly at (512) 9489038 or rkiddie@farneydaniels.com. We look forward to hearing from you.

88.     The Nebraska AG July 18 letter further demanded, under the authority provided to the Nebraska Attorney General under NEB. REV. STAT. § 87-303.03(1)(b), that the Farney Daniels firm "immediately cease and desist the initiation of any and all new patent infringement enforcement efforts within the State of Nebraska pending the outcome of this office's investigation."

89.     On information and belief, Defendants Bruning, Cookson and/or Lopez, or persons acting at their direction or under their control, have informed at least some of the companies who were recipients of Plaintiff Activision's letters attached as Exhibits C1-C6 that the "cease and desist order" issued by the Nebraska AG (Exhibit F) applies to the Farney Daniels firm with respect to its representation of Plaintiff Activision, at least as against those companies.

90.     Defendants Bruning, Cookson, and/or Lopez intend the "cease and desist order" contained within the Nebraska AG July 18 letter to prevent the Farney Daniels firm from representing Plaintiff Activision with respect to litigation or licensing of the Activision Patents with respect to at least some of the companies identified as recipients of Exhibits C1-C6.

91.     The Nebraska AG July 18 letter accuses counsel for Activision of violating Nebraska state law, including but not limited to NEB. REV. STAT. §§ 59-1602, 87-302, and/or 87-303.01.

92.     On information and belief, Defendants Bruning, Cookson, and/or Lopez intended the allegation in the preceding Paragraph to apply to at least some of the letters sent by the Farney Daniels firm on behalf of Activision.

93.     A justiciable and immediate controversy exists as to whether Plaintiff Activision, or its representatives including the Farney Daniels firm, violated any Nebraska law in the sending of any letters into the State of Nebraska, or in filing, or participating in the preparation of filing of the original Complaint in this suit.

94.     On information and belief, sending a letter containing statements such as those contained in the letter to Defendant Pinnacle attached hereto as Exhibit C6, does not constitute activities with respect to any "goods or services" as that term is used in NEB. REV. STAT. § 87-302.

95.     On information and belief, sending a letter containing statements such as those attached hereto as Exhibit C6, does not constitute activities that would qualify as any conduct enumerated under subparts 1-19 of NEB. REV. STAT. § 59-1602.

96.     On information and belief, statements made in the letters attached hereto as Exhibits C1-C6 would additionally be immune from any assertion of violation of NEB. REV. STAT. § 87-302, under the doctrine of litigation privilege.

97.     On information and belief, statements made in the letters attached hereto as Exhibits C1-C6 would additionally be immune from any assertion of violation of NEB. REV. STAT. § 59-1602, under the doctrine of litigation privilege.

98.     On information and belief, prior to July 18, 2013, neither Defendants Bruning, Cookson, or Lopez, nor any person acting at their direction or under their control, had conducted any investigation, nor obtained information from which it could base a conclusion that any

18

communication by the Farney Daniels firm on behalf of Plaintiff Activision into the State of Nebraska was "objectively baseless."

99.     On information and belief, prior to July 18, 2013, neither Defendants Bruning, Cookson, or Lopez, nor any person acting at their direction or under their control, had conducted any investigation, nor obtained information from which it could base a conclusion that any communication by the Farney Daniels firm on behalf of Plaintiff Activision into the State of Nebraska was "subjectively baseless."

100.    On information and belief, prior to July 18, 2013, neither Defendants Bruning, Cookson, or Lopez, nor any person acting at their direction or under their control, had contacted the Farney Daniels firm seeking any information to assess whether any communication by the Farney Daniels firm on behalf of Plaintiff Activision into the State of Nebraska was "objectively baseless."

101.    On information and belief, prior to July 18, 2013, neither Defendants Bruning, Cookson, or Lopez, nor any person acting at their direction or under their control, had contacted the Farney Daniels firm seeking any information to assess whether any communication by the Farney Daniels firm on behalf of Plaintiff Activision into the State of Nebraska was "subjectively baseless."

102.    On information and belief, prior to July 18, 2013, neither Defendants Bruning, Cookson, or Lopez, nor any person acting at their direction or under their control, had contacted Plaintiff Activision seeking any information to assess whether any communication by the Farney Daniels firm on behalf of Plaintiff Activision into the State of Nebraska was "objectively baseless."

103.    On information and belief, prior to July 18, 2013, neither Defendants Bruning, Cookson, or Lopez, nor any person acting at their direction or under their control, had contacted Plaintiff Activision seeking any information to assess whether any communication by the Farney Daniels firm on behalf of Plaintiff Activision into the State of Nebraska was "subjectively baseless."

104.    On information and belief, prior to July 18, 2013, neither Defendants Bruning, Cookson, or Lopez, nor any person acting at their direction or under their control, had contacted any person to determine the subjective understanding of Plaintiff Activision, or any owner or officer of Plaintiff Activision, regarding its patent rights as expressed in the communications forwarded into Nebraska on its behalf by the Farney Daniels firm.

105.    On information and belief, prior to July 18, 2013, neither Defendants Bruning, Cookson, or Lopez, nor any person acting at their direction or under their control, had conducted any investigation, nor obtained information from which it could base a conclusion that the original Complaint in this case filed by Kutak Rock on behalf of Plaintiff Activision was "objectively baseless."

106.    On information and belief, prior to July 18, 2013, neither Defendants Bruning, Cookson, or Lopez, nor any person acting at their direction or under their control, had conducted any investigation, nor obtained information from which it could base a conclusion that the original Complaint in this case filed by Kutak Rock on behalf of Plaintiff Activision was "subjectively baseless."

107.    On information and belief, prior to July 18, 2013, neither Defendants Bruning, Cookson, or Lopez, nor any person acting at their direction or under their control, had contacted

the Kutak Rock law firm seeking any information to assess whether the original Complaint in this case filed by Kutak Rock on behalf of Plaintiff Activision was "objectively baseless."

108.   On information and belief, prior to July 18, 2013, neither Defendants Bruning, Cookson, or Lopez, nor any person acting at their direction or under their control, had contacted the Kutak Rock law firm seeking any information to assess whether the original Complaint in this case filed by Kutak Rock on behalf of Plaintiff Activision was "subjectively baseless."

109.   On information and belief, prior to July 18, 2013, neither Defendants Bruning, Cookson, or Lopez, nor any person acting at their direction or under their control, had contacted Plaintiff Activision seeking any information to assess whether the original Complaint in this case filed by Kutak Rock on behalf of Plaintiff Activision was "objectively baseless."

110.   On information and belief, prior to July 18, 2013, neither Defendants Bruning, Cookson, or Lopez, nor any person acting at their direction or under their control, had contacted Plaintiff Activision seeking any information to assess whether the original Complaint in this case filed by Kutak Rock on behalf of Plaintiff Activision was "subjectively baseless."

111.   On information and belief, prior to July 18, 2013, neither Defendants Bruning, Cookson, or Lopez, nor any person acting at their direction or under their control, had contacted any person to determine the subjective understanding of Plaintiff Activision, or any owner or officer of Plaintiff Activision, regarding the merits or bases of its original Complaint in this case.

112.   On information and belief, neither Defendants Bruning, Cookson, or Lopez, nor any person acting at their direction or under their control, has any good faith basis to allege that federal law does not preempt any Nebraska state law as it may apply to the sending of the letters in Exhibits C1-C6, or the filing of the original Complaint, absent proof that such letters or such Complaint was objectively baseless, and also subjectively baseless.

21

113.    On information and belief, neither Defendants Bruning, Cookson, or Lopez, nor any person acting at their direction or under their control, had any good faith basis to conclude that, given the federal law regarding personal jurisdiction with respect to the sending of letters such as those in Exhibits C1-C6, that Plaintiff Activision could be subject to personal jurisdiction in the State of Nebraska based upon the sending of the letters in Exhibits C1-C6.

114.    On information and belief, neither Defendants Bruning, Cookson, or Lopez, nor any person acting at their direction or under their control, had any good faith basis to conclude that, given the federal law regarding personal jurisdiction with respect to the sending of letters such as those in Exhibits C1-C6, that the Farney Daniels firm could be subject to personal jurisdiction in the State of Nebraska on the basis of sending those letters on Activision's behalf.

115.    On information and belief, on or before August 2, 2013, one or more of Defendants Bruning, Cookson, and Lopez informed CenturyLink that Defendants Bruning, Cookson, and Lopez's actions against the Farney Daniels Firm were such that they would impact the ability of Activision to serve CenturyLink with the complaint filed in the CenturyLink action.

116.    The allegations and actions taken by Defendants Bruning, Cookson, and Lopez alleging that actions taken by or on behalf of Activision with respect to its assertion of its U.S. patent rights are in violation of Nebraska state laws has served to impair Activision's patent rights, including Activision's ability to exercise its lawful rights with respect to its U.S. patents, by impairing, among other things, the rights of Activision to:

(a) send letters to actual or potential infringers operating in the state of Nebraska without fear of suit by Defendants Bruning, Cookson, and Lopez;

(b) exercise its constitutional right to counsel of its choice in assisting Activision in enforcing its U.S. patent rights without fear of a violation of any Nebraska state law;

(c) send letters regarding patents to companies who may have Nebraska operations, but who are incorporated outside of Nebraska, and headquartered outside of Nebraska, using counsel of Activision's choice, without fear of being accused of violation of Nebraska state law;

(d) use counsel of Activision's choice in litigating patent infringement suits asserting Activision patents in courts outside of Nebraska against companies who may have Nebraska operations, without fear of being sued or found liable for violation of Nebraska state law; and/or

(e) enter into licensing discussions with parties infringing Activision's patent rights without having such parties discount the value of Activision's rights by virtue of allegations that the assertion of Activision's patent rights may be limited by alleged violations of Nebraska state law.

117.    A justiciable and immediate controversy exists with respect to whether the sending of letters to companies in Nebraska by Activision's counsel, inclusive of the letter sent to Defendant Pinnacle, violates Nebraska state law.

118.    A justiciable and immediate controversy exists as to whether the filing of Plaintiff Activision's original Complaint in this case, and its filing of this First Amended Complaint, violates Nebraska state law.

119.    Neither the actions of Plaintiff Activision, or its counsel, in sending the letters identified in Exhibits C1-C6 violated any Nebraska state law.

120.    The application of the Cease & Desist Order in Exhibit F to Farney Daniels to prevent the Firm from sending letters similar to those in Exhibit C, on behalf of Activision in the

future, comprises an unconstitutional "prior restraint" of Free Speech and violation of the First and Fourteenth Amendments to the U.S. Constitution.

121. Any application under Nebraska state law to sanction or preclude the sending by Plaintiff Activision, or its authorized representatives or counsel, letters such as those found in Exhibits C1-C6 would violate the rights of Plaintiff Activision under at least:

(a) the First Amendment to the U.S. Constitution;

(b) the Fifth Amendment to the U.S. Constitution;

(c) the Fourteenth Amendment to the U.S. Constitution;

(d) Title 35, U.S. Code; and

(e) Article VI, Clause 2 of the U.S. Constitution ("the Supremacy clause").

122. Neither the actions of Plaintiff Activision, or its counsel, in preparing, or in filing, the original Complaint in this case, or this First Amended Complaint, violated any Nebraska state law, and any assertion of the same violates the rights of Plaintiff Activision under at least:

(a) the First Amendment to the U.S. Constitution;

(b) the Fifth Amendment to the U.S. Constitution;

(c) the Fourteenth Amendment to the U.S. Constitution;

(d) Title 35, U.S. Code; and

(e) Article VI, Clause 2 of the U.S. Constitution ("the Supremacy clause").

## COUNT III

### VIOLATION BY DEFENDANTS BRUNING, COOKSON, AND LOPEZ OF PLAINTIFF ACTIVISION'S RIGHTS UNDER 42 U.S.C. § 1983, AND THE FIRST, FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION

123. Plaintiff repeats and realleges the allegations of all of the preceding paragraphs as though fully set forth herein.

24

124.   Plaintiff Activision consistently prefers to be represented by recognized and experienced patent counsel.  Plaintiff Activision, upon investigation, reasonably believed, and still believes, that Farney Daniels PC is such counsel.

125.   During the approximate year in which Farney Daniels has been representing Plaintiff Activision, Plaintiff has been able to identify and to seek licenses from a number of companies who are infringing Plaintiff's patents.

126.   Plaintiff Activision considers the litigation and licensing experience provided by Farney Daniels to be a key component of its ability to properly and successfully identify infringers, reach licensing agreements with those infringers, and bring suit if necessary and appropriate with respect to infringers who will not agree to a license.

127.   As part of the representation by Farney Daniels of Plaintiff Activision, Plaintiff authorized Farney Daniels to send the letters identified in Exhibit C.  On information and belief, Plaintiff Activision believes and asserts that Farney Daniels has knowledge and experience with respect to the infringement issues related to the parties to whom letters were sent as identified in Exhibit C.

128.   As part of the representation by Farney Daniels of Plaintiff Activision, Plaintiff authorized Farney Daniels to investigate and prepare for litigation asserting patent infringement against Defendant Pinnacle, as well as CSG and CenturyLink in connection with the above-identified suits.

129.   On information and belief, Plaintiff Activision believes and asserts that Farney Daniels has knowledge and experience with respect to the infringement issues and related issues in each of those suits such that it would be of detriment to Plaintiff Activision to not have Farney

Daniels admitted *pro hac vice*, as is customary, to serve as lead counsel in these cases, including the present case.

130.    In the July 18 Nebraska AG Letter, Defendants Bruning, Cookson, and Lopez communicated in part a Cease & Desist Order to Farney Daniels, ordering the Firm to "immediately cease and desist the initiation of any and all new patent infringement enforcement efforts within the State of Nebraska pending the outcome of this office's investigation pursuant to § 87-303.03(1)(b)."

131.    NEB. REV. STAT. § 87-303.03(1)(b) provides: "The Attorney General, in addition to other powers conferred upon him or her by the Uniform Deceptive Trade Practices Act: … (b) [m]ay issue a cease and desist order, with or without prior hearing, against any person engaged in activities in violation of the act, directing such person to cease and desist from such activity."

132.    On information and belief, Defendants Bruning, Cookson, and Lopez intend the Cease & Desist Order to apply to prevent Farney Daniels from representing Plaintiff Activision in the suits previously filed against CenturyLink and CSG, as well as in this suit, including with respect to Count I for patent infringement asserted against Defendant Pinnacle.

133.    On information and belief, at least one of Defendants Bruning, Cookson, and Lopez, or parties authorized by them, have communicated at least to CenturyLink that they consider their Cease & Desist Order to have at least the scope and effect as set forth in the preceding Paragraph.

134.    On information and belief, Defendants Bruning, Cookson, and/or Lopez prior to July 18, 2013, had not learned of any facts to support a position that Plaintiff Activision's choice of Farney Daniels was not reasonable, at least because:

(a) the senior attorneys at Farney Daniels possess substantial experience in both patent litigation and licensing;

(b)  that at least some of the attorneys at the Firm have technical backgrounds relevant to the Activision Patents;

(c) at least some of the attorneys at the Firm have experience in dealing with technical experts who may be relevant to this case, as well as the suits against CenturyLink and CSG; and

(d) because the national recognition of individual attorneys at Farney Daniels, and of the Firm collectively, enhances Plaintiff Activision's ability to maximize the effectiveness and efficiency of the legal representation that it requires in its enforcement effort with respect to the Activision Patents, and justifies its strong preference to be represented by Farney Daniels as lead counsel in the present case.

135.    On information and belief, absent the actions taken by Defendants Bruning, Cookson, and Lopez as reflected in the July 18 Nebraska AG Letter, the admission to this Court by lawyers at Farney Daniels to serve as lead counsel in this present suit would be customarily granted.

136.    On information and belief, it is the position of Defendants Bruning, Cookson, and Lopez that the Cease & Desist Order issued by them precludes any attorney at Farney Daniels from representing Activision in the present case (assuming they were admitted by this Court *pro hac vice*).

137.    On information and belief, it is the position of Defendants Bruning, Cookson, and Lopez that the Cease & Desist Order issued by them precludes any attorney at Farney Daniels from representing Activision in the CenturyLink and CSG cases, and any other cases involving

companies who have at least some operations in Nebraska, assuming that attorneys at that Firm otherwise obtained permission for such representation in the relevant Court *pro hac vice*.

138.    On information and belief, it is the position of Defendants Bruning, Cookson, and Lopez that the Cease & Desist Order issued by them precludes any attorney at Farney Daniels from representing Activision by sending letters either asserting patent infringement, or inquiring as to potential patent infringement, to any company incorporated in or headquartered in Nebraska who may be infringing Plaintiff Activision's patents.

139.    On information and belief, it is the position of Defendants Bruning, Cookson, and Lopez that the Cease & Desist Order issued by them precludes any attorney at Farney Daniels from representing Activision by sending letters either asserting patent infringement, or inquiring as to potential patent infringement, to any company who may be infringing Plaintiff Activision's patents who may in part be conducting such infringing activities in Nebraska, whether or not the letter to be sent to such company is sent into Nebraska or elsewhere.

140.    On information and belief, Plaintiff Activision has a right to retain counsel to have that counsel send letters on Activision's behalf notifying a party reasonably believed to be infringing a patent owned by Activision of that potential infringement, and to inquire as to the same.  Such right is protected by at least the First, Fifth, Fourteenth Amendments to the U.S. Constitution.

141.    On information and belief, Activision's rights to send letters such as those identified in Exhibit C, or to bring suit as represented by the original Complaint in this case, cannot be impeded or impaired by any state law in Nebraska by virtue of the Supremacy Clause, and the Preemption Doctrine, absent allegation and proof that the actions of Activision or its counsel were both objectively baseless and subjectively baseless.

28

142.    On information and belief, Defendants Bruning, Cookson, and Lopez conducted no investigation and had no reasonable basis to believe or assert that any statements contained in the letters in Exhibit C, or the suits represented by Exhibits D or E, or this suit, contain any statements related to the Asserted Patents or their infringement that was objectively baseless.

143.    On information and belief, Defendants Bruning, Cookson, and Lopez conducted no investigation and had no reasonable basis to believe or assert that any statements contained in the letters in Exhibit C, or the suits represented by Exhibits D or E, or this suit, contain any statements related to the Asserted Patents or their infringement that was subjectively baseless.

144.    On information and belief, the Cease & Desist Order issued by Defendants Bruning, Cookson, and Lopez deprived Plaintiff Activision of its choice of counsel to send letters regarding the Activision Patents notifying identified infringers in Nebraska of their infringement, or inquiring of potential infringers identified in Nebraska of their potential infringement.

145.    On information and belief, the Cease & Desist Order issued by Defendants Bruning, Cookson, and Lopez was without basis in law.

146.    On information and belief, the Cease & Desist Order issued by Defendants Bruning, Cookson, and Lopez was issued without a hearing.

147.    On information and belief, the regulation of the practice of law is reserved to the Nebraska Supreme Court.

148.    On information and belief, Defendants Bruning, Cookson and/or Lopez, or persons acting at their direction or under their control, do not have the authority to regulate law firm conduct or regulate the practice of law within the state of Nebraska.

149.    On and information and belief, the practice of law in this Court, and the admission to practice *pro hac vice* before this Court, are governed by the rules and decisions of this Court.

150.    On and information and belief, Defendants Bruning, Cookson, and/or Lopez, or persons acting at their direction or under their control, do not have authority to direct or regulate the practice of law before this Court, or to determine which attorneys are permitted to practice before this Court.

151.    On information and belief, the Cease & Desist Order issued by Defendants Bruning, Cookson, and Lopez, deprived and continues to deprive Plaintiff Activision of its right to choice of counsel in violation of at least:

(a) the First Amendment to the U.S. Constitution;

(b) the Fifth Amendment to the U.S. Constitution;

(c) the Fourteenth Amendment to the U.S. Constitution;

(d) Title 35, U.S. Code; and

(e) Article VI, Clause 2 of the U.S. Constitution ("the Supremacy clause").

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment for itself and against Defendants as follows:

## PRAYER FOR RELIEF – COUNT I

A.    An adjudication that Defendant has infringed the Activision Patents;

B.    Permanently enjoining and restraining Defendant, its agents, affiliates, subsidiaries, servants, employees, officers, directors, attorneys, and those persons in active concert with or controlled by Defendant from further infringing the Activision patents;

C.      An award of damages to be paid by Defendant adequate to compensate Plaintiff for its past infringement of the Activision Patents and any continuing or future infringement of the Activision Patents through the date such judgment is entered, together with pre-judgment and post-judgment interest, costs and expenses as justified under 35 U.S.C. § 284;

D.      To the extent that Defendant's conduct with respect to the Activision Patents is found to be willful, enhanced damages pursuant to 35 U.S.C. § 284 for such willful infringement of the Activision Patents.

E.      An accounting of all infringing acts including, but not limited to, those acts not presented at trial and an award for Plaintiff's damages for any such acts;

F.      A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of Plaintiff's reasonable attorneys' fees; and

G.      Such other and further relief at law or in equity as the Court deems just and proper.

## PRAYER FOR RELIEF – COUNT II

H.      A declaration that neither Plaintiff Activision, nor counsel acting on its behalf, have violated Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1601 *et seq*. (Reissue 2010, Supp. 2012).

I.      A declaration that neither Plaintiff Activision, nor counsel acting on its behalf, have violated The Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301 *et seq*. (Reissue 2008, Supp. 2010).

J.      Such preliminary and permanent injunctive relief as Plaintiff may show itself to be entitled.

K.      Such other and further relief at law or in equity as the Court deems just and proper.

## PRAYER FOR RELIEF – COUNT III

L.      An order enjoining Defendants Bruning, Cookson, and Lopez, and any of their authorized agents or representatives from enforcing the Cease & Desist Order provided in the July 18 Nebraska AG Letter with respect to Farney Daniels PC, or specific attorneys in that Firm, or otherwise admitted by this Court to represent Activision in this case.

M.      An order enjoining Defendants Bruning, Cookson, and Lopez, and any of their authorized agents or representatives from enforcing the Cease & Desist Order provided in the July 18 Nebraska AG Letter with respect to Farney Daniels PC, or specific attorneys in that Firm, from representing Activision in the sending of letters related to Activision Patents to parties in the State of Nebraska, or to companies outside the State of Nebraska who may also have operations in Nebraska.

N.      Such preliminary and permanent injunctive relief as Plaintiff may show itself to be entitled.

O.      Such other and further relief at law or in equity as the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues triable as such.

## PLACE OF TRIAL

Pursuant to NE Civ. R. 40.1(b), Plaintiff hereby requests that trial of this case take place in Omaha, Nebraska.

32

August 19, 2013                                ACTIVISION TV, INC., Plaintiff


                                       By: /s/ John P. Passarelli
                                            John P. Passarelli #16018
                                            Edward Warin #14396
                                            Sean P. Connolly #23614
                                            Kutak Rock LLP
                                            The Omaha Building
                                            1650 Farnam Street
                                            Omaha, NE  68102-2186
                                            (402) 346-6000

                                            Steven E. Achelpohl #10015
                                            Gross & Welch P.C., L.L.O.
                                            1500 Omaha Tower
                                            2120 South 72nd Street
                                            Omaha, Nebraska 68124-2342
                                            (402) 392-1500