**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| ACTIVISION TV, INC., §<br>§<br>Plaintiff, §<br>v. §<br>§<br>PINNACLE BANCORP, INC., §<br>§<br>and §<br>§<br>§<br>JON BRUNING, Attorney General of §<br>Nebraska (in his official capacity); DAVID §<br>D. COOKSON, Chief Deputy Attorney §<br>General of Nebraska (in his official §<br>capacity); DAVID A. LOPEZ, Assistant §<br>Attorney General of Nebraska (in his official §<br>capacity), §<br>§<br>Defendants. § | Civil Action No. 8:13-cv-00215 |

**ACTIVISION TV, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ACTIVISION'S MOTION TO ENJOIN ENFORCEMENT BY DEFENDANTS BRUNING, COOKSON, AND LOPEZ OF THE JULY 18 NEBRASKA AG CEASE AND DESIST ORDER AS IT RELATES TO AND IMPAIRS LAWFUL ACTIVITIES OF ACTIVISION**

# TABLE OF CONTENTS

**CONTENTS** **PAGE**

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND................................................................................................. 2

ARGUMENT........................................................................................................................ 11

I. Activision Has a Likelihood of Success on the Merits Such That it Will Be Entitled to a Final Judgment That Includes a Permanent Injunction of a Scope Similar to That of the Preliminary Injunction Requested by this Motion ............................................................... 12

   A. Activision Has a Likelihood of Success on Count II ...................................................... 14

      1. The Conduct of Activision and Its Counsel upon which the Nebraska AG Based Its Cease and Desist Order Did Not Violate the Identified Nebraska State Laws ............ 14

      2. Independent of the Specific Requirements of the Identified Nebraska State Laws, the Doctrine of Preemption Imposes the Requisite Additional Elements of "Objective Baselessness" and "Subjective Baselessness" Which the Nebraska AG Cannot Prove ....................................................................................................................... 17

   B. Activision Has a Likelihood of Success on the Merits With Respect to Count III .......... 20

      1. Activision Has Constitutional Rights to Its Choice of Counsel That Are Violated by the Cease and Desist Order ............................................................................................... 23

         a. Activision Has Rights to Its Choice of Counsel in Exercising Its First and Fourteenth Amendment Rights to Engage in Patent Licensing and Enforcement .................... 23

         b. Activision's Right to its Choice of Counsel is Violated by the Cease and Desist Order ............................................................................................................. 24

      2. Activision's Patents are Property Subject to the Fifth Amendment Protection From a "Taking" Without Due Process, a Right Violated by the Cease and Desist Order ...... 25

         a. Activision's Patents Are Property Subject to the Protections of the Fifth Amendment ........................................................................................................... 25

   C. The Nebraska AG Cease and Desist Order Unlawfully Deprived Activision of Its Rights Under the First, Fifth, and Fourteenth Amendments to the U.S. Constitution, as well as Its Rights Under Title 35, U.S. Code, and As Such is a Violation of 42 U.S.C. § 1983 ....... 27

II. Activision Will Suffer Irreparable Harm if the Preliminary Injunction Is Not Granted ....... 28

III. An Assessment of the "Balance of Harms" Completely Weighs in Favor of Granting the Preliminary Injunction............................................................................................................. 30

IV. The Public Interest Will Be Served by the Grant of the Requested Preliminary Injunction. 32

CONCLUSION....................................................................................................................... 33

# TABLE OF AUTHORITIES

**Cases**

*Advantage Media, LLC v. City of Hopkins,*
    511 F.3d 833 (8th Cir. Minn. 2008).................................................................11

*Alexander v. Macoubrie,*
    982 F.2d 307 (8th Cir. Mo. 1992).............................................................24, 27

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...................................................................................18

*In re BellSouth Corp.,*
    334 F.3d 941 (11th Cir. 2003) ..................................................................23, 24

*Brawley Distrib. Co. v. Polaris Indus. Partners L.P.,*
    1989 U.S. Dist. LEXIS 19188 (D. Minn. Apr. 28, 1989).....................................28

*Brooks Furniture Mfg. v. Dutailier Int'l, Inc.,*
    393 F.3d 1378 (Fed. Cir. 2005)...................................................................32

*Brulotte v. THYS Co.,*
    379 U.S. 29 (1964).....................................................................................25

*Cal. Hosp. Ass'n v. Maxwell-Jolly,*
    776 F. Supp. 2d 1129 (E.D. Cal. 2011)..........................................................28

*Christopher v. Harbury,*
    536 U.S. 403 (2002)...............................................................................23, 24

*Concrete Unlimited v. Cementcraft, Inc.,*
    776 F.2d 1537 (Fed. Cir. 1985)..............................................................15, 17

*Dataphase Systems, Inc. v. C L Systems, Inc.,*
    640 F.2d 109 (8th Cir. 1981) ......................................................................11

*eBay Inc. v. MercExchange, L.L.C.,*
    547 U.S. 388 (2006)...................................................................................25

*Elrod v. Burns,*
    427 U.S. 347 (1976)...................................................................................30

*Epistar Corp. v. Philips Lumileds Lighting Co., LLC,*
    2008 U.S. Dist. LEXIS 79448 (N.D. Cal. Aug. 26, 2008)....................................17

*FieldTurf Int'l, Inc. v. Sprinturf, Inc.*,
    433 F.3d 1366 (Fed. Cir. 2006)..........................................................................15

*Firetree, Ltd. v. Creedon*,
    2008 U.S. Dist. LEXIS 39863 (M.D. Pa. May 15, 2008) .......................................29

*Fla. Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*,
    119 S. Ct. 2199 (1999).........................................................................................25

*Gary v. N.J. Dep't of Consumer Affairs Office of Consumer Prot.*,
    2011 U.S. Dist. LEXIS 108963 (E.D. Pa. Sept. 22, 2011) .....................................26

*Globetrotter Software, Inc. v. Elan Computer Croup, Inc.*,
    362 F.3d 1367 (Fed. Cir. 2004)......................................................................17, 18

*GMP Techs., LLC v. Zicam, LLC*,
    2009 U.S. Dist. LEXIS 115523 (N.D. Ill. Dec. 9, 2009) .......................................19

*Harrison v. Springdale Water & Sewer Comm'n*,
    780 F.2d 1422 (8th Cir. 1986) .......................................................................23, 27

*Hildebrand v. Steck Mfg. Co.*,
    279 F.3d 1351 (Fed. Cir. 2002).............................................................................16

*Hunter Douglas, Inc. v. Harmonic Design*,
    153 F.3d 1318 (Fed. Cir. 1998).............................................................................17

*Infection Prevention Techs., LLC v. UVAS, LLC*,
    2011 U.S. Dist. LEXIS 105666 (E.D. Mich. July 25, 2011) ...................................19

*Motorola Solutions, Inc. v. In re Innovatio IP Ventures, LLC*,
    2013 U.S. Dist. LEXIS 15968 (N.D. Ill. Feb. 4, 2013) .........................................18

*Johnson v. Collins*,
    233 F. Supp. 2d 241 (D.N.H. 2002).......................................................................28

*Matthews Int'l, Corp. v. Biosafe Eng'g, LLC*,
    2011 U.S. Dist. LEXIS 110010 (W.D. Pa. Sept. 27, 2011)...................................19

*Matthews Int'l Corp. v. Biosafe Eng'g, LLC*,
    695 F.3d 1322 (Fed. Cir. 2012).............................................................................18

*McCuin v. Texas Power & Light Co.*,
    714 F.2d 1255 (5th Cir. Tex. 1983) .......................................................................23

*Midwest Indus., Inc. v. Karavan Trailers, Inc.*,
    175 F.3d 1356 (Fed. Cir.1999)..............................................................................17

*Mitchell v. Johnston,*
    701 F.2d 337 (5th Cir. 1983) ..................................................................23

*N. Cheyenne Tribe v. Jackson,*
    433 F.3d 1083 (8th Cir. S.D. 2006) ..........................................................11

*Nobelpharma Ab v. Implant Innovations,*
    141 F.3d 1059 (Fed. Cir. 1998)................................................................17

*Noble Fiber Techs., LLC v. Argentum Med. LLC,*
    2006 U.S. Dist. LEXIS 43357 (M.D. Pa. June 27, 2006) ......................19

*O. M. Droney Beverage Co. v. Miller Brewing Co.,*
    365 F. Supp. 1067 (D. Minn. 1973)..........................................................28

*Oglala Sioux Tribe v. C & W Enters.,*
    542 F.3d 224 (8th Cir. S.D. 2008) ...........................................................12

*Pestrak v. Ohio Elections Com.,*
    926 F.2d 573 (6th Cir. Ohio 1991) ...........................................................16

*Planned Parenthood Minnesota, North Dakota, South Dakota v. Rounds,*
    530 F.3d 724 (8th Cir. 2008) ...................................................................12

*Prism Techs., LLC v. McAfee, Inc.,*
    2013 U.S. Dist. LEXIS 19363 (D. Neb. Feb. 13, 2013) .........................32

*Prof'l Real Estate Investors v. Columbia Pictures Indus.,*
    508 U.S. 49 (1993)....................................................................................18

*PSN Ill., Inc. v. Ivoclar Vivadent, Inc.,*
    2005 U.S. Dist. LEXIS 21044 (N.D. Ill. Sept. 21, 2005) ......................17

*Q-Pharma, Inc. v. Andrew Jergens Co.,*
    360 F.3d 1295 (Fed. Cir. 2004).................................................................18

*Radio Sys. Corp. v. Accession, Inc.,*
    638 F.3d 785 (Fed. Cir. 2011)...................................................................16

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.,*
    148 F.3d 1355 (Fed. Cir. 1998).................................................................16

*Silent Drive, Inc. v. Strong Indus.,*
    326 F.3d 1194 (Fed. Cir. 2003).................................................................16

*Southeastern Promotions, Ltd. v. Conrad,*
    420 U.S. 546, 550 (1975)..........................................................................16

*Synagro-Wwt, Inc. v. Louisa County,*
  2001 U.S. Dist. LEXIS 10987 (W.D. Va. July 18, 2001) ......................................29

*Texas Catastrophe Property Ins. Ass'n v. Morales*,
  975 F.2d 1178 (5th Cir. 1992) ...............................................................23, 24

*Virginia Panel Corp. v. MAC Panel Co.*,
  133 F.3d 860 (Fed. Cir. 1997)............................................................................17

*Virtue v. Creamery Package Mfg. Co.*,
  227 U.S. 8 (1913)................................................................................................17

*Viskase Companies, Inc. v. World PAC Intern. AG*,
  710 F. Supp. 2d 754 (N.D. Ill. 2010) ................................................................19

*Vonage Holdings, Corp. v. Neb. PSC*,
  543 F. Supp. 2d 1062 (D. Neb. 2008) ..........................................................11, 12

*Weaver v. Bonner*,
  309 F.3d 1312 (11th Cir. Ga. 2002)...................................................................15

*WWP, Inc. v. Wounded Warriors, Inc.*,
  566 F. Supp. 2d 970 (D. Neb. 2008) ..................................................................11

*Zenith Elecs. Corp. v. Exzec, Inc.*,
  182 F.3d 1340 (Fed. Cir. 1999)..............................................................14, 17, 18

**Statutes**

28 U.S.C. § 1654.......................................................................................................23

35 U.S.C. § 285.........................................................................................................32

42 U.S.C. § 1983...........................................................................................10, 13, 20, 22

Lanham Act..........................................................................................................14, 17

NEB. REV. STAT. § 48-2802 ......................................................................................32

NEB. REV. STAT. § 59-1602 ................................................................................14, 15

NEB. REV. STAT. § 87-303.03(1)(b) ..........................................................7, 14, 20, 26

Nebraska Deceptive Trade Practices Act........................................................8, 12, 15

NEB. REV. STAT. § 87-302 ........................................................................................15

NEB. REV. STAT. § 303.01(b) ...................................................................................15

Nebraska Unfair Competition Act ...............................................................................8, 10

Title 35, U.S. Code ....................................................................................................8, 21, 27

**Other Authorities**

First Amendment of the U.S. Constitution ....................................................22, 23, 24

Fifth Amendment of the U.S. Constitution .............................................................2, 26

Eleventh Amendment of the U.S. Constitution ...........................................................28

United States Bill of Rights ............................................................................................27

FED. R. CIV. P. 11 ...............................................................................................................8

FED. R. CIV. P. 65 ....................................................................................................1, 2, 10

Neb. Ct. R. § 3-100 .........................................................................................................21

Fourteenth Amendment of the U.S. Constitution .....................................................2, 7

Supremacy Clause of the U.S. Constitution...........................................................8, 9, 10

United States Constitution ............................................................................................27

**<u>INTRODUCTION</u>**

Plaintiff Activision TV, Inc. respectfully submits this Memorandum of Law in support of Plaintiff's Motion pursuant to Fed. R. Civ. P. 65. Plaintiff's Motion seeks a preliminary injunction enjoining Defendants Bruning, Cookson and Lopez (collectively "the Nebraska AG") from taking any steps to enforce the Cease and Desist Order issued to Farney Daniels on July 18, 2013 (Declaration of M. Brett Johnson (("Johnson Decl."), Ex. A) in any manner that would prevent or impede the Farney Daniels firm from representing Activision in connection with licensing and litigation of U.S. patents owned by Activision with respect to companies based in, or having operations in, Nebraska. By seeking a preliminary injunction, Activision does not seek extreme or excessive relief. Instead, Activision merely seeks to restore the status quo, as it stood prior to the Nebraska AG's issuance of the Cease and Desist Order, until the merits of this action are decided. Further, this injunction will operate to reign in the Nebraska AG's attempts to usurp the authority of this Court to decide whether an attorney may be admitted to practice before it *pro hac vice*, as well as the Nebraska Supreme Court's authority to regulate the practice of law in Nebraska. As part of this Motion, Activision also seeks to add William Bryan Farney and M. Brett Johnson of Farney Daniels PC *pro hac vice* to represent Activision in this case. *See* Johnson Decl., Ex. D, E.

In this Memorandum, Activision presents this Court with facts and law demonstrating that the Cease and Desist Order issued on July 18, 2013 by the Nebraska AG is without lawful basis. The Order is outside the authority of the Nebraska AG, and without basis in Nebraska law. Further, the Order is an unprecedented and unwarranted violation of the rights of both the Farney Daniels firm and Activision under the U.S. Constitution and federal law. Further, even if there were some Nebraska law which purported to grant the Nebraska AG authority to issue the Cease and Desist Order, which there is not, such Nebraska law would be preempted by the U.S.

Constitution and federal law and be unenforceable as to Activision, or its counsel Farney Daniels with respect to its representation of Activision.

Activision will also demonstrate in this Memorandum that the issuance by the Nebraska AG of the Cease and Desist Order has had an immediate and irreparable impact on rights Activision has under the U.S. Constitution and federal laws. Further, because Activision's property rights affected hereby relate to U.S. patents, which by definition are a time-limited asset, the effect of the Cease and Desist Order to impede or delay Activision's assertion of rights under those patents comprises an unconstitutional taking of Activision's property without due process by the Nebraska AG, in violation of the Fifth and Fourteenth Amendments of the U.S. Constitution. Activision will suffer irreparable harm if this preliminary injunction motion is not granted. Further, Activision demonstrates that the other requirements for the grant of a preliminary injunction under Rule 65 and applicable case law is met in this case, and on the grounds set forth below respectfully requests entry of the preliminary injunction as set forth in the Proposed Order conveyed to this Court.

## FACTUAL BACKGROUND

As set forth in the attached Declaration of Mr. David Gothard, Plaintiff Activision is a Delaware corporation having a principal place of business in Naples, Florida. Johnson Decl., Ex. B. Activision was founded and is owned and managed by Mr. David Gothard. *Id.* Mr. Gothard is an individual with over 40 years' experience in the advertising and marketing fields. *Id.* Mr. Gothard is also a recognized inventor, being a named inventor on five U.S. patents relating to digital signage. *Id.* These patents include U.S. Patents Nos. 8,330,613 ("the '613 Patent"); and 7,369,058 ("the '058 Patent") (collectively, "Activision Patents"). *Id.* Both of these patents have been asserted against Defendant Pinnacle Bancorp, Inc. in Count I for Patent Infringement in the present case. *See* Amended Complaint.

Plaintiff Activision conducts business in the field of remote digital signage, including products and services covered by Activision Patents. Johnson Decl., Ex. B.  For the past several years, the business of remote digital signage to which Activision was a significant early innovative contributor, has grown significantly. *Id.*  As part of this industry growth, Plaintiff Activision became aware of a number of competitors in the field using Activision's patented technology without a license. *Id.* Further, Plaintiff Activision became aware of a number of businesses who began using remote digital signage covered by Activision Patents, without taking a license from Activision. *Id.*

To address this unlawful infringement of its U.S. patent rights, Activision sought to engage the best patent counsel it could obtain to assist it in enforcing its rights. *Id.* In its first efforts, Activision retained the nationally recognized law firm of Kirkland & Ellis LLP to bring patent infringement suits against several infringing competitors. *Id.*  That initial activity led to all of the defendants taking royalty-bearing licenses. *Id.*

By this time, early 2012, Activision had become aware of a number of additional infringers beyond that which Kirkland & Ellis was prepared to address. *Id.*  As a result, Activision searched for new and different nationally recognized counsel, and retained Farney Daniels PC. *Id.* Activision understands that Farney Daniels PC is comprised of highly experienced patent litigators who were previously partners at some of the largest law firms in the world, all of whom are specialists in patent litigation with decades of experience. *Id.*  Indeed, the Farney Daniels firm regularly receives national recognition and designations reflecting the preeminence and reputations of individual shareholders in the firm, as well as the firm as a whole. *See* Johnson Decl.

Activision retained Farney Daniels on or about June 2012 to assist Activision in identifying entities infringing Activision Patents, to seek licenses from such infringers, and to institute litigation against infringers who refuse to take a license. *Id*. Since June 2012, the Farney Daniels firm has been assisting Activision in connection with its licensing and patent enforcement activity. *Id.*

As part of this licensing and patent enforcement activity, the Farney Daniels firm, acting on behalf of Activision, communicated by letter with five companies operating within the State of Nebraska. *Id.* The companies that were contacted, and the letters that were sent, are identified in the following table, and attached hereto as exhibits, and incorporated herein by reference.

| Company | Letter Date | Exhibit No. |
|---|---|---|
| Borsheim Jewelry Company, Inc. | 2/7/13 | C1 |
| CSG Systems, Inc. | 2/7/13 | C2 |
| CSG follow up letter | 3/1/13 | C3 |
| Marcus Theatres Corp. d/b/a Douglas Theatres | 2/7/13 | C4 |
| Nanonation, Inc. | 8/1/12 | C5 |
| Pinnacle Bancorp, Inc. | 2/7/13 | C6 |

As the Court can see from viewing the letters identified as Exhibits C1-C6, the letters notified the recipient of Activision's Patents, indicated that Activision understood the recipient to be infringing those patents, explained Activision's willingness to enter into a license to use the patents, and also made clear Activision's willingness to receive information establishing a lack of infringement by any such recipient if the recipient believed it was not infringing. Johnson Decl., Ex. C1-C6. No recipient of any of the letters in Exhibits C1-C6 responded with information demonstrating they did not infringe the Activision Patents. Although Borsheim Jewelry responded that it no longer used its system, it did not deny the system infringed when in use. Johnson Decl., Ex. B. Also, no recipient of any of the letters in Exhibits C1-C6 responded to Activision seeking a license under the Activision Patents. *Id.*

To address the infringement of the above-identified parties, Activision, with the assistance of the Farney Daniels firm, sought the assistance of local counsel admitted to practice in the U.S. District Courts where suit for patent infringement against the particular company would be appropriate. *Id*. As part of this process, and in keeping with Activision's consistent desire to be represented by quality counsel, Activision retained the nationally known law firm of Kutak Rock, LLP to represent it in connection with its suit for patent infringement against Defendant Pinnacle represented by the Original Complaint, and Count I of the First Amended Complaint, in this present suit. *Id.* The Farney Daniels firm worked with Kutak Rock to draft and prepare the Original Complaint filed against Defendant Pinnacle in this Court on July 12, 2013. Johnson Decl.

As is customary practice nationwide, Activision's expectation was that it would ask Kutak Rock to move for admission of attorneys from the Farney Daniels firm to represent Activision *pro hac vice* in the patent infringement suit brought against Defendant Pinnacle in this Court. Johnson Decl., Ex. B. At the time of the issuance of the Nebraska AG Cease and Desist Order on July 18, 2013, the motion to admit attorneys from Farney Daniels *pro hac vice* into this case had not yet been filed. *Id.*

Activision had previously taken steps in June 2013 to enforce its patent rights against another of the recipients of the letters identified above, CSG Systems, Inc. ("CSG"). *Id.* In this action, Activision retained Stamoulis & Weinblatt LLC, which is a firm having counsel admitted in, and having experience in patent litigation in, the U.S. District Court for the District of Delaware. *Id.* Activision, in conjunction with review by the Farney Daniels firm, and the Stamoulis firm, determined that it was appropriate to bring suit against CSG in Delaware because CSG is a Delaware corporation, even though it has operations in Nebraska. *Id.* That suit

was filed June 3, 2013. *Id.* Again, the intention and expectation was that Activision would add Farney Daniels attorneys to represent Activision in that case as well, but, again, the Farney Daniels attorneys were not yet part of that action at the time the Cease and Desist Order was issued on July 18. *Id.*

Also, relevant to the breadth of the Cease and Desist Order as applied to this case, recent evidence has come to light of the breathtaking scope the Nebraska AG believes should be ascribed to its Cease and Desist Order, making recitation of the following facts relevant background. Another company whom Activision has identified as infringing its patents is CenturyLink, Inc. d/b/a Century Link Communications ("CenturyLink"). CenturyLink is a Louisiana corporation, headquartered in Louisiana, with operations at least in Texas and Nebraska. *Id.* Neither the Farney Daniels law firm, nor Activision, ever communicated with CenturyLink in Nebraska, although Activision did send a letter similar to those in Exhibit C to CenturyLink in Louisiana. Johnson Decl., at ¶ 11; Ex. B.

As no license agreement was reached, Activision brought suit against CenturyLink in the U.S. District Court for the Eastern District of Texas on June 5, 2013. Johnson Decl., Ex. B. Again, Activision used local counsel admitted to practice in that court with the expectation that attorneys from the Farney Daniels firm would subsequently either make an appearance on behalf of Activision in that matter (for the Farney Daniels' attorneys who are admitted in that Court) or, for whom a motion for admission *pro hac vice* would be filed (for the Farney Daniels' attorneys for whom admission *pro hac vice* would be required). *Id.*

After this suit was filed, Farney Daniels engaged in further discussion with counsel for CenturyLink in hopes that the matter could be resolved without the parties incurring unnecessary legal expense in proceeding with the suit. Johnson Decl. Prior to the issuance of the Cease and

Desist Order on July 18, these discussions were ongoing. *Id.* The expectation was that the discussions would lead to either resolution prior to the need to effect service of the suit or for the need of the attorneys of Farney Daniels to make an appearance. *Id.* However, it was understood that if those discussions failed, that service would be effected, and attorneys for Farney Daniels would make an appearance to represent Activision as lead counsel in the CenturyLink matter. *Id.* The reasons for providing this description of the CenturyLink matter will be explained as part of the remarkable events which occurred on and after July 18, 2013.

As has been referenced numerous times, on July 18, 2013, the Farney Daniels firm received from Defendants Bruning, Cookson, and Lopez, on behalf of the Office of the Nebraska Attorney General, a Civil Investigative Demand directed at the Firm (not directed at any particular client of the Firm). *Id.* Accompanying that Civil Investigative Demand was a letter in which various accusations were made regarding the Firm, including accusations related to the Firm's conduct and representation of Activision. *Id. See also* Johnson Decl., Ex. A. At the conclusion of the letter, the Nebraska AG invoked its purported authority under Neb. Rev. Stat. § 87-303.03(1)(b) to issue a Cease and Desist Order, ordering: that the Farney Daniels firm "immediately cease and desist the initiation of any and all new patent infringement enforcement efforts within the State of Nebraska pending the outcome of this office's investigation." *See* Johnson Decl., at ¶ 17; Ex. A.

As will be explained below, the U.S. Supreme Court and the U.S. Court of Appeals for the Federal Circuit have made it clear that the sending of letters regarding a person's patent rights — whether to provide notice of the patents, notice of infringement, offer a license, demand cessation of infringement, or threaten suit for infringement — is a right protected by the First and Fourteenth Amendments of the U.S. Constitution, as well as the U.S. patent laws set forth in

Title 35, U.S. Code. The only exception to this is where it can be specifically pled and proven that the sending of such letters was done in "bad faith," which the Supreme Court and the Federal Circuit have held require specific pleading and proof that the gravamen of the letters is both "objectively baseless" and "subjectively baseless." The actions of Activision, and its counsel, in both sending the letters identified in Exhibits C1-C6, and in filing the suit against Defendant Pinnacle in this case, were entirely proper and well-grounded. Any assertion that such conduct was either or both "objectively baseless" and "subjectively baseless" would be frivolous, wholly without support, and if made in the pleadings submitted to this Court, would be in violation of FED. R. CIV. P. 11.

Moreover, there is no basis to assert that the actions of Activision, and its counsel, in both sending the letters identified in Exhibits C1-C6, and in filing the suit against Defendant Pinnacle in this case, violate any of the Nebraska state laws identified by the Nebraska AG in its July 18 letter. In that letter, the Nebraska AG alleged that, among other things, that sending the letters identified in Exhibits C1-C6 by the Farney Daniels firm on behalf of Activision represented violations of §§ 59-1602, 87-302, and/or 87-303.01. *See* Johnson Decl., Ex. A. As the Court is aware, these Sections generally reference what are commonly referred to as the Nebraska Unfair Competition Act, and the Nebraska Deceptive Trade Practices Act. Activision will demonstrate below that the accused letters do not violate the provisions of either of those laws. Moreover, both the U.S. Supreme Court and the Federal Circuit are clear that to the extent any of these Nebraska state laws applied to the accused letters, or to the filing by Activision of this suit, gave the Nebraska AG authority to interfere with any of these actions, then such law would be preempted by the Supremacy Clause of the U.S. Constitution in the absence of proof of "bad faith," which, as noted above, would require proof, in addition to the requirements for the

particular Nebraska state law, that the conduct was both "objectively baseless" and "subjectively baseless."

Despite the lack of any basis for the Cease and Desist Order, Farney Daniels believes that it is appropriate for it to abide by such Order until it, or a client affected by it, gets relief from such Order, either by having it withdrawn by the Nebraska AG, or having it struck and vacated by a court. At present, Farney Daniels intends to comply with the inappropriate and ill-founded Civil Investigative Demand provided to it by the Nebraska AG, in the belief that a review of the provided materials will demonstrate to the Nebraska AG that its investigation should be immediately terminated and the Cease and Desist Order immediately vacated and terminated. Johnson Decl. However, at present there is no way for Farney Daniels to predict how promptly Nebraska AG will act, or what action he will take, given the unprecedented and ill-founded actions already taken by that Office. *Id.*

As a result of the Cease and Desist Order, and Farney Daniels's view that it should comply with the Order until it is otherwise vacated or enjoined, the present effect of the Cease and Desist Order is to prevent Activision from relying upon Farney Daniels to represent it in enforcement of its patent rights with respect to infringers identified within the State of Nebraska. *Id.* But, remarkably, the Nebraska AG has taken the position that the scope of its Cease and Desist Order is even broader. *Id.* The Court will recall the presentation of certain facts above about the CenturyLink case. As a reminder, Activision is a Delaware corporation with headquarters in Florida. *Id.* CenturyLink is a Louisiana corporation with headquarters in Louisiana. *Id.* CenturyLink has operations and facilities in Texas, as well as Nebraska. *Id.* CenturyLink's in-house counsel informed Farney Daniels on August 2, 2013 that the Nebraska AG had contacted CenturyLink, informed them of the Civil Investigative Demand issued to

Farney Daniels, and of the Cease and Desist Order issued to Farney Daniels, and led CenturyLink to believe that the Cease and Desist Order prevented or impaired the ability of Activision to serve its Complaint filed against CenturyLink in the case pending in the U.S. Court for the Eastern District of Texas. *Id.* Thus, Activision, and its firm, Farney Daniels, have reason to believe that the scope of the Nebraska AG Cease and Desist Order is such that it extends to prevent Farney Daniels from even serving a complaint on Activision's behalf, let alone representing Activision with respect to any potential infringer in the nation if that potential infringer has facilities or operations in Nebraska.

Without doubt, the effect of the Cease and Desist Order, and the breathtaking scope the Nebraska AG assigns to that Cease and Desist Order, has unconstitutionally impaired Activision's protected rights to enforce its U.S. patents, and to do so by the counsel of its choice. Because the patents are by definition a time-limited asset, and because the ongoing litigations have timing considerations in their own right, even the delay posed by the Cease and Desist Order will cause Activision irreparable harm if not addressed by the preliminary injunction sought by this Motion.

Given the facts presented in this Background, Activision presents the law below to demonstrate that the requirements for issuance of the preliminary injunction under Rule 65 are met in this case. Specifically, Activision will demonstrate that it has a likelihood of success on the merits of its suit against the Nebraska AG under 42 U.S.C. § 1983, as well as its suit for a declaration that neither Activision, nor counsel operating on Activision's behalf, have violated either the Nebraska Unfair Competition Act or the Nebraska Deceptive Trade Practices Act. Activision will demonstrate that it will suffer irreparable harm if the requested injunction is not granted. Activision will also demonstrate that the balance of harms weighs in favor of granting

the requested injunction.  And, finally, Activision will demonstrate that the grant of the requested injunction will serve the public interest.

Here, issuing a preliminary injunction in this case would not operate as an extreme or prejudicial remedy.  Instead, the injunction would function to preserve the status quo, as it stood prior to the issuance of the Nebraska AG's unfounded and overreaching Cease and Desist Order. Accordingly, such relief would be just and proper. *See N. Cheyenne Tribe v. Jackson,* 433 F.3d 1083, 1086 (8th Cir. S.D. 2006) (explaining that "virtually every circuit court to consider the question has concluded that a preliminary injunction granting temporary relief that merely maintains the status quo does not confer prevailing party status").  Thus, here, the effect of a preliminary injunction would permit Farney Daniels to appear in this case on behalf of Activision, and would therefore preserve the status quo until the merits of this case are determined, without awarding Activision prevailing party status or altering the parties' legal relationship. *See Advantage Media, LLC v. City of Hopkins,* 511 F.3d 833, 837 (8th Cir. Minn. 2008); *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 & n.5 (8th Cir. 1981).

## ARGUMENT

Whether a preliminary injunction should issue involves consideration of "(1) the probability that the movant will succeed on the merits; (2) the threat of irreparable harm to the movant should the court deny the injunction; (3) the balance between this harm and the harm that granting the injunction will cause to the other litigants; and (4) the public interest." *Vonage Holdings, Corp. v. Neb. PSC*, 543 F. Supp. 2d 1062, 1065 (D. Neb. 2008) citing *Dataphase Sys., Inc.*, 640 F.2d at 114.  "No single factor is determinative, and the motion will not be denied merely because the plaintiff cannot prove probability of success on the merits by some mathematical formula." *WWP, Inc. v. Wounded Warriors, Inc.*, 566 F. Supp. 2d 970, 974 (D. Neb. 2008) citing *Dataphase Sys., Inc.*, 640 F.2d at 113.  "The standard for issuing a preliminary

or permanent injunction is essentially the same, excepting one key difference. A permanent injunction requires the moving party to show actual success on the merits, rather than the fair chance of prevailing on the merits required for a standard preliminary injunction." *Oglala Sioux Tribe v. C & W Enters.*, 542 F.3d 224, 229 (8th Cir. S.D. 2008) citing *Planned Parenthood Minnesota, North Dakota, South Dakota v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008). Here, Activision demonstrates that it can satisfy the four elements required by the issuance of the requested preliminary injunction.

I.      **Activision Has a Likelihood of Success on the Merits Such That it Will Be Entitled to a Final Judgment That Includes a Permanent Injunction of a Scope Similar to That of the Preliminary Injunction Requested by this Motion**

As noted above, the first part of the four-part test for a preliminary injunction requires that Activision show that it has a "likelihood of success" from the merits of the underlying case. As applied here, this means that Activision must demonstrate that it has a likelihood of success, under either Count II or Count III of the First Amended Complaint in securing a judgment from this Court that includes an order vacating and/or enjoining enforcement of the Cease and Desist Order to the extent it can be read to prevent Farney Daniels from representing Activision in connection with its patent licensing and enforcement activity. *See Vonage Holdings, Corp.*, 543 F. Supp. 2d at 1065.

Count II, as set forth in the First Amended Complaint in this case, seeks a declaration that Activision, and its counsel acting on behalf of Activision, has not violated the provisions of the Nebraska Unfair Competition Act, or the Nebraska Deceptive Trade Practices Act identified by the Nebraska AG July 18 letter. The only actions of Activision or its counsel upon which the Cease and Desist Order could theoretically be based was the transmission of the accused letters identified in Exhibits C1-C6, and the preparation and filing of the original Complaint in this

case.  If, at the conclusion of this case, this Court finds that such actions did not violate the identified Nebraska state laws, and issues a declaration to that effect, Activision will be entitled as part of that judgment to an order vacating the Cease and Desist Order, and an injunction against further enforcement, as it may apply to Farney Daniels's representation of Activision.  As Activision demonstrates below, it is highly likely that it will succeed in securing such an order, and therefore the requested preliminary injunction of the same scope should issue (given, as shown further below, that the remaining three elements for securing a preliminary injunction are also met).

Count III, as set forth in the First Amended Complaint, seeks under 42 U.S.C. § 1983 an order vacating the Cease and Desist Order, and an injunction against its further enforcement, as that Order may apply to Farney Daniels's representation of Activision in connection with its patent licensing and enforcement activities.  As shown below, Activision has a high likelihood of success in demonstrating that the Cease and Desist Order unlawfully violates Activision's constitutional and federal rights in several respects.  If the Court agrees, as it should, Activision will be entitled to a judgment to include an injunction consistent with the scope of that sought with respect to the preliminary injunction that is the subject of this motion.

In the following, Activision demonstrates that it has more than a likelihood of success with respect to Count II, and separately with respect to Count III.

### A. Activision Has a Likelihood of Success on Count II

#### 1. The Conduct of Activision and Its Counsel upon which the Nebraska AG Based Its Cease and Desist Order Did Not Violate the Identified Nebraska State Laws

One Nebraska law which the Nebraska AG accuses Activision and its counsel of violating is NEB. REV. STAT. §59-1602. That statute, which is the primary Nebraska Unfair Competition Statute, provides as follows:

> Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce shall be unlawful.

Whatever else this statute may require, at a minimum it requires evidence that the transmission of the letters in Exhibits C1-C6, or the preparation and filing of the original Complaint in this case, was "unfair" or "deceptive." The Nebraska AG decided to issue its Cease and Desist Order without any inquiry to Activision or its counsel (Farney Daniels or Kutak Rock), without any discussion with Activision or its counsel (Farney Daniels or Kutak Rock), without any apparent investigation as to the facts or bases of any of Activision's patent licensing or litigation activities, and without any hearing permitted by NEB. REV. STAT. § 87-303.03(1)(b). Johnson Decl., ¶¶ 21, 22; Ex. B. As a result, there is no indication as to what, if anything, the Nebraska AG may consider "unfair" or "deceptive" as to any of these relevant activities. It is the position of Activision that all of these activities were, in their entirety, carefully considered, grounded in facts and law, and fully authorized by the U.S. Constitution or federal law, and in no way deceptive or unfair. Johnson Decl. Accordingly, Activision believes that it has a high likelihood of success in establishing that its conduct, and the conduct of its

counsel, was neither "unfair" nor "deceptive."  As a result, there can be no finding of any

violation of NEB. REV. STAT. § 59-1602.[1]

The second Nebraska statute alleged by the Nebraska AG to be violated was the

Nebraska Deceptive Trade Practices Act, NEB. REV. STAT.  § 87-302.  That statute enumerates 19

types of deceptive trade practices that are covered by the statute. *Id.*  While it is unclear what

section, if any, the Nebraska AG considered relevant to the transmission by Activision's counsel

of the accused letters or to the filing of the original Complaint in this case, it is apparent that any

of them would require a showing of deception, unfairness, or false or misleading statements.  As

noted above, the Nebraska AG had no communications of any kind with Activision or any of the

counsel for Activision regarding Activision, nor had any hearing permitted under § 87-303.01(b).

Johnson Decl., ¶¶ 21, 22; Ex. B.  As a result, it is not clear what conduct, if any, the Nebraska

AG considered to be a violation of this statute.  In the absence of such a showing, Activision

believes it can demonstrate a likelihood of success in demonstrating that the transmission of the

accused letters by its counsel, and the filing of this original Complaint, do not involve any

deception, unfairness, or false or misleading statement.  Without this, there can be no finding of a

violation of NEB. REV. STAT.  § 87-302.[2]

---

[1] Activision notes also that the Nebraska AG would have to establish that the sending of the accused letters, and/or the filing of the original Complaint in this case, constituted "competition," or the conduct of "trade or commerce" within the meaning of the statute.  Activision does not believe the Nebraska AG would be able to make such a showing.  In a similar context, the federal courts have already ruled that the Lanham Act, the federal unfair competition law governing "competition" and "trade or commerce" does not apply to patent licensing activity. *See, e.g. Zenith Elecs. Corp. v. Exzec, Inc.,* 182 F.3d 1340, 1348 (Fed. Cir. 1999) (holding the Lanham Act does not apply where the only conduct was the assertion of patent rights directly and only to the recipient, and not to any of the recipient's customers about a product or service of the recipient); *Concrete Unlimited v. Cementcraft, Inc.,* 776 F.2d 1537, 1539 (Fed. Cir. 1985) (holding patentee had the right to exclude others from infringing its patent, including threatening alleged infringers with suit, and such actions were not unfair competition); *FieldTurf Int'l, Inc. v. Sprinturf, Inc.,* 433 F.3d 1366, 1372 (Fed. Cir. 2006) ("[i]t is not unfair competition for a patentee to enforce its patent . . . for the patentee has the right to exclude others.").

[2] As noted with respect to NEB. REV. STAT. § 59-1602, it does not appear that the Nebraska AG could demonstrate that this statute even applies to patent licensing at all, as patent licensing is not a "trade practice" within the meaning of the statute.

Further, the Cease and Desist Order operates as unconstitutional restraint on speech regarding statements that have not yet been found to be false, misleading, or deceptive. A cease and desist order will be considered an unconstitutional prior restraint on speech when it "prohibits future statements which, although possibly similar to prior statements, have not yet found to be false, misleading, and deceptive." *Weaver v. Bonner*, 309 F.3d 1312, 1323 (11th Cir. Ga. 2002) (noting that there is a "heavy presumption" against a cease and desist request's constitutional validity); *see also Pestrak v. Ohio Elections Com.*, 926 F.2d 573, 578 (6th Cir. Ohio 1991) (holding that "cease and desist orders are a forbidden prior restraint . . . Prior restraint of speech is unconstitutional unless certain safeguards are present") citing *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 550 (1975). As explained in Section II, *supra*, sending letters to provide notice of, or to assert infringement of patents, is constitutionally protected speech. Here, the cease and desist order constitutes an unconstitutional prior restraint on Activision's First Amendment right to free speech, with no judicial oversight or review – including sending correspondence to alleged infringers on its clients' behalf, as well as instigating new suits in Nebraska courts. Further, the Attorney General has not set up any sort of safeguards to prevent an unconstitutional deprivation of Activision's rights. Here, there is no venue to challenge the cease and desist order, no judicial determination of whether the order is justified or legitimate, and there is no specified period of time in which the restraint will be limited. Thus, the Cease and Desist Order operates as an unconstitutional prior restraint on Activision's speech.[3]

---

[3]Further, it must be noted that given the federal law regarding personal jurisdiction with respect to the sending of letters such as those in Exhibits C1-C6, that neither Plaintiff Activision nor Farney Daniels could be subject to personal jurisdiction in the State of Nebraska solely based off its activity in sending patent licensing inquiry letters into the State. *See, e.g., Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1359 (Fed. Cir. 1998) (explaining that even though the letters are "purposefully directed" at the forum and the declaratory judgment action "arises out of" the letters, letters threatening suit for patent infringement sent by the alleged infringer by themselves "do not suffice to create personal jurisdiction."); *Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 789 (Fed. Cir.

2. **Independent of the Specific Requirements of the Identified Nebraska State Laws, the Doctrine of Preemption Imposes the Requisite Additional Elements of "Objective Baselessness" and "Subjective Baselessness" Which the Nebraska AG Cannot Prove**

The Federal Circuit has held that communications related to patents rights are part of the patent owner's rights. [4] As a result, the letters sent to Plaintiff here have immunity, pursuant to the *Noerr-Pennington* doctrine, from affirmative claims such as Plaintiff's, unless it is both pled and proven that the communications were made in bad faith, meaning they were both objectively and subjectively baseless. [5] *See Zenith Elecs. Corp.*, 182 F.3d at 1352 (patentee's statements regarding its patent rights are privileged and not actionable unless made in bad faith); *Hunter Douglas, Inc. v. Harmonic Design,* 153 F.3d 1318, 1336 (Fed. Cir. 1998) (citing numerous cases for this proposition). The Federal Circuit has also determined that the applicability of *Noerr-Pennington* immunity to both federal and state law claims is a question of Federal Circuit law. *Nobelpharma Ab v. Implant Innovations*, 141 F.3d 1059, 1068 (Fed. Cir. 1998); *Midwest Indus., Inc. v. Karavan Trailers, Inc.,* 175 F.3d 1356, 1359 (Fed. Cir.1999). In considering the scope of this immunity, the Federal Circuit has extended *Noerr-Pennington* immunity to all of the types

---

2011) (same); *Silent Drive, Inc. v. Strong Indus.,* 326 F.3d 1194, 1202 (Fed. Cir. 2003) (same); *Hildebrand v. Steck Mfg. Co.,* 279 F.3d 1351 (Fed. Cir. 2002) (same). Thus, any action attempting to enforce the Cease and Desist Order with respect to future communications would be dismissed for lack of personal jurisdiction.

[4] *Globetrotter Software, Inc. v. Elan Computer Croup, Inc.,* 362 F.3d 1367, 1374 (Fed. Cir. 2004) ("A patentee that has a good faith belief that its patents are being infringed violates no protected right when it so notifies infringers."); *see also Virtue v. Creamery Package Mfg. Co.,* 227 U.S. 8, 37-38 (1913) ("Patents would be of little value if infringers of them could not be notified of the consequences of infringement"); *Concrete Unlimited*, 776 F.2d at 1539 ("patent owner has the right to . . . enforce its patent, and that includes threatening alleged infringers with suit"); *Virginia Panel Corp. v. MAC Panel Co.,* 133 F.3d 860, 869 (Fed. Cir. 1997) (same).

[5] Also, as the communications at issue were made preliminary to this lawsuit, the litigation privilege applies to bar Activision's liability for the statements made in the communications. Specifically, the litigation privilege has been applied to claims, like those asserted by the Nebraska AG, under state unfair competition and deceptive trade practice law. *See, e.g. PSN Ill., Inc. v. Ivoclar Vivadent, Inc.,* 2005 U.S. Dist. LEXIS 21044, at *22 (N.D. Ill. Sept. 21, 2005) (holding that the manufacturer's counterclaim against the patent holder for unfair competition and deceptive trade practices failed because the manufacturer did not allege any disparaging comments by the patent holder outside of the litigation context); *Epistar Corp. v. Philips Lumileds Lighting Co., LLC,* 2008 U.S. Dist. LEXIS 79448 (N.D. Cal. Aug. 26, 2008) (holding that the patent holder's letters alleging infringement were sufficiently related to the administrative litigation to warrant protection based on the state-law litigation privilege from claims of unfair competition and tortious interference.).

of claims that might be purported by the Nebraska AG to be the basis for its Cease and Desist Order. *See, e.g., Globetrotter Software, Inc.*, 362 F.3d at 1376 (state law claims); *Nobelpharma*, 141 F.3d at 1068 (antitrust claims); *Zenith Elecs. Corp.*, 182 F.3d at 1352 (Lanham Act & state law claims).

The Federal Circuit has also considered, and expressly held the *Noerr-Pennington* doctrine applies to protect pre-suit communications, such as the letters that are included as Exhibits C1-C6. *See id.* at 1353 (explaining that *Noerr-Pennington* immunity applies to a patent holder "threatening alleged infringers with suit"); *Globetrotter Software, Inc.,* 362 F.3d at 1376-77 (noting that courts, "almost without exception," have applied the *Noerr-Pennington* protections "to pre-litigation communications"). Thus, it is beyond dispute that the transmission of those letters cannot be a violation of any Nebraska state law, unless in addition to proof of all of the elements required by any particular state law, it is additionally proven that the letters were transmitted in bad faith.[6]

The Federal Circuit provides criteria for assessing whether pleadings of affirmative claims sufficiently allege bad faith. To avoid dismissal, Plaintiff must plead that the accused communications were both objectively and subjectively baseless. *Prof'l Real Estate Investors v. Columbia Pictures Indus.,* 508 U.S. 49, 60 (1993) (explaining that only if the "challenged litigation is objectively meritless may a court examine the litigant's subjective motivation"); *Q-Pharma, Inc. v. Andrew Jergens Co.,* 360 F.3d 1295, 1305 (Fed. Cir. 2004) (similar). Indeed, the Federal Circuit has made clear that the requirements of proving "objective baselessness" and

---

[6] Notably, the purported communications made in bad faith must be central to the patentee's infringement claims in order to find that the entire licensing campaign was objective and subjectively baseless. *See Motorola Solutions, Inc. v. In re Innovatio IP Ventures, LLC*, 2013 U.S. Dist. LEXIS 15968, at *64-69 (N.D. Ill. Feb. 4, 2013). This is because, as many circuits have established, that a misrepresentation can be considered a sham under *Noerr Pennington*, only if the misrepresentation is material enough to alter the outcome of the proceeding, or affects the core of the litigant's case. *Id.*

"subjective baselessness" are elements that must be considered in addition to any state law requirements. *Zenith Elecs. Corp.*, 182 F.3d at 1355; *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Matthews Int'l Corp. v. Biosafe Eng'g, LLC*, 695 F.3d 1322 (Fed. Cir. 2012) (affirming district court's finding that the plaintiff failed to sufficiently plead bad faith necessary to avoid *Noerr-Pennington* immunity, because the plaintiff had only conclusorily pled bad faith); *Matthews Int'l, Corp. v. Biosafe Eng'g, LLC*, 2011 U.S. Dist. LEXIS 110010, at *40 (W.D. Pa. Sept. 27, 2011) ("[T]he Court has already explained that it finds that allegations of legal activity coupled with bald assertions of bad faith insufficient to raise even the *plausibility* of bad faith. All that is alleged is the making of accusations of infringement, which activity it is legal for a patentee to undertake."); *Infection Prevention Techs., LLC v. UVAS, LLC,* 2011 U.S. Dist. LEXIS 105666, at *74 (E.D. Mich. July 25, 2011) (holding the plaintiff had not adequately pled bad faith where, although the plaintiff alleged the defendants made statements regarding accusations of infringement "knowing the statement[s] to be false," the allegations were still insufficient because the complaint failed to suggest how the defendants knew (or should have known) that their statements were false); *Noble Fiber Techs., LLC v. Argentum Med. LLC*, 2006 U.S. Dist. LEXIS 43357, at *16 (M.D. Pa. June 27, 2006) (allegations were conclusory and insufficient to allege bad faith with the particularity necessary).[7]

On information and belief, the Nebraska AG conducted no inquiry, or at least no reasonable inquiry, to reach any conclusion that the letters in Exhibits C1-C6 were "objectively

---

[7] *See also Viskase Companies, Inc. v. World PAC Intern. AG*, 710 F. Supp. 2d 754, 757 (N.D. Ill. 2010) ("Undoubtedly mindful of its pleading requirements . . . plaintiff recites in the complaint that defendants sent the letters, 'purposefully and in bad faith,' in an effort to harm plaintiff's business by 'creating the false perception in the marketplace' that plaintiff's products infringed the asserted patent. The complaint as a whole, however, does not support these conclusory allegations, which are insufficient to raise plaintiff's right to relief under this standard 'above the speculative level.'"); *GMP Techs., LLC v. Zicam, LLC*, 2009 U.S. Dist. LEXIS 115523, at *9 (N.D. Ill. Dec. 9, 2009) ("Turning to the Amended Complaint, [plaintiff] repeatedly alleges that [the patentees] took certain actions 'deliberately and intentionally,' 'with intent' and 'in bad faith.' These legal conclusions are not entitled to any weight, and cannot salvage [plaintiff's] state-law claims. . . if an aggrieved party had only to allege that an infringement warning was erroneous to avoid federal preemption, the bad-faith hurdle would be meaningless.").

baseless."  In the absence of such evidence, the identified Nebraska laws could not be enforced to warrant a cease and desist order even if the other elements of the Nebraska state laws were met (which they are not).

Moreover, even if one could argue the letters were "objectively baseless," the Nebraska AG conducted no inquiry, or at least no reasonable inquiry, to reach any conclusion that either Activision or its counsel subjectively believed the transmission of those letters to be baseless. Indeed, no such showing could be made. *See* Johnson Decl., *passim*; Ex. B.  As to the preparation and filing of the original Complaint in this case, the Nebraska AG can neither show that it is "objectively baseless" nor "subjectively baseless."  Not only did Farney Daniels consider the filing of that Complaint to be proper, but so did the law firm of Kutak Rock who filed the Complaint.

Activision certainly has a likelihood of success on the merits to demonstrate that the conduct of it and its counsel upon which the Nebraska AG based the Cease and Desist Order was neither objectively baseless nor subjectively baseless.  In the absence of such a showing, any attempt at enforcement by the Nebraska AG of the Cease and Desist Order would be preempted and in violation of the U.S. Constitution and federal law, and would necessarily need to be enjoined.

### B.  Activision Has a Likelihood of Success on the Merits With Respect to Count III

Count III of the First Amended Complaint seeks an injunction under 42 U.S.C. § 1983 enjoining enforcement of the Cease and Desist Order against Farney Daniels with respect to Activision, at least regarding the activities of that firm on behalf of Activision.  § 1983 provides in pertinent part that:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

Here, the Nebraska AG as issued a Cease and Desist Order, under the ostensible authority under Neb. Rev. Stat. § 87-303.03(1)(b). That action, as further detailed below, has deprived Activision of rights secured by the U.S. Constitution and federal laws. These rights include rights under the First and Fourteenth Amendments to seek redress of grievances in court, including enforcement of one's patent rights; rights under the First and Fourteenth Amendments, and Title 35, U.S. Code, to notify persons in other states of one's patents, and potential infringement thereof; rights under the First and Fourteenth Amendments to choice of counsel in exercising one's First and Fourteenth Amendment rights; and rights under the Fifth and Fourteenth Amendments to be free of the taking of one's property without due process of law.

Before explaining the constitutional violations effected by the Nebraska AG's Cease and Desist Order, Activision first takes a moment to note that the Nebraska AG has no legal authority to issue such a Cease and Desist Order against the Farney Daniels firm at all. As explained previously, the Federal Circuit has held that sending patent related letters into a state is not conducting business within that state for purposes of due process. Similarly, the sending of patent related letters by an out of state law firm on behalf of an out of state client into a recipient state, is not practicing law within that state in the context of due process. Even if one were to consider it practicing law, it is clear that the Nebraska AG has no authority to regulate such activity. To the extent there is authority to regulate the practice of law in Nebraska, it resides exclusively with the Nebraska Supreme Court. The Nebraska Supreme Court explicitly states that it "exercises jurisdiction over **all** matters involving the licensing of persons to practice law in

21

the State of Nebraska." *See* Neb. Ct. R. § 3-100 (emphasis added). Notably absent from the Nebraska rules is the granting of power or jurisdiction to the Nebraska AG governing the practice of law in Nebraska. Nothing gives the Nebraska AG any authority to interfere with any practice of law by a Farney Daniels attorney in Nebraska (assuming, *arguendo*, there even is any such practice).

Further, it is without a doubt that the Nebraska AG has no authority to regulate the practice of law before this Court. With respect to the admission of attorneys *pro hac vice* to represent out of state clients in patent infringement cases before this Court, it is solely within the discretion and authority of this Court to make that decision. The Nebraska AG's assertions that the Nebraska AG has authority to decide that an out of state attorney may represent a party in this Court is a gross and unsupported interference with this Court's prerogatives.

Therefore, on its face, the Cease and Desist Order issued by the Nebraska AG restraining Farney Daniels' ability to represent Activision in this case, and all other cases in other jurisdictions, operates as an unlawful attempt to usurp the Nebraska Supreme Court, and this Court's authority to regulate not only the practice of law within Nebraska, but other states' regulate of the practice of law nationwide as well. While this point alone likely supports the preliminary injunction relief Activision seeks, Activision now turns to explain the constitutional defects in the Cease and Desist Order, which illustrate that the issuance of that Order by Defendants Bruning, Cookson, and Lopez was a violation of 42 U.S.C. § 1983.

## 1. Activision Has Constitutional Rights to Its Choice of Counsel That Are Violated by the Cease and Desist Order

### a. Activision Has Rights to Its Choice of Counsel in Exercising Its First and Fourteenth Amendment Rights to Engage in Patent Licensing and Enforcement

As explained previously, the U.S. Supreme Court and the Federal Circuit have concluded that the First Amendment right to free speech includes not only a right to file suit, but the right to notify persons of an intention to file suit. *See* Section I, *infra*. The Federal Circuit has made it clear that these rights extend to the right to send others letters notifying them of one's patents, their potential infringement thereof, to offer a license with respect to those patents, to notify them of an intention to file an infringement suit with respect to those patents, and similar communications regarding patents and patent rights. *See* Section I, *infra*. The only exception to those rights is if it can be shown that such communications were both objectively baseless and subjectively baseless. *Id.* As noted above, there has been no such showing here, nor can there be, that any communications were objective and subjectively baseless. Johnson Decl. As a result, Activision, and counsel acting on its behalf, had the right to send the letters identified in Exhibits C1-C6, and to send future letters similar to those letters where warranted, and to have filed the original Complaint in this case, and to file similar complaints if warranted in the future.

In the exercise of these First Amendment rights, Activision has a right to its choice of counsel. The United States Supreme Court has acknowledged that this "right to counsel" stems from a myriad of constitutional principles. *See Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002) (noting that numerous decisions have grounded the right of access to the courts in the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection and Due Process Clauses); *see also Harrison v. Springdale Water & Sewer Comm'n*, 780 F.2d 1422,

1427-28 (8th Cir. 1986) (holding that the clear constitutional right litigants have to petition courts for redress of grievances implicitly includes a right to counsel); *In re BellSouth Corp.*, 334 F.3d 941, 955, 961 (11th Cir. 2003) and *Texas Catastrophe Property Ins. Ass'n v. Morales*, 975 F.2d 1178, 1181 (5th Cir. 1992) (explaining that a civil litigant's right to the counsel of its choice is implicit in the Due Process Clause of the Fifth Amendment, as well as in 28 U.S.C. § 1654). "The right to counsel in civil matters 'includes the right to choose the lawyer who will provide that representation.'" *Texas Catastrophe,* 975 F.2d at 1181 (citing *McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1257 (5th Cir. Tex. 1983)); *see also Mitchell v. Johnston*, 701 F.2d 337, 351 (5th Cir. 1983) (the district court is not free to "substitute its judgment for that of the litigant in the choice or number of counsel that the litigant may feel is required to properly represent his interests") (citation omitted). Additionally, the right to counsel of choice may be overridden only if "compelling reasons" exist. *BellSouth Corp.*, 334 F.3d at 961 (quoting *Texas Catastrophe*, 975 F.2d at 1181). [8]

### b. Activision's Right to its Choice of Counsel is Violated by the Cease and Desist Order

As explained above, it is well-established that a party has a right to choice of counsel under at least the First Amendment, as well as other provisions in the U.S. Constitution. The Cease and Desist Order issued by the Nebraska AG under the color of Nebraska state law necessarily interferes with Activision's choice to have Farney Daniels represent it to carry out its First Amendment rights to send correspondence regarding its patents, and to seek redress in courts for infringement of those patents.

---

[8] In *Christopher* the U.S. Supreme Court explained that "[w]hether an access claim turns on a litigating opportunity yet to be gained or any opportunity lost, the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong." *Christopher,* 536 U.S. at 415. The Supreme Court also noted that although the basis of the constitutional right of access to courts is unsettled (and has held to derive from various Constitutional provisions and Amendments thereto as described above), this right exists and is impinged when "official acts frustrat[e] the litigation." *Id.*

Under any and all of these provisions, the Cease and Desist Order directed at Farney

Daniels undoubtedly infringes on Activision's due process rights and operates as a substantial

impediment to Activision's meaningful access to the courts, in that it cannot choose Farney

Daniels to represent it in this case. *See Alexander v. Macoubrie*, 982 F.2d 307 (8th Cir. Mo.

1992) (holding that an interference with a client's relationship with his chosen counsel operates

as a substantial impediment to meaningful access to the courts). The order, as issued, continues

indefinitely pending completion of the Nebraska Attorney General's investigation. Thus,

because of the Cease and Desist Order, Activision is wrongly dispossessed of its ability to

enforce its intellectual property rights by employing the counsel of its choosing, Farney Daniels.

Enforcement of this Order undoubtedly deprives Activision of its right to counsel, and infringes

on its constitutional rights under the First, Fifth and Fourteenth Amendments.

> **2. Activision's Patents are Property Subject to the Fifth Amendment Protection From a "Taking" Without Due Process, a Right Violated by the Cease and Desist Order**

> **a. Activision's Patents Are Property Subject to the Protections of the Fifth Amendment**

It is well-established that a U.S. patent is considered personal property. *See eBay Inc. v.*

*MercExchange, L.L.C.,* 547 U.S. 388, 392 (2006); *Fla. Prepaid Postsecondary Educ. Expense*

*Bd. v. College Sav. Bank*, 119 S. Ct. 2199 (1999). Further, patents are unique in that they are a

time-limited asset. That is, patents expire. As property, the ownership of a U.S. patent is

protected by the Fifth and Fourteenth Amendments from a taking without due process. *See*

*Brulotte v. THYS Co.,* 379 U.S. 29, 31(1964) ("[Patent] rights become public property once the

[patent term] expires"); *Fla. Prepaid Postsecondary Educ. Expense Bd.*, 119 S. Ct. at 2208

(holding that patents are considered property within the meaning of the due process clause).

Thus, there is only a defined period of time during which a patent owner may secure royalties for

infringement of a patent. Depriving the patent owner of some portion of the period of time in which it could otherwise be enforcing a patent, it is necessarily a "taking" of that time-limited property.

That the Cease and Desist Order impeded Activision's chosen counsel in its licensing and enforcement efforts on behalf of Activision is self-evident. Indeed, it was at least one stated purpose of the Order. That the imposition of a delay and enforcement of a time-limited property right is a "taking" is similarly self-evident. Finally, that the Order represents a "taking" without "due process" is self-evident, as the Nebraska AG expressly relied upon, as authority for his issuance of the Order, NEB. REV. STAT. § 87-303.03(1)(b),[9] which by its terms permits the issuance of such an Order "without a hearing." Here, the Nebraska AG took advantage of that statute and did not conduct any hearing. Johnson Decl.

Indeed, the available evidence suggests that the Nebraska AG issued this extraordinary and unprecedented Order, having dramatic impact on Activision, without conducting any investigation at all. On the day the Order was issued, Activision understands that Defendants (one or all of them, or persons acting at their direction or control) publicly justified their actions, at least in part, on grounds that Activision was a "patent troll." Indeed, one or more Defendants expressly made this accusation to a reporter for the Omaha World Herald. While the term "patent troll" can have different meanings, it is clear that it does not apply to a company like Activision, who invented the technology covered by the patents, and who has a business in technology covered by the patents. That Defendants would wrongly accuse Activision of being a

---

[9] Due process is not available here, as the statute upon which the Nebraska cease and desist order is based, NEB. REV. STAT. § 87-303.03(1)(b), allows the AG Defendants to issue a cease and desist order, with or without a prior hearing, and fails to provide for any venue to challenge the issuance of that order. Given that the AG Defendants have taken the position that NEB. REV. STAT. § 87-303.03(1)(b) gives them the right to impede the enforcement of patent rights, the Nebraska statute itself upon which they rely for their authority, is unconstitutional if it has the scope that they claim. By its very terms, it would then allow the Nebraska AG to impede the licensing and enforcement of a time-limited personal property without a hearing. Thus, on its face, it would permit a taking without due process.

"patent troll," serves to highlight the gross recklessness with which the Cease and Desist Order was issued.

As a consequence of the Nebraska AG's choosing to deprive Activision of its constitutional rights, without a hearing, and indeed without any reasonable investigation at all, Activision has been deprived of its rights without any process, much less "a due process." [10]

### C. The Nebraska AG Cease and Desist Order Unlawfully Deprived Activision of Its Rights Under the First, Fifth, and Fourteenth Amendments to the U.S. Constitution, as well as Its Rights Under Title 35, U.S. Code, and As Such is a Violation of 42 U.S.C. § 1983

As explained above, the Nebraska AG Cease and Desist Order unlawfully deprived Activision of its rights under the First, Fifth, and Fourteenth Amendments to the U.S. Constitution, as well as its rights under Title 35, U.S. Code. As such, relief is available under 42 U.S.C. § 1983. A party may maintain an action under § 1983 if a person who, acting under color of state law, subjects another to deprivation of any right secured by the Federal Constitution. 42 U.S.C. § 1983. *See Harrison,* 780 F.2d at 1426 ("In order to prevail on a 42 U.S.C. § 1983 claim, the plaintiff must show that the defendant caused the deprivation of a federal right while operating under the color of state law"). Here, the AG Defendants are indeed acting under the color of state law, as, in their official capacities, they are the Nebraska Attorney General and its agents. Further, by issuing and enforcing the cease and desist order, the AG Defendants have deprived, and continue to deprive Activision of its rights secured by the United States Constitution. Under § 1983, Activision is entitled to seek relief in this Court for an injunction against the Nebraska AG's improper interference with Activision's choice of counsel. *See Harrison,* 780 F.2d at 1427-28 (noting that "the right to petition 'is among the most precious of

---

[10] Procedural due process under the Fifth Amendment requires a party to be given notice and an opportunity to be heard prior to the seizure of his property by the government. *Gary v. N.J. Dep't of Consumer Affairs Office of Consumer Prot.*, 2011 U.S. Dist. LEXIS 108963, at *12 (E.D. Pa. Sept. 22, 2011)

the liberties safeguarded by the Bill of Rights,' and that it has 'a sanctity and a sanction not permitting dubious intrusions,' and the right of access to the courts shares this 'preferred place' in our hierarchy of constitutional freedoms and values") (citations omitted); *Alexander*, 982 F.2d 307. Here, the AG Defendants have failed to provide any reasoning, let alone a compelling reason, nor could they, for the necessity of a cease and desist order that interferes with Activision's right to counsel, or the need to deprive Activision of its property without due process.

For all of the reasons set forth above, Activision plainly has demonstrated a likelihood that it will succeed on Counts II and III, which will entitle it to a permanent injunction of a scope at least similar to the preliminary injunction sought by this Motion.

## II. Activision Will Suffer Irreparable Harm if the Preliminary Injunction Is Not Granted

With respect to the requirement to show "irreparable harm" to support the grant of a preliminary injunction, the applicable law supports that such "irreparable harm" can be shown by proof that, in the absence of the issuance of the preliminary injunction, that the movant will be harmed in a manner for which remedy in the form of a judgment for damages will not be available, quantifiable, or suitable. *See Brawley Distrib. Co. v. Polaris Indus. Partners L.P.,* 1989 U.S. Dist. LEXIS 19188, at *4 (D. Minn. Apr. 28, 1989) (noting that "[w]here a moving party's claims are measurable in damages, a preliminary injunction is not necessary because the threat of irreparable harm is reduced.") (citing *O. M. Droney Beverage Co. v. Miller Brewing Co.*, 365 F. Supp. 1067, 1070 (D. Minn. 1973); *Johnson v. Collins*, 233 F. Supp. 2d 241, 251 (D.N.H. 2002) ("Irreparable harm is a substantial injury that is not accurately measurable or adequately compensable by money damages."). This standard is easily met by the facts in this case.

As an initial matter, because Activision presently believes that Defendants Bruning, Cookson, and Lopez are not amenable to suit in their individual capacity with respect to the Cease and Desist Order, and that in their official capacity, they have immunity from suit for damages, any damages incurred by Activision as a result of their unlawful Order, by definition, cannot be addressed by a later award of a judgment granting monetary damages. *See Cal. Hosp. Ass'n v. Maxwell-Jolly,* 776 F. Supp. 2d 1129, 1158 (E.D. Cal. 2011) (finding irreparable harm because the plaintiff would be unable to recovery monetary damages due to the State's Eleventh Amendment immunity); *Firetree, Ltd. v. Creedon*, 2008 U.S. Dist. LEXIS 39863, at *57 n.24 (M.D. Pa. May 15, 2008) ("Any injury suffered from the conduct of immune defendants constitutes 'irreparable harm' supporting issuance of a preliminary injunction.") (citation omitted); *Synagro-Wwt, Inc. v. Louisa County,* 2001 U.S. Dist. LEXIS 10987, at *10 (W.D. Va. July 18, 2001) (enforcing the preliminary injunction and acknowledging that "the showing necessary to meet the irreparable harm requirement for a preliminary injunction should be less strict when sovereign immunity limits the remedies available to the plaintiff") (citations omitted).

But even if such damages were available, they would neither be quantifiable nor suitable. First, as noted above, Activision has a right to its choice of counsel. Among other things, Activision can benefit from its representation by Farney Daniels, in comparison to its possible representation by other firms, by benefitting from at least the following: (a) the acquired knowledge and experience that Farney Daniels has developed with respect to technical and legal issues associated with the Activision Patents and Activision's business; (b) the acquired knowledge Farney Daniels has from negotiating licenses with other infringers of the Activision Patents; (c) the acquired experience Farney Daniels has in patent licensing and litigation in

general, and in particular litigation in a wide array of U.S. District Courts across the country where Activision may need to enforce its rights; (d) the reputation of Farney Daniels as to both quality and performance as it may benefit Activision in negotiation with potential licensees or in representation in court; (e) the connections and experience Farney Daniels has with technical, legal and damages experts that may be necessary to advise Activision in its licensing efforts and to provide expert services if needed in any litigation Activision may need to bring; (f) the nature of any potential conflicts that might impact the ability of other firms to represent Activision compared to the absence of conflicts previously established with respect to Farney Daniels; (g) the established working relationship between client representatives for Activision and specific attorneys at Farney Daniels; and (h) the increased cost, complexity, and potential for error or inconsistency if Activision were forced to obtain new counsel to represent it in matters with respect to Nebraska infringers (or, as the Nebraska AG apparently believes, with respect to any company infringing anywhere in the nation that may have facilities or operations in Nebraska). *See* Johnson Decl., *passim*; Ex. B.

The unlawful imposition of the Cease and Desist Order to Farney Daniels with respect to Activision will deprive Activision of all of the above-listed benefits with its association with the Farney Daniels firm. The deprivation of those benefits are real and substantial, even though they cannot be quantified. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.")

### III. An Assessment of the "Balance of Harms" Completely Weighs in Favor of Granting the Preliminary Injunction

The third prong of the four-part test this Court must consider in deciding whether to issue the requested preliminary injunction is whether the "balance of harms" in the granting of the

requested preliminary injunction weighs in favor of Activision. Here, there can be no doubt that is the case. The Cease and Desist Order, as applied by the Nebraska AG, apparently intends to prevent Farney Daniels, at least in connection with its representation of Activision, from engaging in the following four activities: (1) representing Activision in the present case; (2) representing Activision against CenturyLink in the suit pending in the Eastern District of Texas; (3) representing Activision against CSG in the suit pending in the District of Delaware;[11] (4) working, in conjunction with Kutak Rock or other local counsel, to bring suit for patent infringement in a U.S. District Court against other Nebraska companies identified above to whom Activision had sent the letters of Exhibits C1-C6; and (5) representing Activision to communicate with other infringers of the Activision Patents in Nebraska (if any) or, potentially, representing Activision to communicate with other infringers of the Activision Patents who have any facilities or operations in Nebraska (if any).

Because, as established above, Activision has a constitutional right to engage in, and to be represented by counsel of its choice in each of the above five listed activities, neither the Nebraska AG, nor any Nebraska business, will suffer any harm if Activision is represented in these activities by Farney Daniels, as compared to any other firm, such as Kutak Rock or others. Conversely, the harm to Activision if it is not able to be represented by Farney Daniels in connection with the above-listed activities is both real and substantial. Any reasonable weighing of the balance of harms between Activision and the Nebraska AG must be decided in favor of Activision.

---

[11] While it is not necessarily apparent from the face of the Cease and Desist Order that it would apply to prevent Farney Daniels from representing Activision in the CSG case pending in Delaware, the communications by the Nebraska AG to CenturyLink indicating that the Nebraska AG does believe its Cease and Desist Order affects Activision's ability to serve its Complaint upon CenturyLink in the Eastern District of Texas, gives Activision a reasonable basis to believe that the Nebraska AG will take this position with respect to the CSG case as well. *See* Johnson Decl.

**IV.    The Public Interest Will Be Served by the Grant of the Requested Preliminary Injunction**

The issuance of the requested preliminary injunction will serve the public interest for several reasons.  First, because the Nebraska AG's actions in connection with the Cease and Desist Order, as well as the Civil Investigative Demand to Farney Daniels, is without basis and cannot lead to any remedy or recovery in favor of the State of Nebraska, a preliminary injunction at least enjoining enforcement of that Order with respect to the Firm's representation of Activision, will conserve the resources and reduce the needless waste and expenses by the Nebraska AG's office in connection with this matter.  This is in the direct public interest of the citizens of the State of Nebraska.

Second, the State of Nebraska has a direct interest in fostering, and even in directly investing in innovation.  Among other things, the Nebraska Legislature has established the Nebraska Department of Economic Development, which in turn created the Nebraska Innovation Fund.  *See* NEB. REV. STAT. § 48-2802.  As a result, the State of Nebraska has a direct and pecuniary interest in a strong and enforceable U.S. patent system.  Without such a system, innovations invented in Nebraska, with the funding of Nebraska tax payers, could be unfairly taken by others.  The preliminary injunction requested by this Motion is directly in furtherance of supporting the rights of U.S. patent holders to protect and enforce the patents on their inventions, including the right to do so by counsel of their choice, a right that is in the public interest.

Third, the State of Nebraska has an interest in having its state officials comply with and abide by the U.S. Constitution, and the federal law.  Further, this Court is a federal district court, and empowered and directed to uphold the U.S. Constitution, and the rights of the citizens of the

entire United States, not only Nebraska.[12]  It is directly in the public interest of the citizens of the states other than Nebraska that the Constitution and federal laws agreed upon by and between those various states be honored by Nebraska, as Nebraska would have its rights honored by the other states.  As demonstrated above, the Nebraska AG Cease and Desist Order is in conflict with both the U.S. Constitution and federal law, and it is consistent with the public interest that the requested preliminary injunction be issued.

## **CONCLUSION**

On the basis of the foregoing recitation of facts and law, inclusive of the attached and incorporated exhibits, Plaintiff Activision respectfully requests entry of the requested preliminary injunction[13] enjoining Defendants Bruning, Cookson and Lopez  from taking any steps to enforce the Cease and Desist Order issued to Farney Daniels on July 18, 2013 in any manner that would prevent or impede the Farney Daniels firm from representing Activision in connection with licensing and litigation of U.S. patents owned by Activision with respect to companies based in, or having operations in, Nebraska.  Additionally, Activision respectfully requests that this Court admit William Bryan Farney and M. Brett Johnson of Farney Daniels PC *pro hac vice* to represent Activision in this case. *See* Johnson Decl., Ex. D, E.

---

[12] In this regard, Activision further notes that entry of the request of an injunction will not harm the public interest because even if activity of Activision or its counsel in this case was somehow wrongful (which it is not), this Court plainly has the authority under existing federal law to protect the public interest against any lawsuit that might be frivolous, or include unfounded arguments. *See* 35 U.S.C. § 285. *See also Brooks Furniture Mfg. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005); *Prism Techs., LLC v. McAfee, Inc.*, 2013 U.S. Dist. LEXIS 19363, at *9-15 (D. Neb. Feb. 13, 2013).
[13] A proposed form of a preliminary injunction will be provided to Chambers, with a courtesy copy to all parties.

August 19, 2013                    ACTIVISION TV, INC., Plaintiff


                                   By: /s/ John P. Passarelli
                                       John P. Passarelli #16018
                                       Edward Warin # 14396
                                       Sean P. Connolly #23614
                                       Kutak Rock LLP
                                       The Omaha Building
                                       1650 Farnam Street
                                       Omaha, NE  68102-2186
                                       (402) 346-6000

                                       Steven E. Achelpohl #10015
                                       Gross & Welch P.C., L.L.O.
                                       1500 Omaha Tower
                                       2120 South 72nd Street
                                       Omaha, Nebraska 68124-2342
                                       (402) 392-1500




<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that all counsel of record, who are deemed to have consented to electronic service are being served August 19, 2013, with a copy of this document via the Court's CM/ECF system.

                                   /s/ John P. Passarelli
                                   John P. Passarelli