## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **ACTIVISION TV, INC.,** | |
|      **Plaintiff,** | |
| v. | **Case No. 8:13CV00215** |
| **PINNACLE BANCORP, INC.,** | |
| and | |
| **JON BRUNING,** Attorney General of Nebraska (in his official capacity); **DAVID D. COOKSON,** Chief Deputy Attorney General of Nebraska (in his official capacity); **DAVID A. LOPEZ,** Assistant Attorney General of Nebraska (in his official capacity), | |
|      **Defendants.** | |

### BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) OR 12(b)(6)

### AND

### BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

COME NOW Defendants Jon Bruning, David D. Cookson, and David A. Lopez and file this brief in Support of their Motion to Dismiss in the above-captioned matter.

With an eye toward judicial economy and recognizing many of Defendants' arguments in support of their Motion to Dismiss are applicable to their Opposition to Plaintiff's Motion for Preliminary Injunction, consolidated herein at Argument Part III is Defendants' brief in opposition to Plaintiff's Motion for Preliminary Injunction, Filing 8.

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ....................................................................................... iii

INTRODUCTION ......................................................................................................... 1

LEGAL STANDARD .................................................................................................... 3

ARGUMENT ................................................................................................................. 5

    I.      THE COURT SHOULD DISMISS FOR LACK OF JURISDICTION. ................... 6

    II.    THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS AGAINST STATE DEFENDANTS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED. ................................................................................................ 14

        A.    PLAINTIFF'S COUNT II FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED .......................................................................... 14

        B.    PLAINTIFF'S COUNT III FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED .......................................................................... 14

            1.    Plaintiff's Claims Under The First And Fourteenth Amendments Should Be Dismissed Because On Its Face They Fail To State A Claim Upon Which Relief Can Be Granted. ........................................ 15

            2.    Plaintiff's Claims Under The Fifth Amendment Should Be Dismissed Because On Its Face They Fail To State A Claim Upon Which Relief Can Be Granted. ....................................................... 16

            3.    Plaintiff's Claims Under Title 35, U.S. Code and the Supremacy Clause Should Be Dismissed Because On Its Face They Fail To State A Claim Upon Which Relief Can Be Granted. .................................... 16

    III.   IN THE EVENT DEFENDANTS' MOTION TO DISMISS IS NOT GRANTED, PLAINTIFF HAS FAILED TO DEMONSTRATE IT IS ENTITLED TO A PRELIMINARY INJUNCTION. ................................................ 17

        A.    PLAINTIFF HAS FAILED TO DEMONSTRATE A PROBABILITY IT WILL SUCCEED ON THE MERITS OF ITS CLAIMS. ............................... 17

            1.    Plaintiff is Not Likely to Succeed on Its State Law Claims. ................ 18

                a.    Plaintiff Cannot Show that the Threatening Letters by Farney Daniels are Not in Violation of the Nebraska Consumer Protection Act ........................................................................... 19

        i.      Unfair and Deceptive Acts or Practices......................19

        ii.     "Trade and Commerce.".................................................24

    b.    Plaintiff Cannot Show that the Settlement Solicitations by Farney Daniels are Not in Violation of the Uniform Deceptive Trade Practices Act...................................................27

    c.    Federal Law Does Not Preempt Nebraska Deceptive Trade Practices Statutes.........................................................................29

  2.    Plaintiff is Not Likely to Succeed on Its Constitutional Claims.........32

    a.    Plaintiff is Not Likely to Succeed on Its First or Fourteenth Amendment Claims.....................................................................32

    b.    Plaintiff is Not Likely to Succeed on Its Fifth Amendment Claims. ..........................................................................................34

    c.    Plaintiff is Not Likely to Succeed on its Title 35, U.S. Code or Supremacy Clause Claims.........................................................34

B.    PLAINTIFF HAS FAILED TO DEMONSTRATE IT WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF A PRELIMINARY INJUNCTION..................................................................................................35

C.    PLAINTIFF HAS FAILED TO DEMONSTRATE THE BALANCE OF HARMS WEIGHS IN FAVOR OF ISSUANCE OF A PRELIMINARY INJUNCTION..................................................................................................36

D.    THE PUBLIC INTEREST WILL BE SERVED BY THE DULY ELECTED OFFICER OF THE STATE, THE ATTORNEY GENERAL, BEING ALLOWED TO CONTINUE HIS INVESTIGATION PURSUANT TO HIS STATUTORY AUTHORITY. ...................................37

CONCLUSION AND PRAYER FOR RELIEF ..................................................................38

CERTIFICATE OF SERVICE ............................................................................................40

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Gardner,*
387 U.S. 136 (1967) ..........................................................................................................12

*Adams v. American Cyanamid Co.,*
1 Neb. App. 337, 498 N.W.2d 577 (1992) ......................................................................28

*Aetna Life. Ins. Co. v. Haworth,*
300 U.S. 227 (1937) ..........................................................................................................13

*Ark. Right to Life State Political Action Comm. v. Butler,*
146 F.3d 558 (8th Cir. 1998) ...........................................................................................11

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ......................................................................................................4, 11

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ......................................................................................................4, 16

*Beneficial Corp. v. FTC,*
542 F.2d 611 (3rd Cir. 1976), *cert. denied,* 430 U.S. 983 (1977) .................................20

*Berg v. Obama,*
586 F.3d 234 (3d Cir. 2009) .............................................................................................10

*Boggs v. Bowron,*
842 F. Supp. 542 (D. D.C. 1993) .....................................................................................38

*Boyle v. Anderson,*
68 F.3d 1093 (8th Cir. 1995) ...........................................................................................10

*Califano v. Sanders,*
430 U.S. 99 (1977) ............................................................................................................12

*California v. Arc Am. Corp.,*
490 U.S. 93 (1989) ............................................................................................................31

*Calvin Klein Cosmetics Corp., v. Lenox Lab, Inc.,*
815 F.2d 500 (8th Cir. 1987) .............................................................................................4

*Carson v. Pierce,*
719 F.2d 931 (8th Cir. 1983) .............................................................................................7

*Cnty. of Mille Lacs v. Benjamin,*
    361 F.3d 460 (8th Cir. 2004) ...................................................................................10

*Compco Corp. v. Day-Brite Lighting, Inc.,*
    376 U.S. 234 (1964) ...................................................................................................30

*Crossley v. Lieberman,*
    868 F.2d 566 (3d Cir. 1989) ....................................................................................23

*Curtis Lumber Co. v. La. Pac. Corp.,*
    618 F.3d 762 (8th Cir. 2010) ...................................................................................20

*Dataphase Sys. v. C L Sys.,*
    640 F.2d 109 (8th Cir. 1981) ............................................................4-5, 17, 35, 37

*Dow Chem. Co. v. Exxon Corp.,*
    139 F.3d 1470 (Fed. Cir. 1998) ...............................................................................30

*Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,*
    365 U.S. 127 (1961) ............................................................................................ 29, 31

*Edmonds v. John L. Scot Real Estate, Inc.,*
    942 P.2d 1072 (1997) ...............................................................................................19

*Fed. Trade Comm'n v. Keppel & Bros.,*
    291 U.S. 304 (1933) ...................................................................................................24

*FTC v. Sperry & Hutchinson Co.,*
    405 U.S. 233 (1972) ...................................................................................................22

*FTC v. World Travel Vacation Brokers, Inc.,*
    861 F.2d 1020 (7th Cir. 1988) .................................................................................20

*Glad Tidings Assembly of God v. Neb. Dist. Council of the Assemblies of God, Inc.,*
    273 Neb. 960, 734 N.W.2d 731 (2007) ................................................................28

*Gladstone, Realtors v. Bellwood,*
    441 U.S. 91 (1979) ............................................................................................... 6, 15

*Grant-Hall v. Cavalry Portfolio Servs., LLC,*
    856 F. Supp. 2d 929 (N.D. Ill. 2012) .....................................................................22

*Hage v. Gen. Serv. Bureau,*
    306 F. Supp. 2d 883 (D. Neb. 2003) ............................................................19, 25-26

*Holiday Magic, Inc. v Warren,*
    357 F Supp. 20 (ED Wis 1973) ...............................................................................31

iv

*Holiday Magic, Inc. v Warren,*
  357 F Supp. 20 (ED Wis 1973), *vacated on other grounds* 497 F.2d 687 (7th Cir. 1974) ........................31

*Holiday Magic, Inc. v Warren,*
  357 F Supp. 20 (ED Wis 1973),*vacated on other grounds* 497 F.2d 687 (7th Cir. 1974). ...........................31

*Hunter Douglas, Inc. v. Harmonic Design,*
  153 F.3d 1318 (Fed. Cir. 1998)...........................................................................................................31

*In the Matter of Pfizer Inc.,*
  81 F.T.C. 23 (1970) ..........................................................................................................................23

*Irwin v. Mascott,*
  112 F. Supp.2d 937 (2000) ...............................................................................................................21

*Kewanee Oil Co. v. Bicron Corp.,*
  416 U.S. 470 (1974)...........................................................................................................................30

*Kuntzelman v. Avco Financial Services*, Inc.,
  206 Neb. 130 (Neb. 1980)................................................................................................................18

*LaChance v. U.S. Smokeless Tobacco Co.,*
  931 A.2d 571 (N.H. 2007).................................................................................................................18

*Lawrence County S.D. v. State of South Dakota,*
  668 F.2d 27 (8th Cir. 1982)..............................................................................................................13

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992).........................................................................................................................6-7

*Medtronic, Inc. v. Lohr,*
  518 U.S. 470 (1996)...........................................................................................................................30

*Metro Medical Supply v. Shalala,*
  959 F. Supp. 799 (M.D. Tenn. 1996).................................................................................................38

*Moats v. Republican Party,*
  281 Neb. 411 (2011) .........................................................................................................................25

*Myers v. Neb. Inv. Council,*
  272 Neb. 669, 724 N.W.2d 776 (2006) .............................................................................................28

*Nat'l Park Hospitality Ass'n v. Dep't of the Interior,*
  538 U.S. 803 (2003)...........................................................................................................................12

*North Carolina v. Rice,*
  404 U.S. 244 (1971).............................................................................................................................7

*Osborn v. United States,*
   918 F.2d 724 (8th Cir. 1990)............................................................................3

*Palmer v. City of Chicago,*
   755 F.2d 560 (7th Cir. 1985)..........................................................................10

*Papason v. Allain,*
   478 U.S. 265 (1986)................................................................................... 4, 16

*Parizek v. Roncalli Catholic High Sch.,*
   11 Neb. App. 482 655 N.W.2d 404 (2002).....................................................28

*Public Serv. Comm'n v. Wycoff Co.,*
   344 U.S. 237 (1952).......................................................................................12

*Raad v. Wal-Mart Stores,*
   13 F. Supp. 2d 1003 (D. Neb. 1998) .........................................................22-23

*Regina Corp. v. FTC,*
   322 F.2d 765 3rd Cir. 1963)...........................................................................20

*Reinbrecht v. Walgreen Co.,*
   16 Neb. Ct. App. 108, 742 N.W.2d 243 (2007) ..............................................22

*Reno v. Catholic Soc. Servs., Inc.,*
   509 U.S. 43 (1993).........................................................................................12

*Rizzo v. Goode,*
   423 U.S. 362 (1976)...................................................................................37-38

*Rodgers v. Data Transmission Network,*
   2011 U.S. Dist. LEXIS 31732, *3, 2011 WL 1134670 (D. Neb. 2011) .................4

*Roudachevski v. All-Am. Care Ctrs., Inc.,*
   648 F.3d 701 (8th Cir. 2011)................................................................4, 17, 35

*Sears, Roebuck & Co. v. Stiffel Co.,*
   376 U.S. 225 (1964).......................................................................................30

*Short v. Demopolis,*
   691 P.2d 163 (Wash. 1984) .......................................................................25-26

*Skelly Oil Co. v. Phillips Petroleum Co.,*
   338 U.S. 667 (1950).......................................................................................13

*Slough v. Fed. Trade Comm'n,*
   396 F.2d 870 (5th Cir. 1968)..........................................................................21

*Smith v. Commercial Banking Corp.,*
   866 F.2d 576 (3d Cir. 1989) ...........................................................................................................18

*State ex rel. Stenberg v. Consumer's Choice Foods, Inc.,*
   276 Neb. 481 755 N.W.2d 583, 590 (2008)..................................................................................19

*State ex. Rel. Nixon v. Estes,*
   108 S.W.3d 795 (Mo. Ct. App. 2003). ........................................................................................25

*State of Vermont v. MPHJ,*
   Case No. 13-cv-00170 (D. Vt. 2013) .............................................................................................2

*State of Vermont v. MPHJ,*
   Washington Superior Court, State of Vermont, Civil Case No. 282-5-13 (2012) .............................2

*State v. Brotherhood Bank & Trust Co.,*
   649 P.2d 419 (Kan. Ct. App. 1982) .............................................................................................18

*Stefanelli v. Minard,*
   342 U.S. 117 (1951)......................................................................................................................38

*Stone v. South Carolina,*
   117 U.S. 430 (1886)......................................................................................................................14

*S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.,*
   696 F.3d 771(8th Cir. 2012) ........................................................................................................17

*Sys. v. C L Sys.,*
   640 F.2d 109 (8th Cir. 1981) .........................................................................................................4

*Textron Lycoming Reciprocating Engine Div., Avco Corp v. UAW,*
   523 U.S. 653 (1998)......................................................................................................................13

*Titus v. Sullivan,*
   4 F.3d 590 (8th Cir. 1993) .............................................................................................................3

*U.S. v. National Financial Services, Inc.,*
   820 F. Supp. 228 (D.Md. 1993).....................................................................................................21

*United Industries Corp. v. Clorox Co.,*
   140 F.3d 1175 (8th Cir. 1998).......................................................................................................36

*United Mine Workers v. Pennington,*
   381 U.S. 657 (1965)..............................................................................................................29, 31

*Walker v. Barrett,*
   650 F.3d 1198 (8th. Cir. 2011).......................................................................................................4

*Warth v. Seldin,*
   422 U.S. 490 (1975) ............................................................................................8

*West Plains, L.L.C. v. Retzlaff Grain Co.,*
   2013 U.S. Dist. LEXIS 25945, *12-13 (D. Neb. 2013) ............................ 4, 17, 35

*Whitmore v. Arkansas,*
   495 U.S. 149 (1990) .............................................................................................7

*Wilder v. Squires,*
   68 N.C. App. 310 (N.C. Ct. App. 1984) .............................................................23

*Wilkinson v. United States,*
   440 F. 3d 970 (8th Cir. 2006) .............................................................................10

*Zenith Elecs. Corp. v. Exzec, Inc.,*
   182 F.3d 1340 (Fed. Cir. 1999), .........................................................................31

**Statutes**

Consumer Protection Act, Neb. Rev. Stat. § 59-1601 et seq. ................................ 2, 18

Neb. Rev. Stat. § 59-1601(2) .......................................................................................25

Neb. Rev. Stat. § 59-1602 .................................................................................18-19, 22

Neb. Rev. Stat. § 59-1611 ...............................................................................................2

Neb. Rev. Stat. § 59-1617. ............................................................................................26

Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301 et seq. ........... 2, 18

Neb. Rev. Stat. § 87-302 ..........................................................................................28-29

Neb. Rev. Stat. § 87-302(5) ..........................................................................................28

Neb. Rev. Stat. § 87-302(15) .........................................................................................29

Neb. Rev. Stat. § 87-303.01 ......................................................................................27-28

Neb. Rev. Stat. § 87-303.03 ............................................................................................3

Neb. Rev. Stat. § 87-305 ...............................................................................................18

State of Washington's Consumer Protection Act, R.C.W.A. §§ 19.86.010 to 19.86.920 .....................18

Federal Trade Commission Act, 15 U.S.C. § 45(a)(1) .............................................18

The Declaratory Judgment Act, 28 U.S.C. §2201 .............................................13

Title 35, U.S. Code...........................................................................16, 34-35

**Other Authorities**

Black's Law Dictionary ...........................................................................25

The White House Blog, *Taking on Patent Trolls to Protect American Innovation*, Gene Sperling,

*http://www.whitehouse.gov/blog/2013/06/04/taking-patent-trolls-protect-american-innovation,* (June 4, 2013).

....................................................................................................37

**Rules**

Fed. R. Civ. P. 8(a)(2). ...........................................................................3

Fed. R. Civ. P. 12(b)(1)...........................................................3, 5-6, 11, 13

Fed. R. Civ. P. 12(b)(1) or 12(b)(6). ...........................................................5, 38

Fed. R. Civ. P. 12(b)(6)...........................................................3-6, 14, 17

Fed. R. Civ. P. 57 ...........................................................................13

**INTRODUCTION**

This case involves an action by Activision TV, Inc. ("Plaintiff")[1] who contends Defendant Pinnacle Bancorp, Inc. infringed Plaintiff's patents. Defendants Bruning, Cookson, and Lopez ("State Defendants") were added to this action in an apparent attempt to litigate the grievances one of the several law firms representing Plaintiff, Farney Daniels PC ("Farney Daniels"), has with State Defendants.

Plaintiff's complaint with State Defendants stems not from any action taken by State Defendants towards Plaintiff itself, but from a letter unrelated to this litigation sent by two of the State Defendants to Plaintiff's later-added attorneys at Farney Daniels. This letter regarding "Possible Unfair/Deceptive Patent Enforcement Efforts Within the State of Nebraska" was sent to Farney Daniels, not Plaintiff, because it had come to the attention of the Office of the Attorney General that several letters sent by Farney Daniels, on behalf of other entities to businesses within the State of Nebraska, possibly contained infringement assertions that were unsubstantiated and contained false, misleading, or deceptive statements. Filing 10-2. Even one of Plaintiff's attorneys recognizes the July 18 letter was directed at the firm itself and "not directed at any particular client of the firm." Filing 10-1 at ¶ 17. Nevertheless, possibly to compensate for this obvious absence of injury, Plaintiff ignores that the letter from several of State Defendants was not sent to Plaintiff and did not mention Plaintiff and argues that somehow *Plaintiff's* constitutional rights have been violated.

*Factual background regarding the July 18 letter sent to Farney Daniels*

On or about June 11, 2013, the Nebraska Attorney General's office sent a letter to Farney Daniels requesting information on their practices soliciting patent licensing agreements for MPHJ

---

[1] State Defendants must note at the outset that Plaintiff Activision TV, Inc., who commonly refers to itself simply as "Activision" in this litigation is itself currently defending a federal trademark infringement lawsuit for making that very reference and for infringing the marks of Activision, one of the world's leading makers of video and computer game products. *See Activision Publishing, Inc. v. Activision TV, Inc.*, Case No. 2:12-cv-08964, Filing 1 (C.D. Cal. 2012). Therefore, to avoid confusing the "Activision" of this litigation and the Activision media publisher, State Defendants will refrain from adopting Plaintiff's potentially offending reference and simply use the term Plaintiff.

Technologies ("MPHJ"). Declaration of Gregory J. Walklin ("Walklin Decl.") at ¶ 7. The Attorney General's Office had received several complaints from small businesses in the state who had received letters from Farney Daniels on behalf of MPHJ alleging patent infringement related to the process of scanning and emailing an electronic document. *Id.*[2] The Attorney General was concerned that Farney Daniels' demand letter campaign, which demanded licensing fees from target businesses and threatened litigation, was in violation of the Consumer Protection Act, Neb. Rev. Stat. § 59-1601 et seq., ("CPA"), and/or the Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301 et seq. ("UDTPA") (collectively, "deceptive trade practices laws" or "UDAP" laws). *Id.* Farney Daniels responded to that letter on or about July 15, 2013. *Id.*

In the interim, the Attorney General's Office received additional complaints from businesses regarding patent related letters sent by Farney Daniels. *See, generally,* Filings 10-4; 10-5; 10-7; 10-9. Although regarding different patents, and containing some different allegations and language in the correspondence, these letters from Farney Daniels were of the same general nature as those sent on behalf of MPHJ. *Id.* Additionally, the Attorney General learned of the State of Vermont's suit against MPHJ for unfair and deceptive trade practices. *State of Vermont v. MPHJ,* Washington Superior Court, State of Vermont, Civil Case No. 282-5-13 (2012); *State of Vermont v. MPHJ,* Case No. 13-cv-00170 (D. Vt. 2013); Walklin Decl. at ¶ 8.[3]

Seeing an emerging pattern of potential violations of the CPA and UDTPA—which only seemed to be expanding in scope—the Attorney General sent Farney Daniels a civil investigative demand ("CID") on July 18, 2013, pursuant to Neb. Rev. Stat. § 59-1611. The CID was issued in the

---

[2] Media reports document that MPHJ has sent similar threatening letters to businesses across the country during the past year. *See, e.g.,* Joe Mullin, *Meet the nice-guy lawyers who want $1,000 per worker for using scanners,* Ars Technica (Apr. 7, 2013) http://arstechnica.com/tech-policy/2013/04/meet-the-nice-guy-lawyers-who-want-1000-per-worker-for-using-scanners/.

[3] On the day the instant complaint was served, a settlement was reached where "MPHJ Technology must cease its patent enforcement campaign in the State of Minnesota and cannot resume such business activities in Minnesota without the permission of the Attorney General." *Attorney General Lori Swanson Announces First-In-The-Nation Order to Stop Delaware Company From "Patent Trolling" in Minnesota,* Minnesota Office of Attorney General Lori Swanson (Aug. 20, 2013), http://www.ag.state.mn.us/Consumer/PressRelease/130820StopPatentTrolling.asp.

name of Attorney General Bruning himself and signed by Assistant Attorney General David Lopez. In an accompanying letter, the Attorney General also asked Farney Daniels to immediately cease and desist the initiation of all new patent infringement enforcement efforts within the State of Nebraska pursuant to Neb. Rev. Stat. § 87-303.03. This letter was issued in the name of Attorney General Bruning himself and signed by Chief Deputy Attorney General David Cookson.

Farney Daniels responded to the CID on August 19, 2013. Though Steven E. Achelpohl (initially counsel for Farney Daniels but apparently now also counsel for Plaintiff, Farney Daniels' client, *see* Filing 7 at 33) inquired on August 9th as to the particulars of the *CID,* at no point did attorneys for *Plaintiff* contact the Attorney General's Office to clarify the scope of the July 18 *letter.*

## LEGAL STANDARD

### Standard for Motion to Dismiss Pursuant to Rule 12(b)(1)

A party may assert the defense that the court lacks subject matter jurisdiction to hear the underlying case. Fed. R. Civ. P. 12(b)(1). A motion under Rule 12(b)(1) allows the Court to address the threshold question of jurisdiction, as judicial economy demands that the issue be decided at the outset rather than deferring it until trial. *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990). For the Court to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of the averments. *Titus v. Sullivan*, 4 F.3d 590, 598 (8th Cir. 1993). In a facial challenge to jurisdiction, all of the *factual* allegations regarding jurisdiction are presumed to be true and the motion will succeed only if the plaintiff fails to allege an element necessary for subject matter jurisdiction. *Id.*

### Standard for Motion to Dismiss Pursuant to Rule 12(b)(6)

A complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). A party may assert by motion the defense that a complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Rodgers v. Data Transmission Network*, 2011 U.S. Dist. LEXIS 31732, *3, 2011 WL 1134670 (D. Neb. 2011); quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Walker v. Barrett*, 650 F.3d 1198, 1203 (8th. Cir. 2011). A complaint's factual allegations must nudge a plaintiff's claims across the line from conceivable to plausible, otherwise it must be dismissed for failing to state a claim upon which relief can be granted. *Id.* at *2; quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007). As the Court held in *Twombly*, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Twombly*, 550 U.S. at 555 (citing *Papason v. Allain*, 478 U.S. 265, 286 (1986)). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Ashcroft*, 556 U.S. at 679.

<u>Standard for Preliminary Injunction</u>

A district court considers the four factors set forth in the Eighth Circuit's seminal *Dataphase* decision when deciding whether to issue a preliminary injunction. *West Plains, L.L.C. v. Retzlaff Grain Co.*, 2013 U.S. Dist. LEXIS 25945, *12-13 (D. Neb. 2013). Those factors are: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Id.* (quoting *Dataphase Sys. v. C L Sys.*, 640 F.2d 109, 114 (8th Cir. 1981)). No single *Dataphase* factor is determinative. *Id.* The movant bears the burden of establishing the propriety of the injunction. *Id.*; *Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 705 (8th Cir. 2011). A preliminary injunction is an "extraordinary remedy" and should not be granted unless the movant has been able to establish all four of the *Database* factors. *Calvin Klein Cosmetics Corp., v. Lenox Lab, Inc.*, 815 F.2d 500, 503 (8th Cir. 1987).

# ARGUMENT

The Argument section of this brief consists of three major components. The first is State Defendants' threshold argument that Plaintiff's complaint should be dismissed for lack of subject matter jurisdiction because Plaintiff lacks standing. The second is State Defendants' argument that Plaintiff's complaint should be dismissed under Rule 12(b)(6) because Plaintiff's complaint fails to state a claim upon which relief can be granted. Finally, in the event the Court denies State Defendants' motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court should nevertheless deny Plaintiff's motion for a preliminary injunction for the reason that Plaintiff has failed to satisfy the *Dataphase* elements required for such relief.

Judging by the Memorandum of Law set forth by Plaintiff in support of their motion for a preliminary injunction, Filing 9, the scope of the July 18 letter is apparently a subject of confusion. Thus, its importance should be clarified at the outset.

The letter provided that Farney Daniels (*not* Plaintiff) "immediately cease and desist the initiation of all *new* patent infringement enforcement efforts within the State of Nebraska pending the outcome of this office's investigation." Filing 10-2 at 2 (emphasis added). Plaintiff attempts to create a controversy by asserting its "belief" that State Defendants intended the July 18 letter to have a broader scope than what is clearly stated in the language of the letter. However, given the clearly obvious application of the July 18 letter to Farney Daniels, and ***not Plaintiff***, as well as only to ***new*** efforts, not this preexisting action, Plaintiff's attempt to create a controversy where one does not exist should be rejected and the entire complaint against State Defendants should be dismissed pursuant to Rule 12(b)(1).

To restate this critical point once more, given that litigation is a predictable potential outcome of any patent infringement enforcement effort, the cease and desist letter ***does not apply*** to Farney Daniels' involvement in Plaintiff's lawsuit against Pinnacle, given that this effort already

existed at the time the cease and desist letter was issued. The Court should recognize Plaintiff has cut this issue from whole cloth and reject Plaintiff's suit accordingly.

As this Court lacks subject matter jurisdiction due to the total absence of a case or controversy between State Defendants and Plaintiff, Count II should be dismissed pursuant to Rule 12(b)(1). For the same reasons, Count II must be dismissed under Rule 12(b)(6).

In Count III, Plaintiff continues to mistakenly assign numerous constitutional claims against State Defendants based on its incorrect assumption that the July 18 letter to Farney Daniels—which made absolutely no mention of or reference to Plaintiff—applies to Plaintiff. However, since this letter does not apply to Plaintiff, Plaintiff has failed to state a claim upon which relief can be granted and Plaintiff's Count III must be dismissed under Rule 12(b)(6).

In the event the Court does not grant Defendant's preceding motion to dismiss, the Court should nevertheless deny Plaintiff's motion for a preliminary injunction due to Plaintiff's failure to demonstrate it is entitled to such relief. Specifically, Plaintiff has failed to meet its burden of showing (1) the threat of irreparable harm in the absence of a preliminary injunction; (2) the state of balance between this harm and the injury that granting the injunction will inflict on Defendants, the State of Nebraska, and others; (3) the probability that Plaintiff will succeed on the merits of its state law and constitutional claims; and (4) the public interest in the issuance of a preliminary injunction. Accordingly, Plaintiff's motion for a preliminary injunction should be denied.

## I. THE COURT SHOULD DISMISS FOR LACK OF JURISDICTION.

"[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III [of the Constitution]," and it is fundamental to the court's jurisdiction to hear a case. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "The constitutional limits on standing eliminate claims in which the plaintiff has failed to make out a case or controversy between himself and the defendant." *Gladstone, Realtors v. Bellwood*, 441 U.S. 91, 99 (1979). "Federal courts are without

power to decide questions that cannot affect the rights of litigants in the case before them." *North Carolina v. Rice*, 404 U.S. 244, 246 (1971). The "irreducible constitutional minimum of standing" requires a plaintiff to demonstrate (1) it has suffered an injury in fact; (2) the existence of a causal connection between the alleged injury and conduct that is fairly traceable to the defendant, and not the result of the independent action of some third party not before the court; and (3) it is likely the requested relief will redress the alleged injury. *Lujan,* 504 U.S. at 560–61. "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561.

An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (quotations omitted). The harm must be "direct and palpable." *Carson v. Pierce*, 719 F.2d 931, 934 (8th Cir. 1983). Allegations of possible future injury do not suffice; rather, "[a] threatened injury must be certainly impending to constitute injury in fact." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (quotation omitted). In these situations, "the injury [must] proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all." *Lujan*, 504 U.S. at 564 n.2.

Since Plaintiff is challenging the legality of government action, "standing depends considerably upon whether the plaintiff is himself an object of the action [ ] at issue." *Id.* at 561.

> When, however, as in this case, a plaintiff's asserted injury arises from the government's allegedly unlawful regulation [ ] of someone else, much more is needed. In that circumstance, causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction -- and perhaps on the response of others as well. The existence of one or more of the essential elements of standing depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict, and it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury. Thus, when the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily substantially more difficult to establish.

*Id.* at 562 (internal citations omitted). Plaintiff is simply not the regulated party under the July 18 letter and is merely trying to insert itself into a controversy between one of its three law firms and the State.

Plaintiff alleges it believes the "demand letters" referenced in the July 18, 2013 letter must have included "the letters sent by the Farney Daniels firm on behalf of Activision." Filing 7 at ¶¶ 57, 72, 77. Plaintiff then continues to repeatedly infer references to Plaintiff within the July 18 letter and asserts its belief that the letter must have applied to Plaintiff. Filing 7 at ¶¶ 59-65, 77-87. Having mischaracterized its way into a controversy of which it was not and is not a part, Plaintiff alleges numerous injuries in *this* litigation as a result of government action directed at Farney Daniels. Filing 7 at ¶¶ 121, 122, 151.

These allegations do not establish standing because they fail to demonstrate a concrete and imminent injury to Plaintiff resulting from the July 18, 2013 letter. First, Plaintiff has failed to make a sufficient factual allegation that they are injured by a letter sent to Farney Daniels that does not even reference Plaintiff. *See* Filing 10-2; Filing 10-1 at ¶ 17 (Affidavit of M. Brett Johnson stating the July 18 letter was directed at the firm itself and "not directed at any particular client of the firm."). Yet, Plaintiff has brought suit against State Defendants for the July 18, 2013 letter sent to Farney Daniels, an unnamed party in this suit. This legal maneuver, however, does not satisfy the injury in fact requirement provided by Article III. Rather than Plaintiff asserting a claim against State Defendants on behalf of Farney Daniels, "[P]laintiff must generally assert [it's] own legal rights and interests" and, more importantly, Plaintiff "cannot rest [it's] claim to relief on … third parties." *Warth v. Seldin,* 422 U.S. 490, 499 (1975). Accordingly, Plaintiff's allegation derived from the July 18, 2013 letter sent to Farney Daniels, which makes absolutely no mention of Plaintiff, does not amount to a sufficient injury in fact and, therefore, does not grant Plaintiff standing.

Additionally, the July 18 letter, which Plaintiff alleges caused its injury in fact, was sent to Farney Daniels roughly three and one-half weeks before Farney Daniels made any attempt to become involved in the instant case. Farney Daniels did not seek to have their attorneys admitted *pro hac vice* until August 12, 2013. *See* Filing 10-10; 10-11. However, Plaintiff alleges that "it is the position of Defendants Bruning, Cookson, and Lopez that the Cease & Desist Order … precludes any attorney at Farney Daniels from representing [Plaintiff] in the present case." *See* Filing 7 at ¶ 136. As illogical as it sounds, it is Plaintiff's position that State Defendants intended to prevent Farney Daniels representation of Plaintiff *before* Plaintiff sought to have their attorneys admitted *pro hac vice* and, more importantly, before it was known to Defendants that Farney Daniels attorneys would seek to be admitted *pro hac vice*. Even if it were possible for State Defendants to have intended to preclude representation in Nebraska, the claim would be Farney Daniels', not Plaintiff's, to bring.

Moreover, in support of Count III of its amended complaint Plaintiff speculates that the July 18 letter was intended to "direct or regulate the practice of law before this Court." Filing 7 at ¶ 150. However, Defendants have made no attempt at regulating the practice of law and Plaintiff has failed to plead any facts to so corroborate. Plaintiff simply recites the entities with legal authority over the practice of law and makes no attempt to plead any facts supporting any encroachment on this authority by Defendants. Filing 7 at ¶ 147-50. Highlighting that there are no such facts, Plaintiff claims "the sending of patent related letters by an out of state law firm on behalf of an out of state client into a recipient state, is not practicing law within that state." Filing 9 at 21. Even if there were such facts, the party with the alleged injury would be Farney Daniels, not Plaintiff, and Plaintiff lacks standing to assert any potential claims Farney Daniels may have on this issue.

Second, even if Plaintiff had sufficiently alleged that the letter sent to Farney Daniels somehow applied to Farney's representation of Plaintiff, Plaintiff still would not have alleged an injury in fact. The letter sent to Farney Daniels clearly applies to "***new*** patent infringement

enforcement efforts within the State of Nebraska . . ." Filing 10-2 (emphasis added). Plaintiff initiated this case on July 12, 2013. Filing 1; Filing 7 at ¶ 50. The letter addressed to Farney Daniels, not Plaintiff, was sent July 18, 2013. Filing 10-2. Even if the letter sent to Farney Daniels was remotely connected to Plaintiff's suit, the letter only applies to *new* efforts and is inapplicable on its face to efforts initiated six days prior.

What Plaintiff stakes its claim on is the *possibility* that Defendants will use the July 18 letter to prevent Farney Daniels from representing Plaintiff in future patent related letters. Plaintiff asserts that, if Farney Daniels is prevented from representing it in future letters, Plaintiff's constitutional right to choice of counsel will be violated. Filing 7 at ¶ 144. But this argument improperly shifts the burden to Defendants to demonstrate that there is no set of circumstances under which Plaintiff could ever be adversely affected by the challenged letter. Plaintiff has it exactly backwards. It is Plaintiff's burden—not Defendants'—to demonstrate a concrete and certainly impending injury stemming from the action it seeks to challenge. *Wilkinson v. United States*, 440 F. 3d 970, 977 (8th Cir. 2006). And it is Plaintiff's burden to show that, even though the challenged letter was not directed to them and only applies to *new* efforts, this Court should nonetheless review the letter as part of this earlier-initiated action by Plaintiff on the remote chance the letter is somehow intended to prevent future undefined letters by Plaintiff. Plaintiff's raw speculation about what may—or may not—transpire in the future does not satisfy their burden. *See Berg v. Obama*, 586 F.3d 234, 239 (3d Cir. 2009) (concluding alleged injury that was "based on speculation and [ ] contingent on future events" did not support standing); *Cnty. of Mille Lacs v. Benjamin*, 361 F.3d 460, 464 (8th Cir. 2004) ("speculative harms based upon the assumed future intent" do not establish an injury in fact); *Boyle v. Anderson*, 68 F.3d 1093, 1100 (8th Cir. 1995); *Palmer v. City of Chicago*, 755 F.2d 560, 571 (7th Cir. 1985) ("[A] plaintiff's standing must be premised upon more than hypothetical speculation and conjecture that harm will occur in the future.").

Furthermore, Plaintiff cannot transmute the speculative possibility of future injury into a current concrete injury for standing purposes by asserting that Plaintiff plans to use Farney Daniels to issue patent-related letters in the future. Filing 7 at ¶ 116. Such reasoning is insufficient. A plaintiff could manufacture standing by asserting some remote and undefined future injury. That kind of manipulation is not possible here precisely because Plaintiff bears the burden of pleading standing with specificity. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Ark. Right to Life State Political Action Comm. v. Butler*, 146 F.3d 558, 560 (8th Cir. 1998). Plaintiff does not meet that burden because it does not explain who exactly it is planning to send patent related letters to, other than "parties in the State of Nebraska," much less why the July 18 letter directed only to Farney Daniels prevents Plaintiff from sending such letters. *See* Filing 7 at p. 32, ¶ M. Thus, even if Farney Daniels' inability to send future false, misleading, or deceptive statements to parties in Nebraska were an injury, Plaintiff has not shown how this injury specifically applies to them.

Finally, there is no connection between the alleged injury and conduct that is fairly traceable to Defendant David A. Lopez. At the outset, it is unclear why Defendant Lopez is a defendant in this action. Plaintiff broadly includes Defendant Lopez when referencing "the Nebraska AG July 18 letter." Filing 7 at ¶¶ 55, 72-75, 77-87, 89-90, 92, 98-116, 130, 132-39, 142-46, 148, 150-51. However, the letter gives no indication it was issued by Defendant Lopez or that he intends to enforce it. Filing 10-2. Further, no mention of Defendant Lopez even appears in the letter. *Id.* Plaintiff has simply failed to allege with specificity any action by Defendant Lopez which is traceable to the alleged injury, and therefore Plaintiff's claims against Defendant Lopez should be summarily dismissed.

Accordingly, Plaintiff lacks standing and its complaint should be dismissed pursuant to Rule 12(b)(1).

*Plaintiff's Claims Are Not Ripe*

Even if the Court determines that Plaintiff has standing to assert claims on behalf of Farney Daniels, the Court nevertheless should dismiss this action because Plaintiff's claims are not ripe. "The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803, 808 (2003) (quotation omitted). A case ripe for judicial review cannot be "nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." *Public Serv. Comm'n v. Wycoff Co.,* 344 U.S. 237, 244 (1952). In assessing ripeness, courts evaluate both "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967), *overruled on other grounds in Califano v. Sanders*, 430 U.S. 99, 105 (1977).

Both prongs of the *Abbott* ripeness analysis expose Plaintiff's claims as unripe. First, the fitness of Plaintiff's claim for judicial decision "depends on the degree and nature of [Defendant's action]" as it currently pertains to Plaintiff. *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 78 (1993). As argued above, the July 18 letter does not pertain to Plaintiff, only Farney Daniels. In the event Defendants actually applied the letter to one of Plaintiff's alleged contingent future events, this Court would have an issue fit for judicial decision. Until the letter is applied to Plaintiff or State Defendants state an intention to apply the letter to Plaintiff's future events, Plaintiff's claims are unripe.

Second, withholding or delaying judicial review would not result in any hardship for Plaintiff. As explained above, the July 18 letter to Farney Daniels is inapplicable to Plaintiff. The July 18 letter made absolutely no mention of, or reference to, Plaintiff. Further, even if the letter had specifically mentioned Plaintiff, it is not applicable to the instant case because the case was initiated before the

letter was sent. Thus, this simply is not a case where Plaintiff is prohibited from doing anything in this action under the July 18 letter. Therefore, withholding or delaying judicial review of Plaintiff's claims would in no way result in any form of hardship for Plaintiff.

Accordingly, Plaintiff's claims are not ripe and Plaintiff's complaint should be dismissed pursuant to Rule 12(b)(1).

_Count II should be dismissed for failure of subject matter jurisdiction_

Fed. R. Civ. P. 57 does not provide any basis for subject matter jurisdiction over a declaratory judgment action. The Declaratory Judgment Act, 28 U.S.C. §2201, does not create any substantive rights, nor does it create any basis for federal subject matter jurisdiction. *Aetna Life. Ins. Co. v. Haworth,* 300 U.S. 227, 241 (1937) (The Declaratory Judgment Act is limited to cases in which federal subject matter jurisdiction already exists). Thus, in every declaratory judgment action, there must be some basis for federal subject matter jurisdiction—i.e., federal question or diversity jurisdiction. *See Textron Lycoming Reciprocating Engine Div., Avco Corp v. UAW*, 523 U.S. 653 (1998); *Lawrence County S.D. v. State of South Dakota*, 668 F.2d 27 (8th Cir. 1982) (in action for declaratory judgment, plaintiff's defensive assertion of preemption against a potential claim by defendants did not give rise to federal question jurisdiction). In analyzing a declaratory judgment action under the well-pleaded complaint rule, the court must ask whether an issue of federal law would have appeared on the face of a hypothetical complaint seeking affirmative relief filed by a declaratory defendant. *Skelly Oil Co. v. Phillips Petroleum Co.*, 338 U.S. 667, 672-673 (1950).

In the instant case, there would be no federal question jurisdiction of a claim made by the Attorney General, the declaratory defendant, against Plaintiff. Any and all claims that could be brought by the Attorney General necessarily fall under state law, the CPA and the UDTPA. First, the Attorney General's Office has only sent correspondence to Farney Daniels, not Plaintiff. Regardless, the Attorney General only has a potential claim as to either entity pursuant to *state*

statute. As well, there can be no diversity jurisdiction because any claim brought by the Attorney General would be on behalf of the State of Nebraska, which, based on the longstanding rule, cannot serve as a citizen of a different state under diversity jurisdiction rules. *Stone v. South Carolina*, 117 U.S. 430, 433 (1886); "[A] state cannot, in the nature of things, be a citizen of any State").

Thus, in addition to the reasons articulated above, Count II must be dismissed for lack of subject matter jurisdiction.

## II. THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS AGAINST STATE DEFENDANTS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

State Defendants believe the preceding arguments are dispositive of all claims against State Defendants raised in the Plaintiff's complaint. After all, the basis for every single allegation hinges on Plaintiff's initial incorrect beliefs about the scope of the July 18 letter. However, should any of Plaintiff's claims remain, the Court nonetheless should dismiss those claims under Federal Rule of Civil Procedure 12(b)(6).

### A. PLAINTIFF'S COUNT II FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

Defendants incorporate the reasoning and analysis above as to "Count II should be dismissed for failure of subject matter jurisdiction," which demands that this Court dismiss Count II as well, or possibly in the alternative, for failure to state a claim.

### B. PLAINTIFF'S COUNT III FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

Plaintiff's Count III fails to state a claim upon which relief may be granted. Defendant hereby incorporates Part I of the Argument of this brief, which argued Plaintiff lacks standing and Plaintiff's claims are not ripe for review.

Plaintiffs Count III claims rely almost entirely on Plaintiff's incorrect assumption that the July 18 letter to Farney Daniels that made absolutely no mention of, or reference to, Plaintiff, and

only applies to *new* patent infringement enforcement efforts, somehow prevents Farney Daniels from representing Plaintiff in an existing action. Further, Plaintiff incorrectly assumes that the July 18 letter is evidence that State Defendants will oppose the admission of Farney Daniels attorneys *pro hac vice* in this Court and/or their ability to practice law at all in Nebraska, and therefore Plaintiff's rights have been violated. Filing 7 at ¶¶ 90, 150, M. None of this has taken or will take place. For this reason alone, Plaintiff's claims, which rely on the incorrect assumptions, fail to state a claim upon which relief may be granted.

1. **Plaintiff's Claims Under The First And Fourteenth Amendments Should Be Dismissed Because On Its Face They Fail To State A Claim Upon Which Relief Can Be Granted.**

Viewed in the context that Plaintiff's First and Fourteenth Amendment claims rely entirely on Plaintiff's incorrect assumption that the July 18 letter to Farney Daniels—which made absolutely no mention of, or reference to, Plaintiff—applies to Farney Daniels' actual representation of Plaintiff in court, Plaintiff has failed to state a claim. As explained in Part I above, in no way has Plaintiff been deprived access to the Court or the ability to employ the counsel of its choosing in this or any Court. To the limited extent Farney Daniels ever petitions the court for a redress of grievances on behalf of Plaintiff, Farney Daniels' ability to do so has not been affected. To the extent Plaintiff contends its right to choice of counsel has been violated by the July 18 letter sent to Farney Daniels, regarding patent related letters, State Defendants reiterate that Plaintiff itself admitted "the sending of patent related letters . . . is not practicing law within that state." *Id.* at 21.

Finally, if any entity's First Amendment rights were implicated as part of the prohibition on Farney Daniels' entrepreneurial letter writing campaign, it is Farney Daniels', not Plaintiff. Plaintiff "must assert his own legal interests, rather than those of third parties." *Gladstone, Realtors v. Bellwood*, 441 U.S. 91, 100 (1979). Accordingly, Plaintiff's claims under the First and Fourteenth Amendment should be dismissed for failure to state a claim.

2. **Plaintiff's Claims Under The Fifth Amendment Should Be Dismissed Because On Its Face They Fail To State A Claim Upon Which Relief Can Be Granted.**

Plaintiff's claims under the Fifth Amendment should be dismissed for failure to state a claim. Plaintiff has simply failed to plead any facts supporting its Fifth Amendment Claims. The only mention of the Fifth Amendment in Plaintiff's complaint is part of the list of rights Plaintiff believes have been violated. *See* Filing 7 at ¶¶ 121, 122, 151. As the Court held in *Twombly*, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Twombly,* 550 U.S. at 555 (citing *Papason v. Allain,* 478 U.S. 265, 286 (1986)). Plaintiff's complaint does not contain a single fact supporting its Fifth Amendment Claim and therefore must be dismissed for failure to state a claim.

3. **Plaintiff's Claims Under Title 35, U.S. Code and the Supremacy Clause Should Be Dismissed Because On Its Face They Fail To State A Claim Upon Which Relief Can Be Granted.**

Plaintiff's claims under Title 35, U.S. Code and the Supremacy Clause should be dismissed for failure to state a claim. As detailed in Part III(A)(1) below, federal law does not preempt the state regulation of entrepreneurial letter writing campaigns. The Attorney General's possible state law deceptive trade practices claims do not involve any legal application to the validity of the patent, to the scope of what is infringing, or to the public domain in any way. Even if Plaintiff's "rights to send letters," Filing 7 at ¶ 141, were somehow affected by the July 18 letter to Farney Daniels, which they were not, as previously addressed in Part I and Part II(B)(1) of this brief, any claims regarding Farney Daniels' right to send patent related letters, must be brought by Farney Daniels, not Plaintiff. Finally, as addressed repeatedly in Part I of this brief, the July 18 letter in no way affects Plaintiff's rights to bring suit in this or any Court. Accordingly, Plaintiff's claims under Title 35, U.S. Code and the Supremacy Clause should be dismissed for failure to state a claim.

For the foregoing reasons, Plaintiff's first amended complaint fails to state a claim upon which relief can be granted and should be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).

III.  **IN THE EVENT DEFENDANTS' MOTION TO DISMISS IS NOT GRANTED, PLAINTIFF HAS FAILED TO DEMONSTRATE IT IS ENTITLED TO A PRELIMINARY INJUNCTION.**

Plaintiff has failed to demonstrate it is entitled to a preliminary injunction. A district court considers the four factors set forth in the Eighth Circuit's seminal *Dataphase* decision when deciding whether to issue a preliminary injunction. *West Plains, L.L.C. v. Retzlaff Grain Co.*, 2013 U.S. Dist. LEXIS 25945, *12-13 (D. Neb. 2013). Those factors are: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Id.* (quoting *Dataphase*, 640 F.2d at 114). No single *Dataphase* factor is determinative. *Id.* The movant bears the burden of establishing the propriety of the injunction. *Id.*; *Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 705 (8th Cir. 2011).

Plaintiff has failed to meet its burden on each of the four *Dataphase* factors. Defendant will analyze each factor in turn.

A. **PLAINTIFF HAS FAILED TO DEMONSTRATE A PROBABILITY IT WILL SUCCEED ON THE MERITS OF ITS CLAIMS**.

"In deciding whether to grant a preliminary injunction, likelihood of success on the merits is most significant." *West Plains*, 2013 U.S. Dist. LEXIS 25945, *13 (quoting *S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 776 (8th Cir. 2012)). Plaintiff has failed to demonstrate a likelihood it will realize success on the merits of either of its two claims.

**1.  Plaintiff is Not Likely to Succeed on Its State Law Claims.**

Plaintiff is unable to meet its burden to show that it is likely to prevail on the merits in obtaining a declaration that its practices do not violate the Consumer Protection Act, Neb. Rev. Stat. § 59-1601 et seq., ("CPA"), nor the Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301 et seq. ("UDTPA") (collectively, "deceptive trade practices laws" or "UDAP" laws). Nor can it show that it is likely to succeed on a claim that federal patent statutes preempt these laws, or that the cease and desist order was an unconstitutional prior restraint.

Substantially similar provisions to the CPA and the UDTPA acts have been adopted in many different states—the statutes contain some likely overlapping provisions, and cover similar types of conduct. The CPA was explicitly modeled after the State of Washington's Consumer Protection Act, R.C.W.A. §§ 19.86.010 to 19.86.920. *Kuntzelman v. Avco Financial Services*, Inc., 206 Neb. 130, 133-134 (Neb. 1980). As well, Neb. Rev. Stat. § 59-1602, part of the CPA, is nearly identical to a portion of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1) (commonly referred to as "Section 5"), which has also been extensively interpreted by the federal courts. The UDTPA is a widely adopted uniform statute that "shall be construed to effectuate its general purpose to make uniform the law of those states which enact it." Neb. Rev. Stat. § 87-305.

On the whole, deceptive trade practices laws have been adjudged by state courts to be remedial and thus must be liberally construed in both their scope and their substantive provisions. *See*, *e.g.*, *LaChance v. U.S. Smokeless Tobacco Co.,* 931 A.2d 571, 578, 579 (N.H. 2007) (referring to "broad sweep" and "expansive remedial goals" of UDAP statute); *Smith v. Commercial Banking Corp.,* 866 F.2d 576 (3d Cir. 1989); *State v. Brotherhood Bank & Trust Co.,* 649 P.2d 419 (Kan. Ct. App. 1982) ("the guiding principle to be applied in interpreting the [Kansas Consumer Protection Act] is that the act is to be liberally construed in favor of the consumer"). Exceptions to deceptive trade

practices statutes must be narrowly construed, and courts should not read exceptions into them. *Edmonds v. John L. Scot Real Estate, Inc.,* 942 P.2d 1072 (1997).

Here the Court should remember the standard is not whether the Attorney General can prove that Farney Daniels is violating the deceptive trade practices laws, but whether Plaitniff can show that Farney Daniels is likely *not* violating the law. Also, important is that the Attorney General, who has only had the opportunity to issue an initial letter, one civil investigative demand, and a cease and desist order, has only begun his investigation.

### a. Plaintiff Cannot Show that the Threatening Letters by Farney Daniels are Not in Violation of the Nebraska Consumer Protection Act.

Plaintiff specifically contends in its brief that Farney Daniels has done nothing deceptive, and that, at any rate, the patent-solicitation scheme is not covered under deceptive trade practices laws because patent solicitations are not in "trade or commerce." A review of the correspondence at issue in this matter, as well as other correspondence from Farney Daniels, indicates the Attorney General has grounds to be concerned that Farney Daniels' practices violate the CPA—and that their practices do indeed fall under the scope of deceptive trade practices laws.

### i. Unfair and Deceptive Acts or Practices

As this Court has noted, the CPA provides that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce shall be unlawful." *Hage v. Gen. Serv. Bureau*, 306 F. Supp. 2d 883, 889 (D. Neb. 2003) *citing* Neb. Rev. Stat. § 59-1602. The CPA does not define "unfair" or "deceptive," and the Nebraska Supreme Court has specifically noted it has not had occasion to define these terms in case law. *State ex rel. Stenberg v. Consumer's Choice Foods, Inc.*, 276 Neb. 481, 489, 755 N.W.2d 583, 590 (2008).

Other courts have, however, frequently discussed what amounts to a "deceptive act or practice." To establish that an act or practice is deceptive, a party must show that the representations, omissions, or practices likely would mislead individuals, acting reasonably, to their

detriment. *FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1029 (7th Cir. 1988). To be actionable under Section 5, these misrepresentations or practices need not be made with intent to deceive. *See Beneficial Corp. v. FTC*, 542 F.2d 611, 617 (3rd Cir. 1976), *cert. denied*, 430 U.S. 983, 97 S. Ct. 1679, 52 L. Ed. 2d 377, (1977); *Regina Corp. v. FTC*, 322 F.2d 765, 768 (3rd Cir. 1963); *Curtis Lumber Co. v. La. Pac. Corp.*, 618 F.3d 762 (8th Cir. 2010) (interpreting Arkansas state statute and determining, as it was like many other state deceptive trade practices acts, intent to deceive was not required.)

The very nature of Farney Daniel's wide patent solicitation campaign depends on filing suit rarely, if ever. Lawsuits risk the invalidity of the patent, which would collapse the entire scheme. Rather, Farney Daniels has a strong incentive *not* to sue, and *if* they do sue, not to serve summons or otherwise prosecute the case fully, always giving it the option of dismissing a complaint. Indeed, while, in this situation, Plaintiff has filed suit against Pinnacle Bancorp, Farney has sent out other letters against infringers it is not suing, and has sent out many, many more letters on behalf of MPHJ Technologies nationwide and has not, at least as of July 15, 2013, filed suit against any entity allegedly infringing on MPHJ's patents. Walklin Decl., Ex. 1, Ex. 2, Ex. 3, Ex. 4, Ex. 5. Although it is early in the Attorney General's investigation of entities asserting patent infringement, and although additional deceptive practices could be later established, already the letters the Attorney General has become aware of present both "deceptive" practices and "unfair" practices.

*Deceptive Practices*

First, there are a number of possibly deceptive statements in the Farney Daniels letters on which businesses to detrimentally rely. For example, the letters warn there are "serious consequences for infringement," and "[i]nfringers who continue to infringe in the face of an objectively high risk of infringement of a valid patent can be forced to pay treble (triple) the actual damages, as well as the patent owner's litigation costs, including all attorney's fees." Filings 7-3, 7-4, 7-6, 7-8. The letters

to Borsheims, CSG Systems, The Marcus Corporation, and Pinnacle demand that they contact Farney Daniels and Plaintiff "within three weeks of the date of this letter," Filings 7-3, 7-4, 7-6, 7-8, while the letter to Nanonation demands Plaintiff be contacted "as soon as possible" to respond to "this urgent matter," further claiming Plaintiff has "suffered damages due to…past infringement, and will suffer damages and irreparable harm in the future in the absence of injunctive relief." Filing 7-7. These contain similarly short deadlines for response to the MPHJ letters, which both provide that "we need to hear from you within the next two weeks." Walklin Decl., Ex. 1, Ex. 2, Ex. 3, Ex. 4. The MPHJ letters also "encourage" the business to "retain competent patent counsel to assist you in this matter" (Walklin Decl., Ex. 2, Ex. 3) and warn that "additional steps might be required" if a license is not purchased (Walklin Decl. Ex2, Ex3).

In all respects, these seem like "threats to sue." *Irwin v. Mascott*, 112 F. Supp.2d 937 (2000) (collection letter stating "action could result in a judgment against you including—in addition to the amount of the obligation—the cost of the filing fee, the cost of service of process, and when specifically allowed by law, reasonable attorneys' fees" was a "threat to sue" letter). *See also U.S. v. National Financial Services, Inc.*, 820 F. Supp. 228, 234-235 (D.Md. 1993) (letter stating that "only your immediate payment will stop further legal action" was threat to sue in violation of Fair Debt Collection Practices Act.). These threats to sue are deceptive, the Attorney General believes, because Farney Daniels had no intention of suing all, most, or many of these targeted businesses if they did not agree to licenses, and, of the businesses they actually sued, Farney Daniels had no intention of actually serving summons and/or prosecuting the case to trial. In the debt collection arena, misrepresentations of legal consequences have been held to violate deceptive trade practices laws. *Slough v. Fed. Trade Comm'n*, 396 F.2d 870 (5th Cir. 1968).

Furthermore, they may be deceptive to the extent Farney Daniels and Plaintiff implied that they have a reasonable basis for identifying the target business as one that actually infringes on the

patent. *See Grant-Hall v. Cavalry Portfolio Servs., LLC,* 856 F. Supp. 2d 929 (N.D. Ill. 2012) (denying motion to dismiss) (debt buyer's misrepresentation that it has the right to file suit, when state law requires it to have documentation that the debt has been assigned to it, might be deceptive trade practices violation). Further facts that may show Farney Daniels' intent, and/or the amount of letters it sent nationwide or to Nebraska businesses, however, have not yet been developed, as the investigation is still nascent.

*Unfair Practices*

For many of the same above reasons—including the tight time frame for response—these Farney Daniels letters may violate the CPA's prohibition on "unfair" practices. Neb. Rev. Stat. § 59-1602. This prohibition is separate from its "deceptive" component and provides for a separate claim. *Reinbrecht v. Walgreen Co.*, 16 Neb. Ct. App. 108, 742 N.W.2d 243 (2007) (holding trial court was correct in finding the CPA required a plaintiff to prove an act was either unfair *or* deceptive, and not both) (emphasis added).

The exact standard here has not, apparently, been precisely defined for the instant case. Generally, standards for unfairness have stemmed from the Supreme Court's decision in *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233 (1972), interpreting Section 5. There, the Supreme Court found unfairness to be broader in scope than deception. *Id.*, at 244-245. Later cases in the district courts have expanded upon and explored the standard in far more detail. In *Raad v. Wal-Mart Stores*, 13 F. Supp. 2d 1003 (D. Neb. 1998), the court noted that an "unfair" claim in a contract between merchants required proving the practice "(1) fell within some common-law, statutory, or other established concept of unfairness or (2) was immoral, unethical, oppressive, or unscrupulous." *Id.*, at 1014. *See also Reinbrecht, supra*, at 115-116. Obviously, the given situation here with Farney Daniels and its targeted Nebraska businesses does not arise out of a final contractual agreement between the parties, so there may be some question whether the *Raad* standard would apply to this situation.

Indeed, Judge Kopf in *Raad* noted: "I agree…that 'what is an "unfair [or deceptive] trade practice"' is 'largely [left] to the courts to decide on a case-by-case basis'" (internal citations omitted). *Id.*, at FN6. Regardless of the *Raad* contractual standard or a different one, Farney Daniels' conduct here, the Attorney General believes, violates the CPA's prohibition on unfairness.

Common features of "unfair" practices that have been found to violate deceptive trade practices law include, *inter alia*:

- Coercive, high-pressure sales and collection tactics;

- Taking advantage of disparate knowledge; and

- Taking advantage of a vulnerable group.

The Farney Daniels' letters are definitely "coercive." The implications and statements cited above, regarding imminently filing suit or taking further legal action, are attempts at coercing businesses to agree to quick licenses. Coercion itself has been held to be an adequate basis for finding a practice unfair. *Wilder v. Squires*, 68 N.C. App. 310, 315 (N.C. Ct. App. 1984) ("coercive tactics are within the definition of unfair practices"). The Court should especially consider that many of these letters are coming from a law firm, which only increases the coercive effect. *Crossley v. Lieberman*, 868 F.2d 566 (3d Cir. 1989) (abuses by attorney debt collector more egregious than those of lay collectors because consumer reacts with more duress when approached by lawyer.)

Likewise, taking advantage of disparate knowledge—creating an extensive burden on a consumer or entity with an imbalance of knowledge—has been found by the Federal Trade Commission to be unfair. *In the Matter of Pfizer Inc.*, 81 F.T.C. 23 (1970). It is Farney Daniels' entire scheme, essentially, to take advantage of businesses'—and in at least one case, a nonprofits'—lack of expertise in patent law and patent infringement. Patent law, of course, is a highly specialized area of law in which even most experienced attorneys are not well-versed—there is an entire separate patent

bar for good reason. The imbalance of knowledge between Farney Daniels' patent letters and smaller businesses—or nonprofits—that may not have in-house counsel is even greater.

Lastly, the targeting of "vulnerable groups" has been held to be an important factor in determining unfairness. *Fed. Trade Comm'n v. Keppel & Bros.*, 291 U.S. 304 (1933). *Keppel* is an old case, obviously, but it stands for the proposition—as being decided before Section 5 included an "unfairness" provision—that it is against public policy to allow vulnerable groups to be taken advantage of in consumer transactions. Although the Attorney General would not contend that Pinnacle Bancorp or the businesses targeted by the Plaintiff letters were necessary "vulnerable" under *Keppel* or public policy (even if they certainly were victims of disparate knowledge), it is important to again note that the MPHJ letters targeted small businesses and a small nonprofit, Voices of Omaha. Walklin Decl. These entities, by their small size and nonprofit status, are certainly "vulnerable" when it comes to defending themselves against a threatened patent infringement suit.

### ii. "Trade and Commerce."

Plaintiff claims that the Attorney General would not be able to make a showing that the transmission of its patent license solicitation letters is the conduct of "trade or commerce" within the meaning of the CPA. Filing 9 at 15.

First, the authority Plaintiff cites for its position—concerning mostly antitrust and unfair competition claims—is unavailing. Nowhere is the Attorney General making a claim that Farney Daniels and/or Plaintiff violated the *antitrust* provisions of the CPA with its patent solicitations. (This is apparently also a mistake made in Plaintiff's preemption argument; see below.) Rather, the Attorney General's July 18 letter and his concerns about the business of Farney Daniels reaches its *deceptive and unfair trade practices*—not competition concerns.

A review of authority on "trade and commerce" shows that Farney Daniels' letter solicitations fall under the statute. The terms "trade" and "commerce" are defined as "the sale of

assets or services and any commerce directly or indirectly affecting the people of the State of Nebraska." Neb. Rev. Stat. § 59-1601(2). *Hage, supra.* The Nebraska Supreme Court, in looking at this definition, cited with approval a district court's rather straightforward approach—looking at Black's Law Dictionary and finding that "trade and commerce" was really no more than the statutory definition, "the sale of assets or services." *Moats v. Republican Party,* 281 Neb. 411, 419 (2011). *Moats* noted that the plaintiff was attempting to expand the CPA beyond its reasonable scope by trying to hold the defendant liable under the Act, even though the relevant conduct involved no "sale of assets or services." *Id.* This approach is in accord with other state case law interpreting this language broadly—including Washington. *Short v. Demopolis,* 691 P.2d 163 (Wash. 1984) ("The CPA, on its face, shows a carefully drafted attempt to bring within its reaches every person who conducts unfair or deceptive acts or practices in any trade or commerce."); *see also State ex. Rel. Nixon v. Estes,* 108 S.W.3d 795 (Mo. Ct. App. 2003). As Nebraska's statute was explicitly modeled on Washington's, the Nebraska Supreme Court has stated special attention should be paid to Washington court decisions. *Kuntzelman v. Avco Financial Services, Inc., supra,* at 133-134, 291 N.W.2d at 707 (Since CPA was based on Washington statute, "decisions of the Washington courts interpreting that state's exemption provisions are helpful and instructive herein.") Thus, the Court should give strong weight to *Demopolis,* both in its broad interpretation of Washington's Consumer Protection Act and, as noted below, its reasoning regarding legal practice.

Farney Daniels' letter solicitations of contractual agreements not to sue and license patent technology fall under the broad definition of "trade and commerce." Importantly, the Attorney General does not claim that Farney Daniels' actual representation of Plaintiff, or any other client, in federal or state court would fall, under any circumstances, within the CPA or UDTPA. Rather, the distinction made by many courts with the conduct of lawyers is availing—excluding the distinction made by *Demolpolis* that "actual practice" of law is not within the deceptive trade practices laws, but

the "entrepreneurial aspects" of legal practice are. *Short v. Demopolis, supra.* These "entrepreneurial aspects" are "how the price of legal services is determined, billed, and collected and the way a law firm obtains, retains, and dismisses clients." *Id.*, at 61, 691 P.2d at 168. "These business aspects of the legal profession," the *Demopolis* court noted, "are legitimate concerns of the public which are properly subject to the CPA." *Id.*

This approach is in line with this Court's previous ruling in *Hage*, regarding the regulatory exemption of the CPA. There, in denying summary judgment for the defendant, this Court noted that, for the purposes of the CPA's exemption for "actions or transactions otherwise permitted, prohibited, or regulated under laws administered by…[a] regulatory body or officer acting under statutory authority," Neb. Rev. Stat. §59-1617, it was not the regulation of the *actor* that made a difference as to being covered under the scope of the CPA, but the regulation of the *action. See* Neb. Rev. Stat. § 59-1617.[4] Similarly, whether the patent solicitation letters sent by Farney Daniels fall within the scope of "trade or commerce" in the CPA depends on the type of action being done, not by their characters as attorneys.

While these particular circumstances present a question of first impression, the actions of sending broad epistolary legal threats as well as solicitations to many businesses for licenses is far more like the "entrepreneurial" aspect of practicing law than the "actual practice"—the type of claims brought against the attorneys in *Demopolis* were, the court noted, not the type for which the attorneys could be "reprimanded, suspended, or disbarred," and thus were appropriately regulated under the statute. *Id.*, at 61, 691 P.2d at 168. Notably, the letter solicitations here are from the out-of-state law firm of Farney Daniels, who are not licensed to practice law in the state of Nebraska; thus, the Nebraska Supreme Court, who is otherwise charged with the supervision of attorneys in the state, would have no authority to regulate these types of actions. As well, Plaintiff admits the

---

[4] The CPA contains no explicit exception for attorneys.

"sending of patent-related letters by an out of state law firm on behalf of an out of state client into a recipient state, is not practicing law within that state." Filing 9 at 21. Without coverage under deceptive trade practices laws, there would be no entity that could ensure law firms, or any individual, is not being false, deceptive or misleading in soliciting patent licenses. Ostensibly, under the logic of Plaintiff's brief, any time a letter that alleged patent infringement whatsoever—say, under circumstances perhaps that were entirely fraudulent, where the patent didn't even exist— would be exempt from coverage. That cannot be the result. Rather, the *Dempolis* holding, which allows for oversight by the Attorney General but does not interfere with the actual filing and practice of law, should be persuasive.

### b. Plaintiff Cannot Show that the Settlement Solicitations by Farney Daniels are Not in Violation of the Uniform Deceptive Trade Practices Act.

For the same reasons as cited above, and incorporating many of the arguments under the CPA as they may apply to the relevant provisions of the UDTPA, the Attorney General believes Farney Daniels' patent solicitation letters may violate the UDTPA's ban on unconscionable practices, as well as its other enumerated prohibitions.

*Unconscionable Acts or Practices*

While the UDTPA covers many of the same deceptive trade practices under the CPA, the UDTPA also bans "unconscionable" acts or practices. Neb. Rev. Stat. § 87-303.01. The Attorney General's cease and desist order was based, among other authority, on Farney Daniels' letters attempting unconscionable contract negotiations with Nebraska businesses for patent licenses. Unconscionability is determined in light of all the surrounding circumstances, including (1) the manner in which the parties entered into the contract, (2) whether the parties had a reasonable opportunity to understand the terms of the contract, and (3) whether the important terms were hidden in a maze of fine print. *Parizek v. Roncalli Catholic High Sch.*, 11 Neb. App. 482, 486, 655 N.W.2d 404 (2002); *Adams v. American Cyanamid Co.,* 1 Neb. App. 337, 498 N.W.2d 577 (1992). An

essential fact in determining unconscionability is the disparity in respective bargaining positions of parties to a contract. *Myers v. Neb. Inv. Council*, 272 Neb. 669, 724 N.W.2d 776 (2006). As well, the negotiations preceding the formation of a contract are "connected "to the transaction. *See Glad Tidings Assembly of God v. Neb. Dist. Council of the Assemblies of God, Inc.*, 273 Neb. 960, 734 N.W.2d 731 (2007); Neb. Rev. Stat. § 87-303.01 (unconscionable acts include those "in connection with" a consumer transaction).

Here, the parties are not on equal footing in bargaining power. Farney Daniels has extensive experience in dealing with patent matters, but the targeted Nebraska businesses are just end-users of the product with little, if any, patent experience. Farney Daniels put unnecessary and unreasonable pressure on the business to enter into agreements by threatening an expensive patent suit if the targeted businesses do not pay an undisclosed licensing fee within a short span of time; they also fail to give the targeted businesses the opportunity to understand any of the terms of potential contract—offering only vague hints of what they would need to do to avoid the lawsuit and a vague description of their patent, telling the targeted business it can "find and review each of the Plaintiff Patents….at www.google.com/patents" Filing 7-3, 7-4, 7-8.

The Court should also note that there might be additional evidence of unconscionable practices by Farney Daniels developed upon further investigation by the Attorney General.

*Enumerated provisions of Neb. Rev. Stat. 87-302*

The UDTPA enumerates a variety of prohibited practices, including "represent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have" (Neb. Rev. Stat. § 87-302(5), and "us[ing] any scheme or device to defraud by means of: (i) obtaining money or property by knowingly false or fraudulent pretenses, representations, or promises…" Neb. Rev. Stat. § 87-302(15). Because the Attorney General's investigation is nascent and developing, it is difficult—with the limited information available about

Farney Daniels' practices at this time—to conclude that their practices are violating any of these specific statutory prohibitions. However, given the known facts and the representations in the attached letters, as described above, there is some cause to believe one or both of these sections may have been violated. The Court should also take note of Walklin Decl., Ex. 5, a complaint filed by the Vermont Attorney General's Office regarding false and deceptive practices. This complaint contains several allegations that, if true, could bring any of these enumerated sections into play.

*Trade Practice*

In a footnote, Filing 9 at 22, FN 2, Plaintiff contends that the UDTPA does not apply to patent licensing because it is not a "trade practice." Plaintiff cites no authority for this proposition, rather analogizing their "trade or commerce" argument regarding the CPA, despite the language difference. Indeed, the relevant statute, Neb. Rev. Stat. § 87-302 ("a person, engages in a deceptive trade practice when, *in the course of his or her business, vocation, or occupation…*") seems contrary to Plaintiff's claimed exclusion of patent licensing. Nevertheless, the Attorney General, as noted above with respect to the CPA, only contends, in accordance with case law, that its authority under this statute reaches deceptive acts or practices when they are not the "actual practice" of law, but rather the "entrepreneurial" activities. *See* III(A)(1)(b), *infra.*

### c. Federal Law Does Not Preempt Nebraska Deceptive Trade Practices Statutes.

Plaintiff also claims that federal patent law preempts state deceptive trade practices law, but allows that state deceptive trade practice law is not preempted in the area of patent assertion communications if those communications are made in "bad faith," pursuant to the *Noerr-Pennington* Doctrine. *See Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961); United Mine Workers v. Pennington, 381 U.S. 657 (1965).* That doctrine, however, recognizing the tension between antitrust law and patent law, applies only to antitrust and unfair competition

actions, and not deceptive trade practices claims. Assessing this claim under applicable preemption case law should yield the opposite result: that the deceptive trade practices acts are not preempted.

Congress does not "cavalierly" preempt state law causes of action, for "the States are independent sovereigns in our federal system." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485(1996). As well, preemption analysis is guided by the "oft-repeated" principle that "the purpose of Congress is the ultimate touchstone." *Id.,* at 485. Case law has held that some state law claims are preempted by patent law, while some are not—originally flowing from the Supreme Court's review of the issue of state antitrust laws in *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225 (1964), and *Compco Corp. v. Day-Brite Lighting, Inc.*, 376 U.S. 234 (1964). In *Sears*, the Supreme Court made clear the general standard for determining whether patent law preempted state law is if the state law "clashes with the objectives of the federal patent laws." At 231, 11 L. Ed. 2d at 667, 84 S.Ct. at 789.

Federal patent law's "objectives" are "providing an incentive to invent, promoting the full disclosure of inventions, and ensuring that 'that which is in the public domain cannot be removed therefrom by action of the States.'" *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470 (1974) (internal citations omitted). *Kewanee* is the most instructive for the instant case. There, the preemption question involved a state tort remedy for intentional interference with actual and prospective contractual relations in instances where the tortfeasor's threats to sue were based upon infringement of a patent obtained by inequitable conduct. Discussing the case, the Federal Circuit, in *Dow Chem. Co. v. Exxon Corp.*, noted that it was "difficult to fathom how such a state law cause of action could have any discernible effect on the incentive to invent, the full disclosure of ideas, or the principle that ideas in the public domain remain in the public domain." 139 F.3d 1470, 1475 (Fed. Cir. 1998). Indeed, the same applies to the CPA and UDTPA—perhaps only more so—and it is difficult to see how, at all, the "objectives" of federal patent law are interfered with. The Attorney General's possible state law deceptive trade practices claims do not involve any legal application to the validity

of the patent, to the scope of what is infringing, or to the public domain in any way. Indeed, even in state unfair competition law—an area much more likely to interfere with patent rights—the Federal Circuit has found that "there is no reason to believe that the clear and manifest purpose of Congress was for federal patent law to occupy exclusively the field pertaining to state unfair competition law." *Hunter Douglas, Inc. v. Harmonic Design*, 153 F.3d 1318, 1333 (Fed. Cir. 1998); *see also California v. Arc Am. Corp.*, 490 U.S. 93, 100 (1989) (holding state law claim for price fixing not preempted by federal antitrust laws based in part on presumption against preemption in areas such as unfair business practices traditionally regulated by states).

It could not have been Congress' intention to preempt all state unfair and deceptive trade practices laws just because an individual inserts the word "patent" in an otherwise fraudulent scheme or because a scheme involved patents in some way. Indeed, Congress has explicated specific "encouragement" of states to pass unfair and deceptive trade practices laws. "In passing the Federal Trade Commission Act, Congress certainly did not intend to bar states from stopping unfair business practices which might injure their own citizens. Indeed the Act which authorized the Federal Trade Commission to proceed against unfair practices committed in interstate commerce impliedly *encouraged* states to develop their own laws." *Holiday Magic, Inc. v Warren*, 357 F Supp. 20 (ED Wis 1973), *vacated on other grounds* 497 F.2d 687 (7th Cir. 1974) (emphasis added).

Plaintiff contends that *Zenith Elecs. Corp. v. Exzec, Inc.,* 182 F.3d 1340, 1355 (Fed. Cir. 1999), and other similar cases indicate *Noerr-Pennington* immunity applies to this current situation. That assertion, however, is unfounded. *Noerr-Pennington* arises out of the application of *antitrust* laws. As stated throughout this brief, the Attorney General's issues with Farney Daniels do not arise out of any competition concerns—but rather Farney Daniels' false, deceptive, misleading statements and omissions—provisions of the CPA that have nothing to do with antitrust issues. As well, the

UDTPA claims the Attorney General could bring, as noted above, solely concern deceptive business practices, and do not touch upon antitrust law.

For these reasons and for those set forth in Part I of this brief, the Court should determine Plaintiff has failed to demonstrate a likelihood of success on its state law claims.

### 2. Plaintiff is Not Likely to Succeed on Its Constitutional Claims.

Likewise, Plaintiff has failed to demonstrate a likelihood of success on its constitutional claims. In the interest of brevity, State Defendants hereby incorporate Part I and Part II(B) of the Argument of this brief, which argued Plaintiff lacks standing and Plaintiff has failed to state a claim upon which relief may be granted. For these reasons alone, Plaintiff is not likely to succeed on its constitutional claims.

### a. Plaintiff is Not Likely to Succeed on Its First or Fourteenth Amendment Claims.

Plaintiff is not likely to succeed on its First or Fourteenth Amendment Claims. In support of Count III of its amended complaint Plaintiff speculates that the July 18 letter was intended to "prevent the Farney Daniels firm from representing Plaintiff Activision" and to "direct or regulate the practice of law before this Court." Filing 7 at ¶ 90, 150. However, as argued in Part I and Part III(A)(1) of the Argument of this brief, State Defendants have made no attempt at regulating the practice of law. Plaintiff itself confirms this fact when it states "the sending of patent related letters by an out of state law firm on behalf of an out of state client into a recipient state, is not practicing law within that state." Filing 9 at 21. Despite this, Plaintiff then claims the July 18 letter regarding such patent related letters is an attempt to regulate the practice of law within the state. *Id.* at 21. Further, Plaintiff claims State Defendants are attempting to "regulate the practice of law nationwide as well." *Id.* at 22. Having created such an absurd straw man, Plaintiff easily disputes this alleged usurpation of authority by citing to the Nebraska Supreme Court's authority over all matters involving the licensing of persons to practice law. *Id.* at 21-22. Plaintiff completes this circular

exercise stating "it is without a doubt that the Nebraska AG has no authority to regulate the practice of law before this Court." *Id.* at 22. Of course the Attorney General has no authority to regulate the practice of law. Indeed, *he has not done so here.* After all, Plaintiff itself admitted "the sending of patent related letters . . . is not practicing law within that state." *Id.* at 21. Therefore, Plaintiff's speculation must be rejected.

Perhaps recognizing the deficiencies of its previous argument, Plaintiff next claims Defendants are attempting to regulate the admission of attorneys *pro hac vice* before this Court. *Id.* at 22. Defendants have made no attempt, and will make no attempt, at opposing the *pro hac vice* motion of either William Bryan Farney or M. Brett Johnson. In fact, as correctly pointed out by Plaintiff, the admission of attorneys *pro hac vice* "is solely within the discretion and authority of this Court." *Id.* Plaintiff simply created a situation they later call a "gross and unsupported interference," that never existed. *Id.*

Nonetheless, after constructing this circular argument, then oddly inserting itself into the resulting confusion as a victim, Plaintiff claims its First and Fourteenth Amendment rights have been violated. Beyond Plaintiff's self-inflicted confusion regarding the regulation of the practice of law which State Defendants previously addressed in Part I and Part III(A)(1) of this brief, and Plaintiff's state law claims regarding Farney Daniels' entrepreneurial letter writing campaign addressed in Part III(A)(1), Plaintiff alleges its right to choice of counsel has been violated. *See* Filing 9 at 23.

Even if this Court accepts Plaintiff's claim it has a right to choice of counsel, as explained in Part I, that right has not been violated. In no way has Plaintiff been deprived access to the Court or the ability to employ the counsel of its choosing in this or any Court. To the limited extent Farney Daniels ever petitions the court for a redress of grievances on behalf of Plaintiff, Farney Daniels' ability to do so has not been affected. To the extent Plaintiff contends its right to choice of counsel

has been violated by the July 18 letter sent to Farney Daniels, regarding patent related letters, State Defendants reiterate that Plaintiff itself admitted "the sending of patent related letters . . . is not practicing law within that state." *Id.* at 21.

Finally, as stated previously in this brief, if anyone's First Amendment rights were implicated as part of the prohibition on Farney Daniels' entrepreneurial letter writing campaign, it is Farney Daniels, not Plaintiff, as previously addressed in Part II(B)(1) of the Argument section of this brief.

For these reasons, Plaintiff is not likely to succeed on its First or Fourteenth Amendment Claims.

### b. Plaintiff is Not Likely to Succeed on Its Fifth Amendment Claims.

Plaintiff's creative use of the Fifth Amendment here does not change the fact that there has been no "taking" of Plaintiff's patents. Plaintiff seeks to join its unsupported "choice of counsel" claim with its takings claim in order to create an injury. However, as argued previously in Part I, Plaintiff has not been deprived of any use of its "time-limited asset." Plaintiff is free to initiate as many patent enforcement efforts as it desires, in whatever Court it wishes. Therefore Plaintiff has not been "dispossessed of its ability to enforce its intellectual property rights by employing the counsel of its choosing." Filing 9 at 25.

Without supporting either argument in this section, Plaintiff proceeds to complain about the term "patent troll," without citation to evidence the term was ever used by State Defendants to reference Plaintiff itself, as if the unsupported comments it views as disparaging somehow support a Fifth Amendment Claim. They do not.

### c. Plaintiff is Not Likely to Succeed on its Title 35, U.S. Code or Supremacy Clause Claims.

Although Plaintiff alleges its rights under Title 35, U.S. Code have been violated in Count III, at no point in its memorandum of law in support of its motion for preliminary injunction on Count III does Plaintiff describe how such rights have been violated. Plaintiff simply alleges "the

Nebraska AG Cease and Desist Order unlawfully deprived Activision of its rights under . . . Title 35, U.S. Code." Filing 9 at 27. This alone is clearly an insufficient demonstration by Plaintiff that it has a likelihood of success on the merits on this claim.

Likewise, apparently conceding that under Count III it does not have a likelihood of success on the merits of its Supremacy Clause claims, Plaintiff makes no reference whatsoever to the Supremacy Clause in its memorandum of law in support of its motion for preliminary injunction on Count III. Therefore, this Court should not grant such an extraordinary remedy as a preliminary injunction on either of these entirely unsupported claims.

In the peculiar event Plaintiff intended to support either of these Count III claims by referencing its Claims under Count II, which it did not do, State Defendants hereby incorporate Part III(A)(1) of the Argument section of this brief in response.

For these reasons and for those set forth in Part III(A)(1), the Court should determine Plaintiff has failed to demonstrate a likelihood of success on its claims against Defendants Bruning, Cookson, and Lopez.

## B. PLAINTIFF HAS FAILED TO DEMONSTRATE IT WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF A PRELIMINARY INJUNCTION.

Plaintiff's showing on this element is simply insufficient relative to the greatness of the demonstrable harm envisioned under *Dataphase* analysis.

Primarily for the reasons stated in Part I of this brief, Plaintiff has suffered, and will continue to suffer, no harm in this action as a result of the July 18 letter. "To succeed in demonstrating a threat of irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *West Plains*, 2013 U.S. Dist. LEXIS 25945, *23 (quoting *Roudachevski*, 648 F.3d at 706). The Eighth Circuit has stated that the failure to demonstrate the threat of irreparable harm is, by itself, a sufficient ground upon which to

deny a preliminary injunction. *United Industries Corp. v. Clorox Co.*, 140 F.3d 1175, 1183 (8th Cir. 1998).

The substance of Plaintiff's argument is simply insufficient to show Plaintiff will suffer irreparable harm in the absence of a preliminary injunction. Plaintiff presents a myriad of reasons why it needs Farney Daniels to represent it in this and other actions. *See* Filing 9 at 29-30. However, despite Plaintiff's beliefs, nothing in the July 18 letter prohibits Farney Daniels from doing so. To the extent Plaintiff alleges the *possibility* that Defendants will use the July 18 letter to prevent Farney Daniels from representing Plaintiff in future patent related letters, Plaintiff fails to demonstrate it will suffer irreparable harm from this speculative injury that is uncertain to occur and only relates to the entrepreneurial letter writing campaign of one of the many "nationally known law firms" Plaintiff employs across the country. Filing 7 at ¶¶ 46, 48; Filing 10-3 at ¶¶ 10, 18, 21.

Accordingly, Plaintiff has failed to demonstrate it will suffer irreparable harm in the absence of a preliminary injunction. The Court should deny its motion based on this failure alone. *See United Industries Corp.*, 140 F.3d at 1183.

## C. PLAINTIFF HAS FAILED TO DEMONSTRATE THE BALANCE OF HARMS WEIGHS IN FAVOR OF ISSUANCE OF A PRELIMINARY INJUNCTION.

Plaintiff has also failed to demonstrate the balance of harms weighs in favor of issuance of a preliminary injunction. To the contrary, the harm Defendants, the State of Nebraska and Nebraska consumers face in the event the Office of the Attorney General is precluded from undertaking efforts to investigate unfair or deceptive acts and practices vastly outweighs any harms potentially suffered by Plaintiff.

As stated previously, given the *actual* scope of the Attorney General's July 18 letter, contrary to Plaintiff's beliefs, the claimed "harm" of not having Farney Daniels represent Plaintiff in the instant case—or in the case pending against CSG in Delaware—is illusory.

Contrarily, the harm to the Attorney General and to the state as a whole, could be significant. Plaintiff asks that the Attorney General's statutorily-granted powers under its duly-enacted state deceptive trade practices acts be halted. As well, given the Attorney General's concerns about the deceptive patent license assertions and solicitations made by Farney Daniels—both those on behalf of Plaintiff and on behalf of MPHJ—granting an injunction would effectively allow Farney Daniels to continue its practices while not actually achieving the end (representation in this suit by Farney Daniels) that Plaintiff seeks.

Accordingly, Plaintiff has failed to demonstrate the balance of harms weighs in favor of issuance of a preliminary injunction.

## D. THE PUBLIC INTEREST WILL BE SERVED BY THE DULY ELECTED OFFICER OF THE STATE, THE ATTORNEY GENERAL, BEING ALLOWED TO CONTINUE HIS INVESTIGATION PURSUANT TO HIS STATUTORY AUTHORITY.

The information Defendants have provided thus far in this brief, most particularly those in the immediately preceding section regarding the balance of harms, should serve to more than sufficiently establish that Plaintiff has failed to demonstrate the preliminary injunction it seeks is in the public interest.

Granting the injunction, and halting a duly-elected officer of the state from investigating deceptive trade practices in the state, would not serve the fourth *Dataphase* factor—whether the public interest is so served. Patent trolling and patent solicitation schemes are widespread. *See* The White House Blog, *Taking on Patent Trolls to Protect American Innovation*, Gene Sperling, *http://www.whitehouse.gov/blog/2013/06/04/taking-patent-trolls-protect-american-innovation*, (June 4, 2013). Although State Defendants could find no case law dealing with a preliminary injunction against civil law enforcement investigation and duties of the executive branch, the courts' reasoning on the issue in the area of criminal investigation is analogous. *Rizzo v. Goode*, 423 U.S. 362, 380, (1976) (while principles of federalism are given great weight in considering whether to enjoin a criminal

prosecution, they "*have not been limited either to that situation or indeed to a criminal proceeding itself*") (emphasis added).

In short, courts are leery of granting injunctions to prevent the executive branch from conducting investigations. *Metro Medical Supply v. Shalala*, 959 F. Supp. 799, 803 (M.D. Tenn. 1996) *quoting Boggs v. Bowron*, 842 F. Supp. 542 (D. D.C. 1993) ("Because the separation of powers doctrine dictates substantial deference with respect to prosecutorial decisionmaking in investigations and prosecutions, there is a strong policy against intervening in ongoing criminal investigations…. Our Court of Appeals has denied such equitable relief, ruling that 'only the most extraordinary circumstances warrant anticipatory judicial involvement in criminal investigations.'") (internal citations omitted). "Where, as here, the exercise of authority by state officials is attacked, federal courts must be constantly mindful of the special delicacy of the adjustment to be preserved between federal equitable power and state administration of its own law." *Rizzo v. Goode*, *supra,* at 378 (1976) *quoting in part*, *Stefanelli v. Minard*, 342 U.S. 117, 120 (1951). That "special delicacy"—the public interest—is better served by the Court denying the preliminary injunction.

Accordingly, the Court should find Plaintiff has failed to demonstrate that a preliminary injunction will serve the public interest.

## CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, Defendants respectfully request this Court enter an order granting their underlying motion and dismissing the entirety of Plaintiff's first amended complaint pursuant to Fed. R. Civ. P. 12(b)(1) or 12(b)(6).

In the event the Court denies Defendants' motion to dismiss, Defendants respectfully requests the Court deny Plaintiff's motion for preliminary injunction, Filing 8, for the foregoing reasons.

Submitted this 10th day of September, 2013.

**JON BRUNING, DAVID D. COOKSON,
DAVID A. LOPEZ, Defendants.**

By:    JON BRUNING, NE #20351
       *Attorney General of Nebraska*

By:    *s/ Dale A. Comer*
       Dale A. Comer, NE #15365
       *Assistant Attorney General*

       Katherine J. Spohn, NE #22979
       *Deputy Attorney General*

       Gregory J. Walklin, NE #24210
       Ryan S. Post, NE #24714
       *Assistant Attorneys General*

       2115 State Capitol
       Lincoln, Nebraska 68509
       (402) 471-2682
       Dale.Comer@nebraska.gov
       Katie.Spohn@nebraska.gov
       Greg.Walklin@nebraska.gov
       Ryan.Post@nebraska.gov

Attorneys for Defendants Jon Bruning,
David D. Cookson, and David A. Lopez.

**CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2013, I electronically filed the foregoing document with the Clerk of the United States District Court for the District of Nebraska, using the CM/ECF system, causing notice of such filing to be served upon all parties' counsel of record.

By:  _s/ Dale A. Comer_____
Assistant Attorney General