IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

ACTIVISION TV, INC.,

                    Plaintiff,

          vs.

PINNACLE BANCORP, INC., JON
BRUNING, DAVID COOKSON, and DAVID
LOPEZ,

                    Defendants.

8:13CV215

MEMORANDUM AND ORDER

This matter is before the court on plaintiff Activision TV, Inc.'s ("Activision") motion for a preliminary injunction pursuant to Fed. R. Civ. P. 65.   Filing No. 8. Activision asks the court to permanently enjoin the Attorney General for the State of Nebraska from enforcing a cease and desist order entered by him on July 18, 2013, Filing No. 7, Ex. F.[1]  This court previously enjoined enforcement of the cease and desist order as to this case and future federal court cases.  Filing No. 31.  There is nothing left for this court to determine in the motion for preliminary injunction other than whether the State of Nebraska can order counsel for Activision TV, Inc. to cease and desist initiation of all new patent infringement enforcement efforts in Nebraska.[2]

_____

[1] The Nebraska Attorney General stated that he was investigating possible violations of the Nebraska Unfair Competition Act and the Nebraska Deceptive Trade Practices Act.

[2] Defendants also filed an objection to plaintiff's exhibits and declarations.  Filing No. 35.  The court has reviewed the same and determines that it should be denied.  The court has ignored the hearsay, and only identified that information as is relevant and made its conclusions based on the uncontested evidence and argument presented to the court.

## BACKGROUND

Activision originally filed this case against Pinnacle Bancorp, Inc., alleging patent infringement in violation of 35 U.S.C. § 271 *et seq.*[3]  Filing No. 1.  Activision, acting through counsel Farney Daniels, PC ("Farney Daniels"), believed that certain companies were violating its patents[4] throughout the United States.  Farney Daniels sent letters to these companies (five in Nebraska) asking for information to determine if in fact violations occurred or were occurring.  See Filing No. 7, Exs. C1-C6.  From February to June of 2013, the Nebraska Attorney General's Office Consumer Mediation Center received three complaints regarding patent license solicitation letters sent by Farney Daniels and/or an entity named BriPol LLC, AccNum LLC, or IsaMai LLC, on behalf of an entity named MPHJ Technology Investments, LLC.  Filing No. 23-1 at ¶ 3.  On July 12, 2013, Activision filed this lawsuit against Pinnacle Bancorp, Inc., alleging patent infringement.

On July 18, 2013, the Nebraska Attorney General filed a cease and desist order against the Farney Daniels law firm.  Filing No. 7, Ex. F.  The cease and desist order prohibited the law firm from initiating new patent infringement enforcement efforts within the State of Nebraska.  *Id.* at 2.  Following the issuance by the Nebraska Attorney General of the cease and desist order, Activision amended its complaint to include Nebraska Attorney General Jon Bruning, and his employees, David Lopez and David Cookson.  Filing No. 7.  Activision contends that its First Amendment rights are infringed as a result of the cease and desist order, as it cannot hire and associate with the counsel of its choice; that its Fifth and Fourteenth Amendment rights to due process

---

[3] It is clear that Activision invented the technology that is covered by these patents.

[4] The patents in this case involve digital signage.

have been violated; that federal patent law preempts state law; and that the Noerr-Pennington doctrine is applicable in this case.  The Attorney General argues that Farney Daniels is not a party to this lawsuit, and thus the cease and desist order is not relevant to this lawsuit.

## DISCUSSION

### A. Jurisdiction

#### 1. Standing

The court must first determine if it has jurisdiction to hear this case.  The Attorney General argues that the cease and desist order applies only to Farney Daniels, and not to Activision.  Consequently, the Attorney General argues there is no standing for Farney Daniels, a nonparty, to raise the constitutional issues regarding the cease and desist order in this lawsuit,[5] and further argues the issue is not ripe.  Counsel for the Attorney General agreed in open court that Farney Daniels is prohibited from sending these letters to new potential violators, similar to those in Filing No. 7, Ex. C1-C6, on behalf of Activision.

"The issue of standing involves constitutional limitations on federal court jurisdiction under Article III of the Constitution, which confines the federal courts to adjudicating actual 'cases and controversies.'" *Potthoff v. Morin*, 245 F.3d 710, 715 (8th Cir. 2001); *see Oti Kaga v. South Dakota Hous. Dev. Auth.*, 342 F.3d 871, 878 (8th Cir. 2003).  The threshold question in every federal case is the plaintiff's standing to sue. *Steger v. Franco, Inc.,* 228 F.3d 889, 892 (8th Cir. 2000).  Without standing, the court

---

[5] The court agrees that Farney Daniels is not a party to this lawsuit.  Accordingly, the court will review the case as it pertains to Activision.

3

lacks subject matter jurisdiction to hear the suit.   *Young Am. Corp. v. Affiliated Computer Servs.*, 424 F.3d 840, 843 (8th Cir. 2005).

To acquire Article III standing, "a plaintiff must have a 'personal stake in the outcome of the controversy.'"   *Potthoff*, 245 F.3d 710, 714 (8th Cir. 2001) (quoting *Baker v. Carr*, 369 U.S. 186, 209 (1962)).   To satisfy the burden of establishing Article III standing, the plaintiff must show:  (1) plaintiff suffered an "injury-in-fact," (2) a causal relationship exists between the injury and the challenged conduct, and (3) the injury likely will be redressed by a favorable decision.   *Eckles v. City of Corydon*, 341 F.3d 762, 767 (8th Cir. 2003) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)); *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

"An injury-in-fact is a harm that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"   *Steger*, 228 F.3d at 892 (quoting *Lujan*, 504 U.S. at 560); *Faibisch v. Univ. of Minn.*, 304 F.3d 797 (8th Cir. 2002).   Additionally, the injury must be "fairly traceable to the challenged action of the defendant."   *Saunders v. Farmers Ins. Exch.*, 440 F.3d 940, 943 (8th Cir. 2006) (quoting *Lujan*, 504 U.S. at 560); *McClain v. Am. Econ. Ins. Co.*, 424 F.3d 728, 731 (8th Cir. 2005)).   "To establish standing, a plaintiff must show that it is likely that the remedy she seeks can redress her injury."   *Faibisch,* 304 F.3d at 801; *see Monsanto v. Geertson Seed Farms*, 130 S. Ct. 2743, 2752 (2010) (Article III standing requires that an injury be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling).

In addition to the immutable requirements of Article III, "the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing." *Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 474–75 (1982); *Oti Kaga*, 342 F.3d at 880. Prudential principles of standing are statutorily imposed jurisdictional limitations separate from and in addition to constitutional standing requirements. *Davis v. U.S. Bancorp*, 383 F.3d 761, 767 (8th Cir. 2004). "By imposing prudential limits on standing, 'the judiciary seeks to avoid deciding questions of broad social import where no individual rights would be vindicated and to limit access to the federal courts to litigants best suited to assert a particular claim.'" *Oti Kaga*, 342 F.3d at 880 (quoting *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99–100 (1979)); *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004) (stating the prudential standing doctrine "embodies judicially self-imposed limits on the exercise of federal jurisdiction").

The Attorney General argues there is no showing of a concrete injury to Activision, as the July 18 cease and desist letter does not mention Activision. The Attorney General further contends that Activision cannot speculate on what Farney Daniels might attempt to do in the future on behalf of Activision in the state of Nebraska. In this regard, the Attorney General states that Activision has not explained who it is planning to send additional patent letters to in Nebraska, and further, that the cease and desist letter only prohibits Farney Daniels from sending the letters, not Activision. Thus, any claim regarding the letter prohibition must be brought by Farney Daniels, not Activision, argues the Attorney General.

Activision contends that it clearly has standing to raise this issue.  The court agrees.  Activision has suffered an injury in fact.  Farney Daniels was ostensibly unable to represent Activision in this case until the court found the cease and desist order did not apply to this case.  Second, the settlement negotiations between Activision and other defendants in this and other jurisdictions came to a standstill, as the other parties believed the cease and desist order prohibited them from negotiating with Farney Daniels on behalf of Activision.   Third, Farney Daniels cannot pursue further investigations on behalf of Activision in the State of Nebraska.  There is no doubt that this injury is causally related to the cease and desist order and such injury is directed at Activision's activities via counsel.   A favorable decision by this court redresses the respective injuries.   Accordingly, the court finds Activision has standing to raise these issues.

### 2.  Ripeness

The Attorney General also argues this case is not ripe because, as of this date, no one has incurred any injury as a result of the cease and desist order.  "The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction."  *Nat'l Park Hospitality Ass'n v. Dep't of the Interior,* 538 U.S. 803, 808 (2003) (quotation omitted).

> The judicially created doctrine of ripeness "flows from both the Article III 'cases' and 'controversies' limitations and also from prudential considerations for refusing to exercise jurisdiction."  *Neb. Pub. Power Dist. v. MidAm. Energy Co.*, 234 F.3d 1032, 1037 (8th Cir. 2000) (citing *Reno v. Catholic Soc. Servs., Inc.,* 509 U.S. 43, 57 n. 18, 113 S. Ct. 2485, 125 L.Ed.2d 38 (1993)). " 'Ripeness is peculiarly a question of timing' and is governed by the situation at the time of review, rather than the situation at the time of the events under review."  *Id.* at 1039 (quoting *Anderson v. Green,* 513 U.S. 557, 559, 115 S.Ct. 1059, 130 L.Ed.2d 1050 (1995) (per curiam)).  A party seeking review must show both "the fitness of the issues

for judicial decision and the hardship to the parties of withholding court consideration." *Pub. Water Supply Dist. No. 10 of Cass Cnty. v. City of Peculiar*, 345 F.3d 570, 572–73 (8th Cir. 2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). Both of these factors are weighed on a sliding scale, but each must be satisfied "to at least a minimal degree." *Neb. Pub. Power Dist.*, 234 F.3d at 1039.

*Iowa League of Cities v. E.P.A.*, 711 F.3d 844, 867 (8th Cir. 2013).

For the reasons previously set forth herein with regard to standing and as set forth hereinafter with regard to patent infringement law, the court finds the issue is ripe for review. Activision suffered injury, and continues to suffer injury, as a result of the cease and desist order. Failure to address this issue now will permit continued injury to Activision.

### B. First Amendment

The First Amendment, applicable to the states through the Fourteenth Amendment, provides that "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people peaceably to assemble, and to petition the government for a redress of grievances. U.S. CONST. amend I. "The hallmark of the protection of free speech is to allow 'free trade in ideas'—even ideas that the overwhelming majority of people might find distasteful or discomforting." *Virginia v. Black*, 538 U.S. 343, 357 (2003) (quoting *Abrams v. United States*, 250 U.S. 616, 630 (1919) (Holmes, J., dissenting)). An individual's interest in self-expression is a concern of the First Amendment separate from the concern for open and informed discussion, although the two often converge. *First Nat'l Bank of Boston v. Bellotti,* 435 U.S. 765, 776 n.12 (1978) (identifying "the inherent worth of the speech in terms of its capacity for informing the public" as "more than self-expression; it is the essence of self-government," and noting "self-government suffers when those in power suppress

competing views on public issues 'from diverse and antagonistic sources.'").  The First Amendment "presupposes that the freedom to speak one's mind is not only an aspect of individual liberty—and thus a good unto itself—but also is essential to the common quest for the truth and the vitality of society as a whole." *Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 503-04 (1984); *see also Bellotti*, 435 U.S. at 776 (noting that the Constitution often protects interests broader than those of the party seeking their vindication and that the First Amendment in particular serves important societal interests).  The First Amendment affords protection to symbolic or expressive conduct as well as to actual speech. *R.A.V. v. City of St. Paul,* 505 U.S. 377, 382 (1992).

The right to free speech encompasses the right to association, which is constitutionally protected in two distinct senses:  freedom of expressive association and freedom of intimate association. *Roberts v. United States Jaycees,* 468 U.S. 609, 617-18 (1984).  Expressive association—the right to associate for the purpose of engaging in those activities protected by the First Amendment (speech, assembly, petition for the redress of grievances, and the exercise of religion)—is governed by First Amendment principles. *Id.* at 618 (noting that "[t]he Constitution guarantees freedom of association of this kind as an indispensable means of preserving other individual liberties."). Intimate association, characterized as "choices to enter into and maintain certain intimate human relationships" receives protection as a fundamental element of personal liberty under the Due Process Clause. *Id.* at 617-18; *Bellotti,* 435 U.S. at 778 (stating "the liberty of speech and of the press which the First Amendment guarantees against abridgment by the federal government is within the liberty safeguarded by the Due

Process Clause of the Fourteenth Amendment"). These two constitutionally-protected freedoms can coincide particularly when the state interferes with an individual's selection of those with whom they wish to join in a common endeavor. *Roberts*, 468 U.S. at 618.

A cease and desist order has been considered an unconstitutional prior restraint on speech when it "prohibits future statements which, although possibly similar to prior statements, have not yet found to be false, misleading, and deceptive." *Weaver v. Bonner*, 309 F.3d 1312, 1323 (11th Cir. 2002) (noting that there is a "heavy presumption" against a cease and desist request's constitutional validity); *see also Pestrak v. Ohio Elections Comn'n.*, 926 F.2d 573, 578 (6th Cir. 1991) (holding that "cease and desist orders are a forbidden prior restraint. . . . Prior restraint of speech is unconstitutional unless certain safeguards are present."), citing *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 550 (1975) ("Any system of prior restraint, however, 'comes to this court bearing a heavy presumption against its constitutional validity.'" And stating further that "The settled rule is that a system of prior restraint 'avoids constitutional infirmity only if it takes place under procedural safeguards designed to obviate the dangers of a censorship system.'") *Id.* at 558-59.

### C. Dataphase

The extraordinary remedy of a preliminary injunction should not be granted unless the movant has demonstrated: (1) the threat of irreparable harm to it; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties; (3) the probability that it will succeed on the merits; and (4) the public interest. *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113-14

(8th Cir. 1981) (en banc).   No single factor is determinative, although the failure to demonstrate the threat of irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction.   *See Adam-Mellang v. Apartment Search, Inc.,* 96 F.3d 297, 299 (8th Cir. 1996); *see also Modern Computer Sys., Inc. v. Modern Banking Sys., Inc.,* 871 F.2d 734, 738 (8th Cir. 1989) (en banc).   The burden on a movant to demonstrate that a preliminary injunction is warranted is heavier when, as here, granting the preliminary injunction will in effect give the movant substantially the relief it would obtain after a trial on the merits.   *Calvin Klein Cosmetics Corp. v. Lenox Lab.*, 815 F.2d 500, 503 (8th Cir. 1987).   "A preliminary injunction is an extraordinary remedy never awarded as of right.   In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."   *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 24 (2008). In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.   *Id.*   "No single factor in itself is dispositive; rather, each factor must be considered to determine whether the balance of equities weighs toward granting the injunction."   *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998) .   "At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined . . . ."   *Dataphase,* 640 F.2d at 113.

At the early stage of a preliminary injunction motion, the speculative nature of the inquiry into the probability of ultimate success on the merits militates against any wooden or mathematical application of the test; instead, a court should flexibly weigh

the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined.  *Clorox,* 140 F.3d at 1179.

### 1. *Merits*

Activision argues this cease and desist order is unconstitutional under 42 U.S.C. § 1983 because it violates the Fifth and Fourteenth Amendment Due Process Clauses and the free speech clause of the First Amendment,[6] interferes with its right to hire counsel of its choice, federal patent law,[7] and the Noerr-Pennington doctrine.[8]  The cease and desist order, argues Activision, initially prohibited Activision from seeking its rights in court to enforce its patents with counsel of its choosing, in violation of the First, Fourteenth and Fifth Amendments.  Further, Activision argues that the cease and desist order constitutes a taking of its patents without due process as it cannot adequately prosecute those entities who infringe on the patent.  In addition, patent law is preempted, absent a showing of bad faith.  Accordingly, Activision argues that the letters sent by Farney Daniels on behalf of Activision are absolutely immune unless the activity is a sham.

---

[6] The court likewise notes that the United States Constitution states:  "To promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries."  United States Constitution, Art. 1, § 8, cl. 8.

[7] *See Christopher v. Harbury,* 536 U.S. 403, 415 n.12 (2002) (noting that a number of decisions have concluded that the right of access to the courts in the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection and Due Process Clauses); *see also Harrison v. Springdale Water & Sewer Comm'n,* 780 F.2d 1422, 1427-28 and n.7 (8th Cir. 1986) (finding the constitutional right litigants have to petition courts for redress of grievances impliedly includes a right to counsel); "The right to counsel in civil matters 'includes the right to choose the lawyer who will provide that representation.'"  *Texas Catastrophe Property Ins. Ass'n v. Morales,* 975 F.2d 1178, 1181 (5th Cir. 1992).

[8] *United Mine Workers v. Pennington,* 381 U.S. 657 (1965) (right to petition the government); *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127 (1961) (same).

The court notes there is no doubt the Attorney General generally has the power to investigate activity that it believes violates state law.  Neb. Rev. Stat. § 87-303.03 (1)(a) allows the Attorney General to conduct the investigation and § 87-303.03 (1)(b) allows the attorney general to issue a cease and desist order against any person engaged in violation of the Deceptive Trade Practices Act.

The court is deeply concerned about the ability of the Attorney General to issue cease and desist orders, prior to the conclusion of the investigation, prior to any negative findings, prior to any hearings, and prior to permitting submission of documents and evidence by the Farney Daniels law firm.  On the contrary, the Attorney General sent a request for information to Farney Daniels the same day it sent the cease and desist order, and gave Farney Daniels until August 18, 2013, to respond.  Farney Daniels responded, and no further actions have been taken.  The inability of Farney Daniels to submit such letters to businesses in Nebraska clearly infringes on the First Amendment rights of Activision to be represented by the counsel of their choice.[9]

The court finds the cease and desist order in this case is akin to a prior restraint. "[C]ease and desist orders are a forbidden prior restraint. . . .  Prior restraint of speech is unconstitutional unless certain safeguards are present").  Pestrak, 926 F.2d at 578 citing Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546, 550 (1975).  The Federal Circuit in the Globetrotter case made this point quite clearly:

> Our decision to permit state-law tort liability for only objectively [and subjectively] baseless allegations of infringement rests on both federal preemption and the First Amendment.  The federal patent laws preempt

---

[9] The court might view this matter very differently if (1) there was an imminent threat of significant harm to the citizens or the State of Nebraska; or (2) if the investigation uncovered what clearly appeared to be violations of state law, that reach the standard of "bad faith" as discussed hereinafter.  That is not the case at this point in the investigation.

state laws that impose tort liability for a patent holder's good faith conduct in communications asserting infringement of its patent and warning about potential litigation.  In addition, the same First Amendment policy reasons that justify the extension of *Noerr* immunity to pre-litigation conduct in the context of federal antitrust law apply equally in the context of state-law tort claims.

. . . .

Accordingly, to avoid preemption, bad faith must be alleged and ultimately proven, even if bad faith is not otherwise an element of the tort claim. This preemption is based on the following concept:  "A patentee that has a good faith belief that its patents are being infringed violates no protected right when it so notifies infringers."   Accordingly, a patentee must be allowed to make its rights known to a potential infringer so that the latter can determine whether to cease its allegedly infringing activities, negotiate a license if one is offered, or decide to run the risk of liability and/or the imposition of an injunction.

*Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1374, 1377 (Fed. Cir. 2004) (emphasis added) (internal quotations and citations omitted); *see*, e.g., *Mirafi, Inc. v. Murphy*, 928 F.2d 410 (Fed. Cir. 1991) (explaining that "bad faith infringement litigation, [in knowingly asserting an invalid patent, for example] could violate North Carolina's Unfair Competition Statute"); *Globetrotter Software, Inc.*, 362 F.3d at 1374 ("State [tort] law claims . . . can survive federal [patent law] preemption only to the extent that those claims are based on a showing of 'bad faith' action in asserting infringement."); *ClearPlay, Inc. v. Nissim Corp.*, 2011 WL 3878363 *8-9 (S.D. Fla. 2011) (finding that federal patent law preempted the state-law claim of violation of Florida's Deceptive and Unfair Trade Practices Act); *DeSena v. Beekley Corp.*, 729 F. Supp. 2d 375, 401 (D. Me. 2010) (finding that bad faith in the publication of the patent must be established to avoid preemption by patent law for a state law claim under the Maine Uniform Deceptive Trade Practices Act); *Alien Tech. Corp. v. Intermec, Inc.*, 2008 WL 504527 *4 (D.N.D. Feb. 20, 2008) (citing the Washington Consumer

Protection Act and explaining that deceptive conduct falls within Washington's Consumer Protection Act, and further holding that a finding of bad faith for publicizing a patent in the marketplace is required in order to survive federal preemption); *In re Innovatio IP Ventures, LLC Patent Litigation*, 921 F. Supp.2d 903, 914 (N.D. Ill. 2013) (stringent bad faith requirement); *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1348 (Fed. Cir. 1999) (need bad faith).

The court finds Activision is likely to win on the merits as there is no claim or evidence to date of bad faith.  Further, as there is no claim of bad faith, federal law governing these patents, including sending initial letters to businesses believed to violate a patent owned by Activision, is preempted by the federal government.  Also, Activision has a First Amendment right to associate with counsel of its choosing without interference from the state of Nebraska.  In addition, the cease and desist order operates in this case as a prior restraint on Activision's speech and association rights. For these reasons, the court finds Activision is likely to win on the merits.

## 2. *Irreparable Harm*

"'The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies.'" *Bandag, Inc. v. Jack's Tire & Oil, Inc.*, 190 F.3d 924, 926 (8th Cir. 1999) (quoting *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 506-07 (1959)).  Thus, to warrant a preliminary injunction, the moving party must demonstrate a sufficient threat of irreparable harm.  *Id.*  A showing of irreparable harm does not automatically mandate a ruling in the plaintiff's favor; the court must proceed to balance the harm to the defendant in granting the injunction.  *Hill v. Xyquad, Inc.,* 939 F.2d 627, 630-31 (8th Cir. 1991).

It is clear in this case that injury has occurred and will continue to occur under the cease and desist order.  Activision's First Amendment rights are being violated, and it is questionable whether the Attorney General has the right to maintain the cease and desist order given the preemption in this area of law.  Further, Activision is entitled to pursue cases in both Nebraska and other courts to the extent of the law.  Other cases have already been impacted, such as the case in the Eastern District of Texas, *Activision TV, Inc. v. Century Link,* 2:13CV462 (E.D. Tex. filed June 5, 2013).[10]  That case is held in abeyance because of the cease and desist order, and Activision is almost out of time to serve defendants.  Under the cease and desist order, such pursuit is questionable and affects those in negotiations and lawsuits with Activision.  Accordingly, the court finds this factor favors Activision.

### 3. *Balance of Harm*

The public has a right to protection from scams and unfair trade practices.  However, Activision's constitutional right to hire counsel of its choosing to pursue investigations and lawsuits against infringers is clearly impeded by the cease and desist order.  Further, the federal government has preempted to a great extent the area of patent law.  Allowing the attorney general to interfere might be harmful to the patent process.  Based on the facts as presented, which indicates no bad faith, the court finds this factor likewise weighs in favor of Activision.

### 4. *Public Interest*

The public interest is served by enforcing the Constitution of the United States.  This means that Activision and others have a right to counsel and a right to have

---

[10] Century Link is also located in Omaha, Nebraska.

counsel pursue their interests.  It also means that Activision and others have a due process right to a meaningful process prior to issuance of a cease and desist order. Accordingly, the court finds this factor weighs in favor of Activision.

THEREFORE, IT IS ORDERED:

1.   Activision's motion for preliminary injunction, Filing No. 8, is granted and defendants Bruning, Cookson and Lopez are enjoined from taking any steps to enforce the cease and desist order issued to Farney Daniels on July 18, 2013, in any manner that would prevent or impede the Farney Daniels firm from representing Activision in connection with licensing and litigation of U.S. patents owned by Activision with respect to companies based in, or having operations in, Nebraska.  If, however, at some point during the investigation evidence supports a claim of bad faith, the Attorney General is free to revisit this preliminary injunction with the court.

2.   Defendants' objection to plaintiff's exhibits, Filing No. 35, is denied.

Dated this 30th day of September, 2013.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge

16