**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| ACTIVISION TV, INC., | § |
| | § |
| Plaintiff, | § |
| | § |
| and | § |
| | § |
| MPHJ TECHNOLOGY INVESTMENTS, | § |
| LLC, inclusive of its subsidiaries, | § |
| | § |
| Intervenor-Plaintiff, | § |
| | § |
| v. | § |
| | § |
| PINNACLE BANCORP, INC., | § |
| | § |
| Defendant, | § |
| | §   Civil Action No. 8:13-cv-00215 |
| and | § |
| | § |
| JON BRUNING, Attorney General of | § |
| Nebraska (in his official capacity); | § |
| DAVID D. COOKSON, Chief Deputy | § |
| Attorney General of Nebraska (in his | § |
| official capacity); DAVID A. LOPEZ, | § |
| Assistant Attorney General of Nebraska | § |
| (in his official capacity), | § |
| | § |
| Defendants and | § |
| Intervenor Defendants. | § |

## PLAINTIFF ACTIVISION TV, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION ON COUNTS II AND III OF ACTIVISION'S FIRST AMENDED COMPLAINT FOR SUMMARY JUDGMENT, PERMANENT INJUNCTION AND OTHER RELIEF

# TABLE OF CONTENTS

**Contents**             **Page**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................ 1

RELEVANT LAW ............................................................................................. 3

ARGUMENT..................................................................................................... 5

    I.      SUMMARY JUDGMENT ON COUNT II IS APPROPRIATE – The AG
           Defendants Have No Evidence Of Any Violation Of Nebraska State Law .......... 5

        A.     Any Application Of Nebraska State Law To The Patent Enforcement
              Activity Of Plaintiff Or Its Counsel Is Preempted By The First
              Amendment............................................................................................ 5

        B.     Even If State Law Were Not Preempted, The AG Defendants Cannot
              Show Any Violation Of Nebraska State Law By Plaintiff Or Its Counsel. 6

            1.     The Nebraska Consumer Protection Act Does Not Apply ............. 7

            2.     The Nebraska Deceptive Trade Practices Act Does Not Apply ..... 7

            3.     Nebraska's RICO Statute Is Likewise Preempted And Inapplicable
                .................................................................................................. 7

            4.     The Nebraska Patent Abuse Prevention Act, A Bill Introduced By
                Defendant Bruning, Is Also Preempted And Inapplicable Here..... 8

        C.     The AG Defendants' Arguments Of Standing, Ripeness, And Mootness
              All Fail To Preclude Summary Judgment.................................................... 9

        D.     Plaintiff Is Entitled To Summary Judgment On Count II ........................ 10

    II.     SUMMARY JUDGMENT ON COUNT III IS APPROPRIATE – The AG
           Defendants Have Violated Plaintiff's Rights Under 42 U.S.C. § 1983, And The
           First, Fifth And Fourteenth Amendments To The U.S. Constitution ................... 10

    III.    PERMANENT INJUNCTIVE RELIEF REGARDING COUNTS II & III......... 12

        A.     Based On Res Judicata Principles, A Permanent Injunction Should Enjoin
              Any Further Cease & Desist Orders Or Investigation By The AG
              Defendants Related To Plaintiff's Patent Enforcement Activity That
              Occurred Prior To This Judgment............................................................. 12

        B.     To Prevent The AG Defendants From "Returning To Their Old Ways," A
              Permanent Injunction Should Enjoin The Issuance Of Any Cease And
              Desist Order By The AG Defendants Without First Presenting Evidence
              To This Court Of Bad Faith In Plaintiff's Patent Enforcement Activity
              Occurring After This Judgment ................................................................ 14

        C.     A Permanent Injunction Should Enjoin The AG Defendants From
              Investigating Plaintiff's Future Patent Enforcement Activities Unless The
              AG Defendants Present Evidence That They Have A Reasonable Basis To

           Believe There Has Been Bad Faith In Plaintiff's Patent Enforcement
           Activity ................................................................................................... 15

    D.     The AG Defendants Arguments Against A Permanent Injunction Of The
         Scope Discussed Above Should Be Rejected ........................................... 16

       1.     Plaintiff's Right To A Permanent Injunction Is Not Moot ........... 16

       2.     The Scope Of The Injunction Suggested By The AG Defendants
           Would Not Prevent The AG Defendants From Returning To Their
           Old Ways ...................................................................................... 19

IV.    Because The AG Defendants Have Violated Plaintiff's Constitutional Rights,
     Plaintiff Is Entitled To An Award Of Its Attorneys' Fees And Costs Under 42
     U.S.C. § 1983 ...................................................................................................... 21

CONCLUSION ................................................................................................................. 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 248 (1985) .................................................................4

*Bloom v. Metro Heart Group of St. Louis, Inc.*,
    440 F.3d 1025 (8th Cir. 2006) .........................................................4

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .........................................................................4

*Center for Special Needs Trust Administration, Inc. v. Olson*,
    676 F.3d 688 (8th Cir. 2012) .....................................................14, 18

*CIBA-GEIGY Corp. v. Bolar Pharm. Co.*,
    747 F.2d 844 (3d Cir. 1984, *cert. denied*, 471 U.S. 1137 (1985)) .........................17

*Clemente v. Crane*,
    1996 U.S. App. LEXIS 26496, at *21 (1st Cir. Mass. Oct. 9, 1996).....................26

*First Nat'l Bank of Ariz. v. Cities Serv. Co.*,
    391 U.S. 253, 289 (1968) .................................................................4

*Globetrotter Software, Inc. v. Elan Computer Group, Inc.*,
    362 F.3d 1367, 1374, 1377 (Fed. Cir. 2004).....................................5, 11

*Hall v. Hall*,
    738 F.2d 718 (6th Cir. 1984) .........................................................22

*Hatfield v. Hayes*,
    877 F.2d 717 (8th Cir. 1989) .........................................................22

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983).................................................................21, 22

*Hildebrand v. Steck Mfg. Co.*,
    292 Fed. Appx. 921 (Fed. Cir. 2008) .............................................21

*Houston Chronicle Publ'g Co. v. City of League City*,
    488 F.3d 613, 623 (5th Cir. 2007) .................................................22

*In re Innovatio IP Ventures, LLC Patent Litig.*,
    921 F. Supp. 2d at 912 ...................................................................8

*Lefemine v. Wideman*,
    133 S. Ct. 9 (2012)................................................................21, 22

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574, 586 (1986)..........................................................4

*Newman v. Piggie Park Enterprises, Inc.*,
    390 U.S. 400, 402 (1968)..........................................................21

*Nitro Distrib., Inc. v. Alticor, Inc.*,
    565 F.3d 417 (8th Cir. 2009) ....................................................4

*Owen v. City of Independence*,
    445 U.S. 622, 651 (1980)..........................................................26

*Parizek v. Roncalli Catholic High Sch.*,
    11 Neb. App. 482, 286 (2002) ..................................................7

*Priority Records, LLC v. Flute*,
    2007 U.S. Dist. LEXIS 31003 (D.S.D. Apr. 26, 2007) ...........18

*Ricci v. DeStefano*,
    129 S. Ct. 2658 (2009)..............................................................4

*Robbins v. District Court of Worth County*,
    592 F.2d 1015, 1017 (8th Cir. 1979) .......................................13

*Scott v. Harris*,
    550 U.S. 372 (2007).................................................................4

*Semple v. Federal Exp. Corp.*,
    566 F.3d 788 (8th Cir. 2009) ..................................................3

*Shanghai Meihao Elec., Inc. v. Leviton Mfg. Co.*,
    212 Fed. Appx. 977 (Fed. Cir. 2007).....................................17

*Steele v. Van Buren Public School Dist.*,
    845 F.2d 1492 (8th Cir. 1988) ................................................18

*Teitelbaum v. Sorenson*,
    648 F.2d 1248, 1250-51 (9th Cir. 1981) .................................22

*United States EPA v. Green Forest*,
    921 F.2d 1394 (8th Cir. 1990) ................................................13

*United States v. Prater*,
    2005 U.S. Dist. LEXIS 24952 (M.D. Fla. 2005) ....................18

**Statutes**

28 U.S.C. § 1295(a)(1) ...................................................................................21

42 U.S.C. § 1983 ...................................................................................... *passim*

Section 1988 of the Civil Rights Attorney's Fees Awards Act of 1976 .................................21, 22

NEB. REV. STAT. § 28-1255 ..................................................................................6

NEB. REV. STAT. § 28-1355 ...............................................................................7, 8

NEB. REV. STAT. § 59-1601(2) ..............................................................................7

NEB. REV. STAT. § 59-1602 ..................................................................................6

NEB. REV. STAT. § 87-302 ...................................................................................6

NEB. REV. STAT. § 87-303.01 .............................................................................6, 7

**Other Authorities**

U.S. Const. amend I ................................................................................... *passim*

U.S. Const. amend. V ..................................................................................1, 10, 12, 23

U.S. Const. amend XIV ...............................................................................1, 10, 12, 23

FED. R. CIV. P. 56(c) ......................................................................................3

# INTRODUCTION

Plaintiff Activision TV, Inc. ("Plaintiff")[1] respectfully submits this Memorandum in Support of its Motion for Summary Judgment, Permanent Injunction and Other Relief with respect to the claims brought against Defendants Bruning, Cookson and Lopez ("the AG Defendants") as set forth in Counts II and III of the First Amended Complaint. *See* Dkt. 7. In this case, Plaintiff's First Amended Complaint asserted three counts, with the second and third counts directed towards the AG Defendants. *See id.* Count II of Plaintiff's First Amended Complaint seeks a declaratory judgment for a declaration that neither Plaintiff, nor its counsel, had violated any Nebraska law in connection with efforts to enforce Plaintiff's patents in Nebraska and against Nebraska-related entities outside of Nebraska, and such other relief shown to be appropriate. *Id.* Count III seeks a judgment that the AG Defendants violated Plaintiff's constitutional rights by impermissibly interfering with Plaintiff's constitutional right to choice of counsel and thereby violated 42 U.S.C. § 1983 and the First, Fifth and Fourteenth Amendments to the U.S. Constitution, as well as an award of such other relief shown to be appropriate. *Id.*

In this Memorandum, Plaintiff first demonstrates that summary judgment on Count II is warranted and should be granted. It then shows that summary judgment on Count III is warranted and should be granted. Plaintiff then addresses the proper remedies to which it is entitled, including the proper scope of a permanent injunction, and an award of its fees and costs.

# BACKGROUND

The Court is familiar with the relevant circumstances of this case. They are set forth in this Court's prior Orders granting Plaintiff preliminary injunctive relief, and the Court's most recent Order regarding the AG Defendants' suggestion of "mootness" of Count III of Plaintiff's

---

[1] Activision notes that on February 1, 2014, its corporate name changed to Activelight TV. Filings will be submitted to the Court to correct the docket appropriately. For purposes of this Motion, Plaintiff Activision TV will be referred to as "Plaintiff."

Complaint. *See* Dkts. 38, 41 & 111. The activities were also described in detail in the Memorandum and supporting exhibits and declarations that Plaintiff submitted in support of its Motions for that preliminary injunctive relief. *See* Dkts. 8, 9, 10, 28 & 29. For the Court's convenience, Plaintiff only briefly summarizes the pertinent part of that background here, and incorporates its earlier more complete briefing and evidence herein by reference. In this Memorandum, Plaintiff also will further provide additional facts pertinent to the Summary Judgment as described below.

As the Court is aware, the AG Defendants issued a Cease and Desist Order against Plaintiff's counsel on July 18, 2013 ("the July 18 Order"). The Court found that July 18 Order impeded Plaintiff's rights to enforce its patents using counsel of its choice. *See* Dkt. 41. Counsel for the AG Defendants conceded, in open court, that the AG Defendants intended their Order to prevent Plaintiff's counsel, Farney Daniels PC, from sending patent enforcement letters on Plaintiff's behalf. *See id.* at 3. The record is now clear that the AG Defendants issued this Order without having conducted any investigation at all. Despite this, the AG Defendants vigorously opposed Plaintiff's preliminary injunction motion, which was granted by this Court in Dkts. 38 & 41. Less than two months later, the AG Defendants voluntarily withdrew their Order, having never identified any wrongdoing on the part of Plaintiff or counsel acting on its behalf, and indicating they had no present intention of investigating Activision further. *See* Dkt. 90 & 95-2. The AG Defendants only did this to evade the consequences of their conduct by attempting to rely upon their withdrawal of the Order to argue this case was thus rendered "moot." *See* Dkt. 90. The Court correctly rejected this mootness argument with respect to Plaintiff-Intervenor MPHJ Technology Investments, LLC ("MPHJ") in Dkt. 111, and that same ruling logically applies to Plaintiff as well.

In the Order of Dkt. 111, issued on January 14, 2014, the Court issued an Order granting MPHJ's preliminary injunction motions that sought substantially the same relief accorded to Plaintiff in Dkts. 38 and 41. *Id.* Within that Order, the Court explained that the withdrawal of the Cease and Desist Order did not render any count of either Plaintiff or MPHJ's Complaints moot. *Id.* Further, since the AG Defendants indicated that they would agree to a permanent injunction encompassing the findings by the Court, and because the Court found "that an order permanently enjoining the state defendants from enforcing the cease and desist orders will likely occur in this case," the Court ordered the parties to attempt to draft an agreed upon final permanent injunction and submit the draft to the Court. *Id.* at 7. If an agreement on a final permanent injunction by the parties was not reached, the Court indicated it would order an expedited progression of the Plaintiffs' cases against the AG Defendants, where the Court would either enter a permanent injunction, or address the merits on motions for summary judgments. *See id.* at 7-8.

Plaintiff and the AG Defendants have engaged in discussions regarding an appropriate permanent injunction, but could not reach a final agreement regarding the scope of a permanent injunction. As a result, the Court, on January 29, 2014, ordered the submission of Plaintiff's summary judgment motion. *See* Dkt. 122. Plaintiff, therefore, believes that the case is ripe for summary judgment, and respectfully requests that the Court grant Plaintiff's Motion and provide it the relief to which it shows itself to be entitled to herein.

## **RELEVANT LAW**

Summary judgment is proper when the court, viewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in the nonmoving party's favor, determines the evidence "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Semple v. Federal Exp. Corp.*, 566 F.3d 788, 791 (8th Cir. 2009) (quoting FED. R. CIV. P. 56(c)). In

response to the movant's showing, the nonmoving party's burden is to produce specific facts demonstrating "'a genuine issue of material fact' such that their claim should proceed to trial." *Nitro Distrib., Inc. v. Alticor, Inc*., 565 F.3d 417, 422 (8th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986)).  The nonmoving party is required to demonstrate a "genuine issue of material fact" that is outcome determinative—"a dispute that might 'affect the outcome of the suit under the governing law.'" *Bloom v. Metro Heart Group of St. Louis, Inc*., 440 F.3d 1025, 1029 (8th Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1985)).  Thus, a "genuine issue" is more than "'some metaphysical doubt as to the material facts,'" *Nitro Distrib*., 565 F.3d at 422 (quoting *Matsushita*, 475 U.S. at 586-87), and "'the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.'" *Bloom*, 440 F.3d at 1028-29 (emphasis removed) (quoting *Anderson*, 477 U.S. at 247-48).

In other words, in deciding "a motion for summary judgment, [the] facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Ricci v. DeStefano*, 129 S. Ct. 2658, 2677 (2009).  Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party"—where there is no "genuine issue for trial"—summary judgment is appropriate. *Matsushita*, 475 U.S. at 587 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 289 (1968)); *see also Scott v. Harris*, 550 U.S. 372 (2007).  Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

**ARGUMENT**

I.   **SUMMARY JUDGMENT ON COUNT II IS APPROPRIATE – The AG Defendants Have No Evidence Of Any Violation Of Nebraska State Law**

Count II of Plaintiff's First Amended Complaint sought a declaratory judgment that neither Plaintiff, nor its counsel, in engaging in activity related to enforcing Plaintiff's patents, had violated any Nebraska state law. Summary judgment on this count is now warranted on at least two independent grounds. First, this Court has already found that Plaintiff submitted sufficient evidence to establish a *prima facie* case that its patent enforcement activity is protected by the First Amendment. *See* Dkt. 41. Thus, any application of state law to Plaintiff's conduct, or the conduct of counsel on Plaintiff's behalf, requires first showing that the conduct was objectively baseless, as well as subjectively baseless. *See id.* The AG Defendants have no evidence of either, and they must have evidence of both in order to avoid summary judgment. *See id.* Second, no Nebraska law even applies to Plaintiff's activity, even if it were not preempted. Thus, even considering the state law issue on the merits independent of preemption, summary judgment on Plaintiff's Count II should be granted.

A.   **Any Application Of Nebraska State Law To The Patent Enforcement Activity Of Plaintiff Or Its Counsel Is Preempted By The First Amendment**

In its Order of Dkt. 41, this Court correctly found that the Federal Circuit decision in *Globetrotter* applies to these circumstances. *See* Dkt. 41 at 12-13 (citing *Globetrotter Software, Inc. v. Elan Computer Group, Inc.,* 362 F.3d 1367, 1374, 1377 (Fed. Cir. 2004)). As *Globetrotter* makes clear, communications related to patent enforcement are protected by the First Amendment, and state law is thus preempted, unless the communications are shown to be objectively baseless and subjectively baseless. *See id.* As further support on this point, Plaintiff cites and incorporates herein by reference the Court's clear discussion, inclusive of a lengthy string cite, on this subject in Dkt. 41, and Plaintiff's briefing on this subject in Dkts. 9 & 28.

In this case, the AG Defendants have no evidence, and there is no evidence, that the conduct of Plaintiff or its counsel in connection with Plaintiff's patent enforcement activity in Nebraska was objectively baseless, and also was subjectively baseless.[2] Thus, as a matter of law, Plaintiff is entitled to a summary judgment that its conduct cannot be in violation of any Nebraska law, because any possible application of that law is preempted. *Id.*

**B.** **Even If State Law Were Not Preempted, The AG Defendants Cannot Show Any Violation Of Nebraska State Law By Plaintiff Or Its Counsel**

In their Civil Investigative Demand and Cease and Desist Order issued on July 18, the AG Defendants allege possible violations of NEB. REV. STAT. §§ 59-1602, 87-302, and 87-303.01. Defendant Bruning has also made public statements that Activision's patent enforcement activities may have violated NEB. REV. STAT. § 28-1255, the Nebraska RICO statute. Finally, Defendant Bruning introduced a new bill to the Nebraska legislature, the Nebraska Patent Abuse Prevention Act, which addresses bad faith assertions of patent infringement. Not only are applications of each of these laws preempted, as explained above, but, additionally, none of these laws even apply to Plaintiff's patent enforcement activity, as explained below.

---

[2] In their response to Plaintiff's Motions for Preliminary Injunction, the AG Defendants did not present to this Court any evidence that the conduct of Plaintiff or its counsel was both objectively and subjectively baseless. *See* Dkt. 22. In their Answer to Plaintiff's Complaint, the AG Defendants did not contend they had such evidence, either prior to their issuance of their Cease and Desist Order on July 18, 2013, or since then up until the present time. *See* Dkt. 99. Further, the AG Defendants have written to Plaintiff and its counsel and expressly confirmed that they have no intention to investigate Plaintiff or Plaintiff's counsel with respect to any further patent enforcement activity. *See* Dkt. 95-2. They have also withdrawn their Order as to Plaintiff and its counsel, and offered to enter into a permanent injunction from repeating their conduct. *See* Dkt. 90.

1. **The Nebraska Consumer Protection Act Does Not Apply**

It is clear that for conduct to fall within the purview of Nebraska's consumer protection laws, it must constitute "trade or commerce." *See* Dkt. 22 at 24. Those terms are defined under the Nebraska Consumer Protection Statute as "the **sale** of assets or services and any commerce directly or indirectly affecting the people of the State of Nebraska." NEB. REV. STAT. § 59-1601(2) (emphasis added). It is clear that Plaintiff's patent-related correspondence does not meet the definition of "trade or commerce" under the statute, as there is no "sale of assets or services" by Plaintiff, only patent enforcement efforts against infringers of Plaintiff's patents. Further, the communications by Plaintiff cannot be considered "deceptive" or "unfair" within the meaning of Nebraska's consumer protection laws, as the letters themselves were objectively and subjectively accurate and reasonable attempts to enforce Plaintiff's patents. *See* Dkt. 29-32.

2. **The Nebraska Deceptive Trade Practices Act Does Not Apply**

Additionally, the UDTPA does not apply to Plaintiff's practices here because that law only applies to "unconscionable practices" <u>in a contract</u>. *See Parizek v. Roncalli Catholic High Sch.*, 11 Neb. App. 482, 286 (2002); NEB. REV. STAT. § 87-303.01(1) ("An unconscionable act or practice **by a supplier** in connection with a **consumer transaction** shall be a violation of the Uniform Deceptive Trade Practices Act.") (emphasis added). Obviously, Plaintiff cannot be considered a "supplier" to any "consumer transaction," and it has not entered into any contracts or transactions with any businesses it has enforced its patents against. Accordingly, despite being preempted, the Nebraska consumer protection statutes are also inapplicable to Activision's activity here.

3. **Nebraska's RICO Statute Is Likewise Preempted And Inapplicable**

It has also been suggested by Defendant Bruning in the media that the patent enforcement efforts complained of here violated Nebraska's RICO statute, presumably NEB. REV. STAT. § 28-

1355.  For the same reasons discussed *supra*, any application of the Nebraska RICO statute is preempted. *See In re Innovatio IP Ventures, LLC Patent Litig.*, 921 F. Supp. 2d at 912 (holding that pre-suit communications are shielded from RICO claims pursuant to the First Amendment). Further, the Nebraska RICO law is inapplicable here as the terms of the statute simply do not apply to MPHJ's patent enforcement activities. *See* NEB. REV. STAT. § 28-1355.  Plainly this statute is limited to racketeering activity and collection of unlawful debts – neither of which have anything to do with patent enforcement. *See id.*

**4.    The Nebraska Patent Abuse Prevention Act, A Bill Introduced By Defendant Bruning, Is Also Preempted And Inapplicable Here**

It is evident that current Nebraska laws are simply inapplicable to Activision's patent enforcement activities.  The AG Defendants appear to agree, as they introduced the Nebraska Patent Abuse Prevention Act early this year, because, by their own admission, "[c]urrently, there is no law to specifically address bad faith assertions of patent infringement." *See* Dkt. 124-1.  Of course, as an initial matter, because this proposed bill is not Nebraska law at this time, Plaintiff's activities cannot fall within its purview.  In any event, even if this act was a Nebraska law at this time, it would be inapplicable to Plaintiff, because the new law requires "bad faith assertions of patent infringement." *See id.*  Here, there have not been any bad faith assertions by Plaintiff – as Plaintiff enforced its patents objectively and subjectively in good faith, and the AG Defendants have no evidence suggesting otherwise.[3]

Thus, as explained above, none of Nebraska state laws would apply to Plaintiff's patent enforcement activities here, even if they were not preempted.  As such, summary judgment with respect to Count II is appropriate.

---

[3] Of course, for this same reason, application of this state statute to Plaintiff's activities would be preempted under the First Amendment.

### C. The AG Defendants' Arguments Of Standing, Ripeness, And Mootness All Fail To Preclude Summary Judgment

The main defense raised by the AG Defendants with respect to Plaintiff has been a repeated assertion that their Order "did not relate to Plaintiff," but only Plaintiff's counsel. Not only has this position been repeatedly rejected by this Court,[4] but this assertion can be dismissed summarily on the basis of the representations by the AG Defendants' own counsel. As the Court will recall, in a hearing on the preliminary injunction, counsel for the AG Defendants repeatedly stressed that the only effect the Order would have on Plaintiff is that it would prevent Plaintiff from using its counsel of choice, Farney Daniels PC, from sending future patent enforcement letters in Nebraska on Plaintiff's behalf. *See* Dkt. 49, 43:21-24; 46:22-24. This position was noted by the Court itself in its Order of Dkt. 41. *See* Dkt. 41 at 3. As this Court has already found, an order to this effect would interfere with Plaintiff's constitutional rights to enforce its patents, and to do so with counsel of its choice, and therefore, any argument by the AG Defendants that summary judgment is not appropriate on grounds that their Order did not affect Plaintiff, and that Plaintiff lacks standing and ripeness, may easily be dismissed. *See* Dkts. 41 & 81.

The AG Defendants have also contended that Plaintiff's suit is now moot because they withdrew their Order, while reserving the right to reinstate it at any time. As the Court properly found in Dkt. 111, this action by the AG Defendants in no way moots Plaintiff's case. *See* Dkt.

---

[4] *See* Dkt. 41 at 3-7 ("The Attorney General argues there is no showing of a concrete injury to Activision, as the July 18 cease and desist letter does not mention Activision . . . Activision contends that it clearly has standing to raise this issue. The court agrees. Activision has suffered an injury in fact . . . There is no doubt that this injury is causally related to the cease and desist order and such injury is directed at Activision's activities via counsel."); Dkt. 81 at 2-5 ("Defendants make the same basic arguments in its motion to dismiss, particularly with regard to property rights, standing and ripeness, as previously argued in the opposition to Activision's motion for a preliminary injunction. The court has already determined that plaintiff stated a claim under federal law and the case can proceed in federal court. Accordingly, the court will deny the motion to dismiss.").

111 at 2-3.  But, as to Count II, there is an additional point to be made on mootness.  Count II seeks a declaration that the patent enforcement activity of Plaintiff and its counsel that was accused by the AG Defendants' July 18 Order does not violate any Nebraska law.  Even with that Order withdrawn, that issue remains, as it was accused for a substantial period of time.

### D.     Plaintiff Is Entitled To Summary Judgment On Count II

For the reasons explained above in this Section I, Plaintiff is entitled to a summary judgment in its favor on Count II of the First Amended Complaint.  That judgment should afford Plaintiff the benefit of a judgment declaring that the patent enforcement activity up to the date of this judgment, conducted by Plaintiff and by counsel acting on its behalf, did not violate any Nebraska state law, and further application of state law to that activity is preempted by the First Amendment.  In addition to the summary declaratory judgment, Plaintiff, on Count II, is further entitled to injunctive and other relief as described further in Sections III and IV of this Memorandum.

## II.    SUMMARY JUDGMENT ON COUNT III IS APPROPRIATE – The AG Defendants Have Violated Plaintiff's Rights Under 42 U.S.C. § 1983, And The First, Fifth And Fourteenth Amendments To The U.S. Constitution

In its third count, Plaintiff sought a judgment that the AG Defendants violated 42 U.S.C. § 1983 and the First, Fifth and Fourteenth Amendments to the U.S. Constitution by the issuance of their unconstitutional Cease and Desist Order. *See* Dkt. 7.  Demonstrating a violation of Section 1983 requires proof that a state actor, acting under the color of any statute, deprived the party of its rights, privileges, or immunities secured by the U.S. Constitution. *See* 42 U.S.C. § 1983.  In this case, the evidence of record makes it clear that a violation of Section 1983 has occurred.

There is no reasonable dispute that Defendants Bruning, Cookson and Lopez, as sued here in their official capacity, are state actors within the meaning of Section 1983.  Defendant

Bruning violated Section 1983 by directing the issuance of the Cease and Desist Order. Defendant Cookson violated Section 1983 by issuing the Cease and Desist Order to Plaintiff's counsel. Defendant Lopez likewise violated Section 1983 by issuing the Cease and Desist Order to Plaintiff's counsel, including signing the Civil Investigative Demand and certificate of service. With respect to Defendant Lopez, his transmission of the Cease and Desist Order to Plaintiff's counsel is sufficient to hold him liable for a violation of Section 1983.[5]

There is no reasonable dispute that the AG Defendants' issuance of the Cease and Desist Order to Plaintiff's counsel violated Plaintiff's constitutional rights. The evidence of record indicates that prior to the issuance of the Order, none of the three AG Defendants had conducted any investigation or review of any facts or circumstances related to the patent enforcement activities of Plaintiff and its counsel that would have been sufficient to justify the issuance of the Order. Even now, and even in response to Plaintiff's Motions for Preliminary Injunction, they have produced no such evidence. As Plaintiff has explained in Section I(A), Plaintiff's patent enforcement activity interfered with by the AG Defendants is protected by the First Amendment, unless there is evidence that the conduct was objectively baseless and subjectively baseless. *See* Dkt. 41; *Globetrotter Software, Inc.,* 362 F.3d at 1374, 1377. The AG Defendants have no such evidence, and it is therefore plain that Plaintiff's patent enforcement activity is constitutionally protected.

Moreover, Plaintiff not only has the First Amendment right to communicate regarding enforcement of its patents, as Plaintiff has already previously established, and as this Court has found, Plaintiff has the right to do so using counsel of its choice. *See* Dkt. 41 at 8-12; Dkt. 9 at

---

[5] With respect to Defendant Lopez, the AG Defendants have sought to dismiss him from the case on grounds that he is not liable under Section 1983. The Court has already denied that motion and the arguments made by the AG Defendants in this regard. *See* Dkt. 81 at 4-5 (denying the AG Defendants' Motion to Dismiss).

20-25; Dkt. 28 at 34-38.  It is evident that the AG Defendants' July 18 Order interfered with and impeded Plaintiff's First Amendment rights to enforce its patents, and also its First Amendment rights to conduct that activity using counsel of its choice.  As noted earlier, counsel for the AG Defendants conceded in open court that the July 18 Order prevented Plaintiff from using counsel of its choice to send patent enforcement communications.

Given that the Order issued by the AG Defendants, by their own admission, interfered with Plaintiff's constitutional rights, and given that they have no evidence that their Order was constitutionally justified, Plaintiff is entitled to a summary judgment that the AG Defendants violated Plaintiff's constitutional rights under at least the First, Fifth and Fourteenth Amendments to the U.S. Constitution, and that the AG Defendants are liable under 42 U.S.C. § 1983.

## III.    PERMANENT INJUNCTIVE RELIEF REGARDING COUNTS II & III

In the foregoing, Plaintiff has shown itself to be entitled to judgments in its favor on both Count II and Count III of its Amended Complaint.  For each, Plaintiff sought such relief as it would show itself to be entitled. *See* Dkt. 7.  Here, that relief should include a permanent injunction against the AG Defendants.  Plaintiff believes under the law, and on the circumstances of this case, that the permanent injunction relief should include at least three components, as further explained below.

### A.    Based On Res Judicata Principles, A Permanent Injunction Should Enjoin Any Further Cease & Desist Orders Or Investigation By The AG Defendants Related To Plaintiff's Patent Enforcement Activity That Occurred Prior To This Judgment

First, if the Court grants this Motion with respect to Count II, Plaintiff will have secured a judgment that its patent enforcement activity in Nebraska, or involving entities with operations in Nebraska, did not violate any state law, and that any state law was, in any event, preempted by

the First Amendment.  As to any such activity up to the date of that judgment, the judgment will serve as res judicata as to any future litigation on that subject as between Plaintiff and the AG Defendants. *See United States EPA v. Green Forest,* 921 F.2d 1394, 1403 (8th Cir. 1990) ("The doctrine of res judicata bars a later suit when (1) the first suit results in a final judgment on the merits; (2) the first suit is based on proper jurisdiction; (3) both suits involve the same cause of action; and (4) both suits involve the same parties or their privies") (citation omitted).

A key point here is that Count II is different than Count III. Count II seeks a declaration that Plaintiff's patent enforcement activity, and that of its counsel, did not violate any state law. Thus, a judgment on Count II puts the entirety of any question whether Plaintiff's conduct, or its counsel's conduct, violated state law. *Id.*  Res judicata principles apply to the Section 1983 claim in Count III as well, but arguably res judicata as to Count III might be more limited than it is with Count II, and be limited to only the constitutional issues raised by that Count III. *See, e.g.*, *Robbins v. District Court of Worth County*, 592 F.2d 1015, 1017 (8th Cir. 1979) (explaining that the principle of res judicata applies to 42 U.S.C. § 1983 actions and operates as a bar to re-litigation of constitutional issues raised, as well as to constitutional issues that could have been raised in a prior suit if the second suit concerns the same operative nucleus of fact).

Here, the AG Defendants have had multiple opportunities to present evidence of bad faith patent enforcement by Plaintiff, or its counsel on its behalf, such that state law would even apply. Not surprisingly, the AG Defendants have not uncovered any evidence of bad faith – because none exists.  Further, the AG Defendants have had multiple opportunities to explain how state law could even apply to Plaintiff's patent enforcement activity if it were not preempted, and have failed to do so. *See* Section I(B), *supra*.  Accordingly, because res judicata will apply to any future assertions of violations of state law by the AG Defendants with respect to Plaintiff's

patent enforcement activities prior to the date of judgment, the AG Defendants should be permanently enjoined from issuing any future cease and desist order, or conducting further investigation with respect to Plaintiff's patent enforcement activities, including its counsel's on its behalf, occurring prior to the date of judgment.

**B.    To Prevent The AG Defendants From "Returning To Their Old Ways," A Permanent Injunction Should Enjoin The Issuance Of Any Cease And Desist Order By The AG Defendants Without First Presenting Evidence To This Court Of Bad Faith In Plaintiff's Patent Enforcement Activity Occurring After This Judgment**

By securing a judgment on Count III, Plaintiff has established that the AG Defendants violated Plaintiff's rights under the First, Fifth and Fourteenth Amendments, and therefore violated 42 U.S.C. § 1983. *See* Sections I(A) & II, *supra*.  A key purpose of permanent injunctions in Section 1983 cases is to prevent the defendants from "returning to their old ways." It is well-settled that mere withdrawal of a cease and desist order does not moot the need for a permanent injunction, because the AG Defendants are free to return to their old ways by reissuing another cease and desist order without conducting an investigation, and without evidence of bad faith. *See Center for Special Needs Trust Administration, Inc. v. Olson*, 676 F.3d 688, 697 (8th Cir. 2012) ("Mere voluntary cessation of allegedly illegal conduct does not moot a case; otherwise, the courts would be compelled to leave the defendant ... free to return to his old ways.") (internal citations and quotations omitted).

Here, the AG Defendants issued their Cease and Desist Order without any investigation of Plaintiff at all, and without any grounds to believe, much less assert, that Plaintiff's activity was objectively baseless and subjectively baseless.  Accordingly, to prevent a return to that "old way," the injunction should permanently enjoin the AG Defendants from issuing any cease and desist order against Plaintiff or counsel representing Plaintiff, for conduct the same, or substantially similar, to the conduct accused in this case.  Such a permanent injunction would be

14

consistent with the Court's preliminary injunction issued in Dkt. 41.  As with that injunction, the

permanent injunction could permit the AG Defendants to seek relief from that injunction by first

presenting to the Court evidence of bad faith on the part of Plaintiff or Plaintiff's counsel with

respect to conduct after the date of the judgment.

### C.    A Permanent Injunction Should Enjoin The AG Defendants From Investigating Plaintiff's Future Patent Enforcement Activities Unless The AG Defendants Present Evidence That They Have A Reasonable Basis To Believe There Has Been Bad Faith In Plaintiff's Patent Enforcement Activity

Third, and finally, Plaintiff believes that a permanent injunction under Section 1983

adequate to prevent the AG Defendants from returning to their old ways should also enjoin them

from investigating any future patent enforcement activity of Plaintiff, or of counsel acting on

Plaintiff's behalf, <u>specifically</u> where that conduct involves the same patents, or related patents, as

were at issue in this case, and where the subject correspondence is the same or substantially

similar to the correspondence at issue in this case.  At least Defendant Bruning has publicly

vowed to "run out of Nebraska" counsel for Plaintiff. *See* Dkt. 108.  Plainly, Plaintiff has reasons

to be concerned its patent enforcement activity using that counsel may be unconstitutionally

interfered with.  It is also clear that the AG Defendants still refuse to admit any wrongdoing, and

still have not stated, with certainty, that they will not re-issue an unconstitutional cease and desist

order affecting Activision's constitutional rights. *See* Dkt. 118 at 2 (explaining that there is only

an "extreme improbability" of the State taking any future action against Activision).

Given that the AG Defendants have previously interfered with Plaintiff's use of the

counsel of its choosing to assist it in patent enforcement activities, and have vowed to do so in

the future, and that the AG Defendants have specifically reserved the right to pursue action

against Plaintiff, Plaintiff believes such an injunction is an appropriate protection in this instance.

As with the portion of the injunction discussed in Section III(B) above, the Court may provide

that the AG Defendants may seek relief from this part of the injunction by coming before this Court and demonstrating they have a reasonable basis to believe that an investigation would discover evidence of objective baselessness, subjective baselessness, and violation of state law.

### D. The AG Defendants Arguments Against A Permanent Injunction Of The Scope Discussed Above Should Be Rejected

Plaintiff submits that an appropriate permanent injunction will be in the scope suggested above. The AG Defendants have indicated that they will oppose the grant of such relief on at least two grounds. First, the AG Defendants contend that because they have withdrawn their Cease and Desist Order with respect to Plaintiff, that the Section 1983 suit brought by Plaintiff is now "moot," and that no injunctive relief can or should be granted by this Court. *See* Dkts. 90 & 98. Second, the AG Defendants, while volunteering to enter into a permanent injunction, appear to contemplate a meaningless injunction where they are left free to return to their "old ways." Each of these two arguments are addressed by Plaintiff below, and Plaintiff demonstrates that neither presents a reason why the Court should not issue a permanent injunction of the scope described above.

### 1. Plaintiff's Right To A Permanent Injunction Is Not Moot

The AG Defendants have claimed that since they withdrew their Cease and Desist Order, and offered to consent to the entry of a permanent injunction,[6] that Plaintiff's Count III is "moot." *See* Dkts. 90 & 98. This is not the case, as this Court agreed. *See* Dkt. 111 at 2-3. *See also* Dkts. 94 & 123. Additionally, none of the filings by the AG Defendants in this case support

---

[6] Importantly, the AG Defendants have not consented to a permanent injunction of the type sought by Plaintiff here, but rather explain that they would consent to the entry of a permanent injunction that would enjoin them "from issuing any cease and desist order directed at or effective against any party or counsel to this litigation without first providing notice to the affected party and an opportunity to be heard." Dkt. 90 at 2. Of course, the offered injunction would provide no protection to Plaintiff and its counsel for the repeated deprivation of Plaintiff's constitutional rights, as whether the cease and desist order should be reissued would be entirely subjective by the AG Defendants.

a finding that Plaintiff's Count III is considered "moot." For example, in their most recent filing of Dkt. 118, the AG Defendants again made it clear that "State Defendants maintain that their original cease and desist order was never applicable against Activision and, therefore, Activision lacked standing to bring suit." *See* Dkt. 118 at 2. Thus, even now, despite orders from this Court finding that the Cease and Desist Order related to Activision and that Activision has standing to bring its claims (*see, e.g.,* Dkt. 41), the AG Defendants still refuse to admit any wrongdoing, and still have not stated, with certainty, that they will not re-issue an unconstitutional cease and desist order affecting Activision's constitutional rights. *See* Dkt. 118 at 2 (explaining that there is only an "extreme improbability of the State taking any future action against Activision"). Thus, it is clear that nothing about Activision's case is "moot."

Further, the AG Defendants in asserting "mootness" nevertheless offer to "agree" to a permanent injunction, while at the same time apparently wanting to avoid a finding that they violated Section 1983, or a finding in favor of Plaintiff on Count II. *See* Dkts. 90 & 118; Dkt. 111. Their proposal simply evinces a misunderstanding of the law on permanent injunctions. In order for this Court to enter any permanent injunction in this case, there must be a finding and judgment that the AG Defendants did violate Section 1983 with respect to Plaintiff, and/or a judgment in Plaintiff's favor on Count II. *See, e.g., CIBA-GEIGY Corp. v. Bolar Pharm. Co.*, 747 F.2d 844, 847 (3d Cir. 1984, *cert. denied*, 471 U.S. 1137 (1985)) (explaining that a district court may convert an opinion granting a preliminary injunction into one granting a permanent injunction by expressly recasting its findings and conclusions in terms of the proper legal standard applicable to a permanent injunction); *Shanghai Meihao Elec., Inc. v. Leviton Mfg. Co.*, 212 Fed. Appx. 977, 987 (Fed. Cir. 2007) ("In granting permanent injunctions, district courts are bound by the requirements set forth in FED. R. CIV. P. 65, which provides in part . . . (d) Every

order granting an injunction . . . shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail . . . the act or acts sought to be restrained") (citations omitted); *Priority Records, LLC v. Flute*, 2007 U.S. Dist. LEXIS 31003, at *9 (D.S.D. Apr. 26, 2007) ("Before obtaining a permanent injunction the movant must have attained success on the merits"); *United States v. Prater*, 2005 U.S. Dist. LEXIS 24952, at *8-9 (M.D. Fla. 2005) ("The Court issuing the permanent injunction must 'recast' its findings of fact and conclusions of law in terms of the permanent injunction standard, which is essentially the same as the standard for a preliminary injunction. The exception is that the plaintiff must show actual, rather than likely, success on the merits.") (citing cases). Thus, absent agreement between the parties, which was not obtained in this case, the law is clear that the Court can only enter the permanent injunction upon entry of findings and a judgment in connection with Counts II and/or III in Plaintiff's favor that warrants a permanent injunction. The AG Defendants' are simply incorrect that their voluntary offer to enter into some form of a permanent injunction renders the case moot, or renders Plaintiff's right to an injunction of the proper scope moot.

Further, it is worth noting that without the entry of a permanent injunction, the AG Defendants are free to reissue their unconstitutional Cease and Desist Order. *See Steele v. Van Buren Public School Dist.*, 845 F.2d 1492, 1494 (8th Cir. 1988) ("Voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot. A controversy may remain to be settled in such circumstances, e.g., a dispute over the legality of the challenged practices. The defendant is free to return to his old ways. This, together with a public interest in having the legality of the practices settled, militates against a mootness conclusion.")(internal citations omitted); *Center for Special Needs Trust Administration, Inc. v. Olson*, 676 F.3d 688, 697 (8th Cir. 2012) ("The

defendant faces a heavy burden of showing that the challenged conduct cannot reasonably be expected to start up again. The test for mootness is stringent. Mere voluntary cessation of allegedly illegal conduct does not moot a case; otherwise, the courts would be compelled to leave the defendant ... free to return to his old ways.") (internal citations and quotations omitted).

That the AG Defendants are likely to reissue their Cease and Desist Order is even more evident from recent public statements made by Defendant Bruning after the withdrawal of the Cease and Desist Order, calling Plaintiff's counsel, Farney Daniels PC, "scam artists," and expressing his intention "to run them out of Nebraska." *See* Dkt. 108. Thus, it is clear that this Court should not, and need not, accept the AG Defendants' unsupported promise of its intention to not reissue its unconstitutional Cease and Desist Order directed towards Plaintiff and its counsel. For these reasons, it also is evident that the case is not moot, and Plaintiff's need for a permanent injunction is not moot.

      **2.      The Scope Of The Injunction Suggested By The AG Defendants Would Not Prevent The AG Defendants From Returning To Their Old Ways**

The AG Defendants have at least suggested that they would consent to the entry of a permanent injunction with respect to Plaintiff. *See* Dkt. 90. However, their specific proposal was a consent to a permanent injunction that would prevent them from issuing such a cease and desist order in the future without first offering Plaintiff and its counsel "a hearing." *See* Dkt. 90. Plainly this is no relief at all. This is a circumstance where Plaintiff and its counsel have had their rights egregiously interfered with, without any investigation at all, and without any basis other than the AG Defendants' apparent animus at Plaintiff's counsel.[7] The law is quite clear, and this Court agrees, that the federal courts do not permit state actors to interfere with a party's

---

[7] An animus which Plaintiff's counsel finds mystifying, since the entirety of its relevant representations with respect to any company in Nebraska has been limited to two clients – Plaintiff and MPHJ.

constitutional rights and then voluntarily withdraw that conduct in a manner that permits them to simply reinstate it in the future. *See* Section IB1, *supra*. Here, that is precisely what the AG Defendants are attempting to do.[8]

As the Court is now aware, just recently, on January 7, Defendant Bruning publicly declared that his intention with respect to Plaintiff's counsel was "to run them out of Nebraska." *See* Dkt. 108. Such conduct by a public official directed towards a respected law firm whose partners all have established national reputations is unheard of and shockingly unwarranted. In the case of Plaintiff, Defendant Bruning has publicly and falsely declared it to be a "patent troll" and, despite knowing this charge to be false, has never publicly retracted it. *See id.* The Court has confirmed that Plaintiff has its right to choice of counsel. *See* Dkt. 41. Plaintiff has chosen, for good and valid reasons, to be represented by Farney Daniels PC in connection with its patent enforcement efforts. It is apparent from at least Defendant Bruning's conduct that the AG Defendants are highly likely to interfere with Farney Daniels PC's representations of its clients, including Plaintiff, in the future. That firm can reasonably be concerned that the AG Defendants will repeat their unconstitutional attacks on the firm and the firm's clients in the absence of the protection of permanent injunctive relief.

Accordingly, to prevent the AG Defendants from returning to their old ways, and, in particular, where they have vowed to do so, Plaintiff is entitled to permanent injunctive relief of the scope described above.

---

[8] Further, it is evident from the AG Defendants' Motion for Reconsideration in Dkt. 118 that they either refuse to recognize, or instead choose to willfully ignore, that to avoid state law preemption they must show "objective baselessness" and "subjective baselessness" and not, as they would have it, some scattered and lesser standard of undefined "bad faith."

**IV.    Because The AG Defendants Have Violated Plaintiff's Constitutional Rights, Plaintiff Is Entitled To An Award Of Its Attorneys' Fees And Costs Under 42 U.S.C. § 1983**

Section 1988 of the Civil Rights Attorney's Fees Awards Act of 1976 provides that in any action or proceeding to enforce certain civil rights statutes, including Section 1983, "the Court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs." Although the language of Section 1988 is discretionary, courts have consistently held that the district court's exercise of discretion must comport with the Congressional intent of the statute. Congress expressly stated that the prevailing party should ordinarily recover attorney's fees unless special circumstances would render such an award unjust. *See Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (citing *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968)).[9]

The U.S. Supreme Court has confirmed that the granting of injunctive relief confers prevailing party status. *See Lefemine v. Wideman*, 133 S. Ct. 9 (2012) (vacating the order affirming the denial of an award of attorney fees and affirming an injunction permanently enjoining the state defendants from infringing the plaintiff's rights in violation of § 1983 and explaining that 42 U.S.C. § 1988 allows "'the prevailing party' in certain civil rights actions, including suits brought under § 1983, to recover 'a reasonable attorney's fee.'"). The Supreme Court explained that a plaintiff "prevails . . . when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id.* at 11 ("we have repeatedly held that an injunction or declaratory judgment, like a damages award, will usually satisfy that test").

---

[9] While any appeal of this case will be taken to the Federal Circuit, that court will follow the law of the Eighth Circuit in connection with the standards under which discretion should be exercised in the award of attorneys' fees and costs. *See* 28 U.S.C. § 1295(a)(1); *Hildebrand v. Steck Mfg. Co.*, 292 Fed. Appx. 921, 923 (Fed. Cir. 2008).

Because Plaintiff, by showing that it is entitled to summary judgment, a declaratory judgment and a permanent injunction, is a "prevailing party," it "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust."[10] *Id.* citing *Hensley v. Eckerhart,* 461 U.S. 424, 429 (1983). *See also Houston Chronicle Publ'g Co. v. City of League City*, 488 F.3d 613, 623 (5th Cir. 2007) (reversing district court's finding that statute plaintiff complained of was unconstitutional, but finding nonetheless that district court abused its discretion in denying the plaintiff attorney's fees under Section 1988, noting that the attorney's fee question turns on whether plaintiff is a prevailing party under the statute); *Teitelbaum v. Sorenson*, 648 F.2d 1248, 1250-51 (9th Cir. 1981) (finding that district court's refusal to award attorney's fees in Section 1983 case was an abuse of discretion and refusing to hold that a defendant's good faith, by itself, is not a "special circumstance" that warrants an exception to the rule in favor of fee awards in civil rights cases); *Hall v. Hall*, 738 F.2d 718, 721 (6th Cir. 1984) (holding that district court abused its discretion when it did not award attorney's fees to prevailing plaintiff in police brutality case).

This is a case that particularly calls for an award of fees, and the failure to award such fees in this case would be unjust. Plaintiff is a very small company in Florida with extremely limited resources. Dkt. 10-3. It owns patents which were groundbreaking in the area of digital signage and those patents are being widely infringed in a way that has damaged Plaintiff's ability

---

[10] The Eighth Circuit has recognized that the "special circumstances" exception should be "narrowly construed," dictating that denial of attorney's fees under Section 1988 must be supported by a "strong showing of special circumstances." *Hatfield v. Hayes*, 877 F.2d 717, 720 (8th Cir. 1989) (citations omitted). Among the circumstances that are *insufficient* to support a denial are good faith, a private benefit to a plaintiff rather than a public benefit to a class, a simple or routine case as opposed to a complicated one, and situations where the plaintiff prevails on grounds other than Section 1983 but Section 1983 would have been an appropriate basis for relief. *See id*. (citations omitted). Plainly, following these principles, no "special circumstances" are present here that would justify a denial of fees.

to sell its own products or to raise funds. Dkt. 10-3. Plaintiff's situation represents a classic circumstance where the ownership of patents, and the right to enforce those patents against infringers, is exactly the circumstances envisioned by the U.S. Constitution and the U.S. patent laws.

During the process of Plaintiff's lawful enforcement of its patent rights, the AG Defendants decided to interfere with and impede Plaintiff's exercise of those rights without any basis whatsoever. Indeed, the AG Defendants have never provided any explanation for their shocking interference with Plaintiff and its rights. Further, the AG Defendants, and, in particular, Defendant Bruning, attempted to damage Plaintiff at the same time of issuance of the Cease and Desist Order by publicly calling Plaintiff a "patent troll." *See* Dkt. 29-33. This accusation harmed Plaintiff's business reputation, and impeded and damaged its efforts to enforce its patents elsewhere.

The conduct of the AG Defendants since the issuance of their Cease and Desist Order has been even more egregious. The very same day they issued their Cease and Desist Order, counsel for Plaintiff contacted and informed Defendant Cookson that Plaintiff was not a patent troll. *See* Dkt. 29-1. Defendant Cookson brusquely responded that Plaintiff's counsel could simply explain that in their response to the Civil Investigative Demand issued the same day. *See id*. Even after this exchange, the AG Defendants refused to retract or modify their Order.

On August 19, 2013, Plaintiff filed its First Amended Complaint in this suit in which it set forth the case that there was no basis for the Cease and Desist Order as it related to Plaintiff or its counsel. *See* Dkt. 7. Thus, it was known at least by that date to the AG Defendants that their conduct with respect to Plaintiff and its counsel was baseless and unconstitutional. But, in the face of that knowledge, they persisted in the maintenance of that Order.

Counsel for Plaintiff timely responded to the Nebraska Civil Investigative Demand on August 19, 2013. *See* Dkt. 29-1 at 23. That response further informed the AG Defendants that their conduct with respect to Plaintiff was baseless. Yet, the AG Defendants still persisted on the maintenance of the Order.

On September 10, 2013, the AG Defendants filed an opposition to Plaintiff's Motion for Preliminary Injunction, which made it apparent they had issued the Order with respect to Plaintiff without any basis or any investigation at all. *See* Dkt. 22. The AG Defendants' only defense was a baseless contention that their Order did not relate to Plaintiff. But, when confronted in open court, the AG Defendants dropped this contention, and insisted that the Order did in fact prevent Plaintiff from using its counsel of choice to send patent enforcement letters. *See* Dkt. 49, 43:21-24; 46:22-24 & Dkt. 41 at 3.

Thus, at the time of the hearing, September 19, 2013, the AG Defendants were still maintaining that their Order applied to Plaintiff, and the AG Defendants had taken no steps to modify their Order to exclude Plaintiff, but persisted in seeking enforcement and maintenance of their Order despite knowing it had no basis.

On October 15, 2013, the AG Defendants filed an appeal of this Court's issuance of the preliminary injunction. *See* Dkt. 65. The parties disagreed about which appellate court had jurisdiction, and the AG Defendants forced Plaintiff's counsel to engage in the expense associated with briefing that jurisdictional issue and briefing an opposition to the AG Defendants' Motion to Stay proceedings in this Court. *See* Dkts. 57, 58 & 59.[11]

---

[11] Plaintiff notes this conduct by the AG Defendants is further support of its position that they have acted unreasonably in this matter, but will not seek fees or costs from this Court related to the fees and costs incurred before the Eighth Circuit.

If the prior conduct was not sufficient to demonstrate the AG Defendants' conduct has been egregious and warrants an award of fees and costs, the actions taken by them next certainly meet that burden. Being faced with having to respond in the appellate court on a baseless jurisdictional contention, and with having to respond before this Court regarding the AG Defendants' unconstitutional behavior toward MPHJ, the AG Defendants unilaterally withdrew the Order in its entirety. *See* Dkt. 90. In addition, they forwarded to Plaintiff's counsel an assurance that they would not investigate Plaintiff further in the future. *See* Dkt. 95-2. Yet, in their most recent filing, the AG Defendants made it clear that there was still a possibility it would investigate Plaintiff in the future. *See* Dkt. 118.

In sum, the following set of facts is presented here that warrant an award of fees and costs. For reasons known only to the AG Defendants, but for reasons which may be reasonably suspected by the Court, on July 18, 2013, the AG Defendants issued an Order which directly interfered with the constitutional rights of Plaintiff. For over four months, in the face of full knowledge that their conduct was unconstitutional and unlawful, the AG Defendants persisted in the maintenance of that Order, forcing Plaintiff to incur enormous legal fees and costs to have it enjoined. Then, having never conducted any investigation of Plaintiff, nor identified any basis at all for contending that Plaintiff's conduct was unlawful, the AG Defendants withdrew their Order, and then sought to avoid the consequences of their actions with respect to this Court by arguing this case was moot. Throughout that entire time, and even to date, the AG Defendants refuse to admit any liability or wrongdoing.

If there ever was a Section 1983 case in which an award of fees and costs were appropriate, it is this one. Plaintiff respectfully requests that this Court provide it relief from the substantial financial burden it has been forced to incur as a result of having to respond to and

address the consequences of the AG Defendants' unconscionable and unconstitutional conduct. Such relief is further warranted to prevent the AG Defendants from engaging again in such unconstitutional conduct in the future. *See, e.g., Clemente v. Crane*, 1996 U.S. App. LEXIS 26496, at *21 (1st Cir. Mass. Oct. 9, 1996) (explaining that "[a]n important purpose of § 1983 is 'to serve as a deterrent against future constitutional deprivations'") (citing *Owen v. City of Independence*, 445 U.S. 622, 651 (1980) ("§ 1983 was intended not only to provide compensation to the victims of past abuses, but to serve as a deterrent against future constitutional deprivations, as well.").

Given the foregoing, Plaintiff respectfully requests that this Court award its fees and costs, and to direct the Plaintiff to present to the Court an accounting of its fees and costs incurred in connection with this matter for the Court's review within two weeks of the Court's ruling on this Motion.

**CONCLUSION**

Accordingly, for the foregoing reasons, Plaintiff respectfully requests that this Court grant summary judgment in its favor, issue a permanent injunction against the AG Defendants of the scope set forth herein, and award Plaintiff its fees and costs incurred in connection with this matter (to be supplied to the Court by Plaintiff within two weeks of the Court's decision on this Motion), along with any other relief this Court deems appropriate.

Respectfully submitted,

Dated: February 5, 2014                    ACTIVISION TV, INC., Plaintiff


By: */s/ W. Bryan Farney*
    W. Bryan Farney (*Pro Hac Vice*)
    Cassandra Klingman (*Pro Hac Vice*)
    FARNEY DANIELS PC
    800 South Austin Ave., Ste. 200
    Georgetown, Texas 78626
    (512) 582-2828
    bfarney@farneydaniels.com
    cklingman@farneydaniels.com

    M. Brett Johnson (*Pro Hac Vice*)
    FARNEY DANIELS PC
    8401 N. Central Expressway, Suite 280
    Dallas, Texas 75225
    (972) 432-5780
    bjohnson@farneydaniels.com

    John P. Passarelli #16018
    Edward Warin # 14396
    Sean P. Connolly #23614
    KUTAK ROCK LLP
    The Omaha Building
    1650 Farnam Street
    Omaha, NE  68102-2186
    (402) 346-6000
    john.passarelli@KutakRock.com
    edward.warin@KutakRock.com
    sean.connolly@KutakRock.com

    Steven E. Achelpohl #10015
    GROSS & WELCH P.C., L.L.O.
    1500 Omaha Tower
    2120 South 72nd Street
    Omaha, Nebraska 68124-2342
    (402) 392-1500
    sachelpohl@grosswelch.com

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record, who are deemed to have consented to electronic service are being served February 5, 2014, with a copy of this document via the Court's CM/ECF system.

/s/ W. Bryan Farney
W. Bryan Farney